UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MPD RESERVE OFFICERS, et al.**<br><br>**Plaintiffs**<br><br>v.<br><br>**CHARLES RAMSEY**<br><br>**Defendant** | **Case Number:**<br>**1:06CV01223HHK** |

## MOTION FOR A TEMPORARY RESTRAINING ORDER

Pursuant to Federal Rule of Civil Procedure 65 (b), Plaintiff Matthew August LeFande hereby moves this Court to enter a Temporary Restraining Order immediately restraining the Defendant, his officers, agents, servants, employees and/or attorneys from:

1. Enforcing any part of MPD General Order 101.3 dated March 28, 2006 or MPD's emergency rulemaking enumerated in 53 D.C.R. 4581 which attempts to "define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion" in violation of the District of Columbia Administrative Procedures Act and D.C. Code § 5-129.51, and any part of the General Order or emergency rulemaking enumerated in 53 D.C.R. 4581 which improperly deprives the Plaintiffs of rights otherwise afforded under applicable law.

2. Adopting any part of the proposed rules enumerated in 53 D.C.R. 4581 which attempts to "define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion" in violation of the District of Columbia

Administrative Procedures Act and D.C. Code § 5-129.51, and any part of the proposed rules which improperly deprives the Plaintiffs of rights otherwise afforded under applicable law.

The Plaintiffs have further moved for a Preliminary Injunction as provided under FRCP Rule 65(a). This Motion is supported by the Complaint, the supporting exhibits and the attached Memorandum of Law and Authority in Support.

Respectfully Submitted,

_____

Matthew August LeFande
DC Bar #475995
1001 Sixteenth Street NW
Washington DC 20036-5701
Tel: (202)737-5350
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on this tenth day of July, 2006, a copy of the above Motion for a Temporary Restraining Order, the accompanying Memorandum in Support, the attendant Exhibit C and a Proposed Order was mailed via United States Postal Service First Class Mail, postage prepaid to the Defendant's Counsel below.  Additional copies were faxed to (202) 727-3308 and emailed to terry.ryan@dc.gov:

Terrance Ryan, Esquire
General Counsel
Metropolitan Police Department
300 Indiana Avenue NW
Washington, DC 20001

_____
Matthew August LeFande

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MPD RESERVE OFFICERS, et al.**<br><br>                         **Plaintiffs**<br><br>v.<br><br>**CHARLES RAMSEY**<br><br>                         **Defendant** | **Case Number:**<br>**1:06CV01223HHK** |

**MEMORANDUM OF LAW AND AUTHORITY IN SUPPORT OF
THE PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

The Plaintiffs have moved this Court for a Temporary Restraining Order enjoining the Defendant from unlawful rulemaking. The Defendant has engaged in unlawful rulemaking which is contrary to the public interest, creates unnecessary costs and hardship for the citizens of the District of Columbia, and is causing irreparable harm to each of the Plaintiffs and the proposed Plaintiff Class.

**STATEMENT OF FACTS**

1.      On March 28, 2006, the Defendant issued MPD General Order 101.3 (2006) (Pl.s' Ex. A, herein, the "new General Order") replacing MPD General Order 101.3 (1995) (Pl.s' Ex. B). The new General Order contains agency rules defining the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including limitations on and restrictions to their authority and discretion.

2. The adoption of the new General Order by the Defendant violated D.C. Code §§ 2-505 (administrative rulemaking requires publishing the proposed rules in the District of Columbia Register as notice of the intended action so as to afford interested persons opportunity to submit data and views either orally or in writing) and D.C. Code § 5-129.51 (rules defining the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion shall be issued within 180 days of September 30, 2004).

3. On June 9, 2006, the Defendant caused to be published within the District of Columbia Register a Notice of Emergency and Proposed Rulemaking. 53 D.C.R. 4581.

4. The Notice stated that the Defendant adopted the rules as enumerated within 53 D.C.R. 4581 on an emergency basis effective May 19, 2006. Id.

5. The Defendant's emergency rulemaking violated D.C. Code § 2-505 as the rules were adopted without notice or opportunity for public comment, and no emergency existed necessitating such emergency rulemaking "for the immediate preservation of the public peace, health, safety, welfare, or morals".

6. The Notice further stated the Defendant intended to adopt these rules on a permanent basis in not less than thirty days after the Notice. 53 D.C.R. 4581.

7. Such rules are intended to define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including limitations on and restrictions to their authority and discretion.

8. Such proposed rulemaking violates D.C. Code § 5-129.51 (rules defining the scope of Reserve Corps members' authority and discretion in carrying out their duties

and responsibilities, including any limitations on or restrictions to their authority and discretion shall be issued within 180 days of September 30, 2004).

9.  The unlawful adoption of these rules by the Defendant has had the immediate and continuing effect of dissuading the majority of Reserve Officers from the performance of their duties for the District of Columbia.

## ARGUMENT

The legal standard plaintiffs must meet in moving for a Temporary Restraining Order or Preliminary Injunction is "A court considering a plaintiff's request for a preliminary injunction must examine whether: (1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by the injunction." Serono Lab v. Shalala, 158 F.3d 1313, 1317-18 (D.C.Cir. 1998).  See Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C.Cir. 1989); Washington Metro Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977).  The court "must balance the strengths of the requesting party's arguments in each of the four required areas." CityFed Fin. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C.Cir. 1995).  An injunction may be issued if the arguments in favor of one particular factor are particularly strong "even if the arguments in other areas are rather weak." Id. Therefore, "[a]n injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." Id.

3

**1.   There is more than a substantial likelihood that the Plaintiffs will succeed on the merits.**

When the District of Columbia City Council granted authority to create rules defining the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including limitations on and restrictions to their authority and discretion, it set out several reasonable limitations upon such authority.  First, the Council identified the person who had such authority, the Mayor.  Prior versions of the 2004 Bill which created D.C. Code § 5-129.51 contained the following verbiage:

> The Chief of the Metropolitan Police Department shall issue a general order prescribing the duties and responsibilities of members of the Reserve Corps, defining the scope of their authority and discretion in carrying out their duties and responsibilities, including any limitations or restrictions to their authority and discretion, and delineating the supervision they are to receive.

Engrossed Original of D.C. Bill 15-32 § 1002.  (Pl.s' Ex. C at 18.)  This language was removed by amendment and the Bill as enacted read, in relevant part, as follows:

> The Mayor, pursuant to Title 1 of the District of Columbia Administrative Procedure Act, approved October 21, 1968 (82 Stat. 1204; D.C. Official Code § 2-501 *et seq.*), shall issue rules to implement the provisions of this section within 180 days of the effective date of the Metropolitan Police Department Reserve Corps Establishment Act of 2004, passed on 2nd reading on June 1, 2004 (Enrolled version of Bill 15-32).

D.C. Law 15-194, § 1002, 51 D.C.R. 9406.  The authority to enact rules limiting the authority of Reserve Officers was specifically taken away from the Defendant and given to the Mayor.  Further, a specific time limitation was placed upon the Mayor to enact any rule which would limit the authority of Reserve Officers and the Council specifically mandated that such rulemaking would be subject to the District of Columbia Administrative Procedure Act.  Id.

4

The time limitation is an important and poignant point. In enacting legislation authorizing the MPD Reserve Corps, an organization which had *de facto* existed for over half a century, the Council sought to resolve legal ambiguities regarding the authority of these officers within a short time period. There was an immediate need to define these officers' authority and avoid potential liability to the city by permitting an officer to conduct police business with such previously ill-defined authority. Plaintiff Kim and approximately 30 other Reserve Officers entered into lengthy training obligations with MPD once the deadline passed for rulemaking limiting their authority. Plaintiff Kim and these other Reserve Officers made a commitment to MPD that was particularly burdensome to their personal and professional lives with an understanding that the law definitively provided them the authority of any other MPD officer and that they were expressly afforded due process rights to their positions with MPD. It was over a year later (and within weeks of the completion of this training obligation) that the Defendant began to formally deny these rights to the Reserve Officers.

In interpreting a statute, the Court "must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning." James Parreco & Son v. District of Columbia Rental Housing Com., 567 A.2d 43, 45-46 (D.C. 1989) (citing Office of People's Counsel v. Public Serv. Comm'n, 477 A.2d 1079, 1083 (D.C. 1984); Peoples Drug Stores, Inc. v. District of Columbia, 470 A.2d 751, 753 (D.C. 1983) (*en banc*).

> The primary rule of statutory construction is that the intent of the legislature is to be found in the language which it has used. United States v. Goldenberg, 168 U.S. 95, 102-03, 42 L. Ed. 394, 18 S. Ct. 3 (1897); Peoples Drug Stores, *supra*, 470 A.2d at 753. Moreover, the words of the statute should be construed according to their ordinary sense, and with the meaning commonly attributed to them. Peoples Drug Stores, *supra*; *see also* United States v. Thompson, 347 A.2d 581, 583 (D.C.

5

1975). "The words used, even in their literal sense, are the primary and ordinarily the most reliable source of interpreting the meaning of any writing." Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), *aff'd*, 326 U.S. 404, 90 L. Ed. 165, 66 S. Ct. 193 (1945).

…words are important, and the burden on a litigant who asks the court to disregard their plain import is not a light one. This court will "'look beyond the ordinary meaning of the words of a statute only where there are persuasive reasons for doing so.'"

Id.

By any plain reading of D.C. Code § 5-129.51, the Defendant is violation of the law.  The Defendant is not the Mayor, he is the Chief of Police, the very person the Council removed from Bill 15-32 as having authority to make these rules.   Further, even if he had the authority *virtue offici*, he did not engage in the rulemaking prior to the deadline set forth in the statute.   The proposed rulemaking as enumerated in 53 D.C.R. 4581 violates D.C. Code § 5-129.51 for the same reasons.  The emergency rulemaking also enumerated in 53 D.C.R. 4581, which the Defendant engaged in only once his illegal rulemaking in the new General Order was challenged by this counsel, was also in violation of the District of Columbia Administrative Procedures Act, as no emergency existed which permitted the Defendant to adopt emergency rules without notice and comment under D.C. Code § 2-505(c).

In fact, it is the Defendant who now creates an emergency by eschewing a set of rules and regulations which the MPD Reserve Corps operated within without amendment and without difficulty since 1995 (Pl.s' Ex. B) in favor of a set of rules for which he had no authority to adopt and which repeatedly contradict and violate District of Columbia law.  (*See generally*, Pl.s' Compl. ¶¶ 41-47.)  Members of the proposed Plaintiff Class are now left teetering upon a legal precipice created by the conflicting and illegal orders of

their Commander and Chief oblivious to their express obligations as sworn police officers under DC Code. This emergency is only now delayed by the individual circumstances of the everyday lives of each Reserve Officer not yet happening upon a crime in their presence where they would then be faced with deciding between violating the Defendant's unlawful rules and orders, and obeying the D.C. Code.

### 2.     The Plaintiffs will be irreparably injured if an injunction is not granted.

Each Plaintiff and members of the proposed Plaintiff Class have professional lives separate and distinct from their positions with MPD. Plaintiff Kim, as do many other Reserve Officers, holds a Top Secret security clearance with the United States Government. Plaintiff Kim's present paid employment is entirely contingent upon the maintenance of this security clearance, and his professional and personal life is routinely subject to intense scrutiny by government investigators. Plaintiff Kim's removal from a position of public trust and authority as a Reserve Officer would inevitably compromise his clearance and ultimately, his paid career.

The removal of procedural due process rights in Reserve Officer disciplinary matters has only one intended purpose, to permit the Defendant to remove Reserve Officers for reasons that cannot be otherwise justified under law. If a Reserve Officer is guilty of misconduct or malfeasance, then, after that Reserve Officer has had an opportunity to make a defense and the evidence had been heard, such facts would be sustained by a Trial Board. *See* D.C. CODE § 5-127.01 ("no person shall be removed from said police force except upon written charges preferred against him in the name of

7

the Chief of Police of said police force to the trial board or boards hereinafter provided for and after an opportunity shall have been afforded him of being heard in his defense").

The Defendant desires to prevent the truth of such matters from ever being heard again. Defendant Kim and the other Reserve Officers must either risk their good reputations and other careers being permanently harmed by the intended arbitrary acts of the Defendant, or they must leave their positions with MPD.

It is self-evident that a Reserve Officer who has chosen to volunteer long hours doing difficult and dangerous work must find some significant reward from such service. An economist would posit that a person reveals their preferences by their decision to forego one activity in favor of another. Revealed Preference is an economic theory where a consumer's decisions are compared using different prices or incomes, assuming that such decisions would otherwise be consistent over time. *See* Long Island Sav. Bank v. United States, 67 Fed. Cl. 616, 643-644 (Ct. Cl. 2005). By considering each Plaintiff's decision to forego paid work to obtain additional training and experience as a Reserve Officer, a value can be placed upon the training and experience itself. An economist assumes that the Plaintiffs are completely rational and facing any decision or choice, they make the choice that advances their purposes most efficiently. People can be assumed to maximize their own net benefits. Davis, J., THE THEORY OF THE INDIVIDUAL IN ECONOMICS, IDENTITY AND VALUE, 30-31 (2003) (citing Samuelson, P., "A Note on the Pure Theory of Consumers' Behaviour", ECONOMETICA 5:353-54 (1938). If we observe the choices a person makes, we can infer what his or her purposes are, what benefits he or she derives from the choice.

8

The MPD Reserve Corps includes numerous highly paid professional persons, including attorneys, doctors, business owners and government executives. Each of these persons has made a decision which the Revealed Preference theory places a value upon their services to MPD that is equal or higher than that of their paid employment. The risk of either being arbitrarily removed from their positions as Reserve Officers or being required to leave their positions to avoid such arbitrary action makes irreparable harm likely to any and all of the Plaintiffs and the proposed Plaintiff Class.

**3.    An injunction will not substantially injure the Defendant.**

The MPD Reserve Corps has operated with a set of General Orders governing its administration and supervision since 1995 without amendment or modification. (Pl.s' Ex. B.) The Reserve Corps' General Order is indeed in need of modification to harmonize it with D.C. Code § 5-129.51, the 2004 law mandating, *inter alia*, that Reserve Officers shall receive similar training to paid officers. Neither the new General Order nor the emergency and proposed rulemaking accomplish this as they perpetuate a bifurcated training system where some Reserve Officers (in reality, the vast majority) are systematically denied training provided to paid officers.

The Plaintiffs' instant application for injunctive relief asks this Court to maintain the 1995 General Order and prevent the Defendant from violating the Administrative Procedures Act and D.C. Code § 5-129.51, in effect to preserve the *status quo* prior to March 28, 2006. Had the Defendant had some urgent need to harmonize the Reserve Corp's General Order with D.C. Code § 5-129.51, he should have asked the Mayor to do so within the 180 day deadline. The fact that the Defendant waited nearly two years to

take action evidences an absence of any prevailing need on the part of the Defendant for such rulemaking.

### 4.     The public interest will be furthered by the injunction.

Prior to this illegal rulemaking, the District of Columbia received approximately 30,000 hours in volunteer services per year from its Reserve Officers.  This amounts to a manpower benefit to the District of approximately one million dollars per year.  The evidence will show a direct temporal correlation between the enactment of the offending rulemaking and a substantial reduction in the hours performed by the Reserve Officers.

In 1995, MPD promulgated specific rules and regulations to protect its volunteer officers from unfounded, arbitrary and capricious actions against them by officials of the department, who may or may not appreciate their contributions.  If the Defendant succeeds creating disincentives for current and potential new Reserve Officers to serve their city, the public loses the benefit of highly qualified and uniquely motivated public servants.   The city's elected representatives have found such services to be in the public interest and have enacted legislation providing for their selection and training.  Also apparently in the public interest, they set very specific parameters for any rulemaking affecting the rights and responsibilities of these public servants.  The Defendant's decision to ignore these laws cannot be found to be in the public's interest.

### 5.     The Plaintiffs' choice of remedy is proper.

The Defendant did not avail himself of the rulemaking provided for under D.C. Code § 5-129.51.  There can be little doubt that had the Defendant desired to engage in

legitimate rulemaking, he would have had the ear of the Mayor and could have offered proposed rules in the Mayor's name for public comment within the time limit provided. Instead, the Defendant engaged in rulemaking that was unpalatable both to the members of the Reserve Corps and the general public. In making such rules in the guise of a General Order, as originally considered, but specifically denied, by the City Council in its legislation, the Defendant sought to shield his rulemaking from public scrutiny and administrative remedies. Once this counsel threatened a civil complaint for the rulemaking in the new General Order, the Defendant changed tact and began formal rulemaking, bereft of any authority to do so. The Defendant surreptitiously engaged in emergency rulemaking, absent any emergency requiring rulemaking "for the immediate preservation of the public peace, health, safety, welfare, or morals." D.C. CODE § 2-505(c). A few weeks later, on June 9, 2006, the Defendant announced his proposed rulemaking, with the intent of encumbering any judicial relief from the original illegal rulemaking with a lengthy administrative appeals process solely under his control.

  The Defendant will now argue that he has complied with the Administrative Procedures Act and that the Plaintiffs have an administrative remedy which they have not exhausted. Under the Administrative Procedure Act, "any interested person may petition . . . an independent agency, requesting the promulgation, amendment, or repeal of any rule." D.C. CODE § 5-505(b). Upon reading of it in the D.C. Register, this counsel did in fact write to the MPD General Counsel to contest the emergency and proposed rulemaking. This counsel had engaged in negotiations for some time with MPD executives regarding rescinding or revising the new General Order. This counsel received repeated assurances that these MPD executives and the General Counsel were

11

working to resolve the problem and was repeatedly asked to be patient. Disingenuously, the Defendant then published the Notice of Emergency and Proposed Rulemaking in the D.C. Register without otherwise notifying this counsel or any member of the proposed Plaintiff Class with the evident intent to run out the 30-day comment period prior to their discovery of the rulemaking notice. This counsel's notice to MPD that he contested the rulemaking should not be construed as consent to the administrative process suggested by the rulemaking notice, but instead was an alternative defense to underhanded and deceitful actions by the Defendant.

The Defendant will now argue that either the doctrine of exhaustion or primary jurisdiction precludes this Court from providing a judicial remedy to the Plaintiffs.

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction" on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

D.C. v. L.G. Indus., 758 A.2d 950, 955-956 (D.C. 2000).

> In District of Columbia v. Group Ins. Admin., 633 A.2d 2 (D.C. 1993), this court reiterated the "extraordinary" nature of the injunctive remedy, and admonished that "the trial court must be especially careful [before resorting to that remedy] where . . . the requested relief would enjoin agency action pending the outcome of administrative review." Id. at 21. In part the reason for this restraint is the very one that underlies the primary jurisdiction doctrine, which is that the court "is acting" - and risks disruption – "in a field that is normally confided to the agency's expertise." Id.

L.G. Indus., 758 A.2d at 957.

12

Unlike in the L.G. Indus. case where the Board of Zoning Adjustment was specifically authorized pursuant to D.C. Code § 5-424 (f) with interpreting the District's zoning regulations, L.G. Indus., 758 A.2d at 954, the Defendant in the instant case was specifically *excluded* by law from engaging in the rulemaking which he now contends he is entitled to conduct administrative review thereof.  Administrative hearings are intended to relieve courts of time-consuming review of fact-intensive issues.  *See* Tenley & Cleveland Park Emergency Committee v. District of Columbia Bd. of Zoning Adjustment, 550 A.2d 331, 340 (D.C. 1988) ("The D.C. Council understood that the process of reviewing existing zoning regulations for consistency with the Comprehensive Plan would be a time-consuming, deliberative process…")  Administrative procedures are not intended to shield the illegal acts of government officials from judicial review or delay such review unnecessarily.  Tenley & Cleveland Park Emergency Committee 550 A.2d at 341. ("Judicial relief may also be available to compel agency action in the event of unwarranted or unreasonable delay.")

> "BZA is charged with interpreting the zoning regulations," and the courts "must defer to the BZA's interpretation of those regulations, related to matters within its expertise, *unless that interpretation is plainly wrong or inconsistent with the regulations or with the statute under which the BZA acts*."

L.G. Indus., 758 A.2d at 956 (quoting Concerned Citizens of Brentwood v. District of Columbia Bd. of Zoning Adjustment, 634 A.2d 1234, 1242 (D.C. 1993) [emphasis added].  Further, an administrative review of the Defendant's illegal acts by the agency which the Defendant solely controls is pointless.  *See* Apartment & Office Bldg. Asso. v. Washington, 343 A.2d 323, 332 (D.C. 1975) ("No requirement of exhaustion of administrative remedies exists if the attempt to exhaust would be futile."  Citing Smith v. Illinois Bell Telephone Co., 270 U.S. 587, 591, 70 L. Ed. 747, 46 S. Ct. 408 (1926); 3 K.

13

Davis, ADMINISTRATIVE LAW TREATISE § 20.07 (1958 ed., 1970 Supp.); Note, Judicial Acceleration of the Administrative Process: The Right to Relief from Unduly Protracted Proceedings, 72 YALE L.J. 574 (1963).  This Court should not permit the Defendant to protract a delay of proper judicial review of the rulemaking which he never had authority to commence.

**WHEREFORE**, the Plaintiffs respectfully request the Court not permit the Defendant to cause further irreparable injury to the Plaintiffs, and for the Court to serve the public's best interests.   The Plaintiffs' Motion for a Temporary Restraining Order against the unlawful rulemaking should be GRANTED.

    For the reasons stated above, the Plaintiffs have moved for a Preliminary Injunction.

Respectfully Submitted,

_____
Matthew August LeFande
DC Bar #475995
1001 Sixteenth Street NW
Washington DC 20036-5701
Tel: (202)737-5350
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs