UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTOPHER GRIFFITH and | ) | |
| DANIEL KIM, | ) | |
| Plaintiffs, | ) | Civil No. 01 – 01223 – HHK |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES RAMSEY, | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION OF DEFENDANT
## TO DISMISS THE COMPLAINT

Defendant, by and through counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), moves the

Court to dismiss the complaint. The grounds for this motion, more fully set forth in the attached

memorandum, are: (1) Plaintiffs, volunteers for the District of Columbia Metropolitan Police

Department, have no liberty or property interests in serving as volunteer Reserve Officers;

(2) Plaintiffs have no right to organize for collective bargaining purposes and have suffered no

deprivation of free speech or association rights: (4) Plaintiffs are not covered by the National

Labor Relations Act; and (5) because there is no constitutional or federal statutory violation, the

Court's supplemental jurisdiction does not extend to Plaintiffs' claims based on the D.C.

Administrative Procedure Act ("APA"). In any event, there is no violation of the APA. Finally,

this case would not qualify for class action treatment.

Dated: August 4, 2006

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


/s/ K M Johnson /RU/jner
KIMBERLY MATTHEWS JOHNSON
Chief, Section 1
DC Bar No. 435163


/s/
JACK M. SIMMONS, III
Assistant Attorney General
DC Bar No. 925420
441 Fourth St., NW
Sixth Floor South
Washington, DC  20001-2714
(202) 724-6653
(202) 727-0431   (fax)
jack.simmons@dc.gov
Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTOPHER GRIFFITH and DANIEL KIM, | ) ) ) | |
| Plaintiffs, | ) | Civil No. 01 – 01223 – HHK |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES RAMSEY, | ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT TO DISMISS THE COMPLAINT

Plaintiffs Griffith and Kim (as well as their counsel) are volunteer members of the Metropolitan Police Department Reserve Corps ("MPDRC"). They assert both constitutional and statutory violations of their rights by reason of (1) the recent promulgation of Metropolitan Police Department ("MPD") General Order 101 regarding Reserve Officers and (2) the emergency and final regulations regarding Reserve Officers. D.C. Official Code § 5-129.51 (2006). Plaintiffs seek monetary damages and declaratory and injunctive relief. Plaintiffs also assert that they bring this case as a class action.

The Complaint sets forth various counts including deprivation of liberty and property interests (apparently under the Fifth Amendment), violation of the National Labor Relations Act, and violations of the D.C. Administrative Procedure Act. Jurisdiction is asserted under 28 U.S.C. § 1983 (2006) (civil rights), 28 U.S.C. § 1331 (2006) (federal question), and 28 U.S.C. 1367 (2006) (supplemental jurisdiction). In its essence, this case presents little more than Plaintiffs'

policy disagreements with the MPD's decisions regarding the management of the Reserve Corps as expressed in the recent General Order and in the recent regulations.

## Background

The District of Columbia permits individuals to provide volunteer services to the District pursuant to the Volunteer Services Act. D.C. Law 2-12, 24 D.C. Reg. 1442 (June 28, 1977), codified as D.C. Official Code §§ 1-319.01 – .05 (2006). Volunteers are not employees of the District government and they are not eligible for benefits provided to civil service employees. D.C. Official Code § 1-319.03(b) (2006). Since they are volunteers, they are not selected for their positions in accordance with civil service rules and they do not have civil service protections if the government chooses not to accept their volunteer services in the first place or to discontinue the acceptance of that service. As volunteers, they receive no pay for their services. D.C. Official Code § 1-319.05(2) (2006). They are treated as civil service employees <u>only</u> for the limited purpose of claims for tort liability against the District for acts performed during their volunteer service. D.C. Official Code §§ 1-319.03(c) and (d) (2006). An individual serves in a volunteer capacity solely at the agency's discretion. 6 DCMR §§ 4400 <u>et seq.</u>

The Metropolitan Police Department has maintained the MPDRC for many years to complement the regular police officers. The program was originally authorized no later than 1950. Commissioners' Order 502,757/6 (September 12, 1950). Reserve Officers differ from regular police officers in a number of key respects. Regular police officers (known as "sworn" officers) are members of the civil service and are subject to the civil service selection processes; regular officers receive lengthy training and are paid for their service to the District; they receive other benefits (such as disability compensation and retirement). The MPD and its civil service

officers are subject to lengthy statutes and detailed regulations. See 5. D.C. Official Code §§ 5-101.01 et seq. (2006); 6A D.C.M.R. §§ 100 et seq.

Reserve Officers, however, are volunteers who donate their time and efforts to the MPD and its mission. See D.C. Official Code §§ 1-319.05(2) (2006). Because they are not employees, they are not subject to the civil service selection and training processes for sworn police officers. They perform only such duties as are determined by the MPD to assist the MPD in carrying out its public safety and public protection mission, subject to the limitations established by the Chief of Police. They are not "sworn" officers. They serve under the Volunteer Services Act and, dependent on the individual assignments given them, may or may not be subject to the same regulations as sworn officers.

Effective March 1, 1995, the MPD issued General Order No. 101 regarding the Reserve Corps to provide internal MPD guidance on such matters as its organization, the command structure, the various levels of duty for Reserve Officers, assignments, and recruiting. The General Order, like all MPD General Orders, was not put into effect as a regulation under the APA but rather as internal administrative guidelines.

In 2004, the Commissioners' Order of 1950 was superseded by a statutory provision regarding the MPDRC. Metropolitan Police Department Reserve Corps Establishment Act of 2004, section 1001 of the Omnibus Public Safety Act of 2004. D.C. Act 15-463, 51 D.C. Reg. 9406 (Oct. 8, 2004). Section 1001 established – or, more correctly, re-authorized – a Reserve Corps "to assist full-time, sworn police personnel in both the day-to-day and emergency delivery of law enforcement services." D.C. Official Code § 5-129(a) (2006). The Act provided that the membership in the Reserve Corps be made up of volunteers "who fulfill police duties and responsibilities as determined by the Chief of the [MPD]." D.C. Official Code § 5-129(b)

(2006).  The Mayor was authorized to issue rules to implement the statute.  D.C. Official Code § 5-129(d) (2006).  The Mayor delegated that authority to the Chief of Police.  See 53 D.C. Reg. 5313 (June 30, 2006).

Effective May 19, 2006, the MPD promulgated emergency regulations and a notice of proposed rulemaking regarding the MPDRC.  53 D.C. Reg. 4581 (June 9, 2006).  The emergency rules were effective for thirty days, expiring on June 18, 2006.  Emergency regulations were again promulgated on August 3, 2006, for a period of thirty days.  Final regulations have not yet been issued.    On July 6, 2006, Plaintiffs filed this law suit challenging both the regulations and the General Order.

## Argument

## I.    STANDARD OF REVIEW.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, the plaintiffs will be unable to prove any set of facts that would justify relief.  E.g., Conley v. Gibson, 355 U.S. 41, 45 (1957); Cauman v. George Washington University, 630 A.2d 1104 (D.C. 1993); Cole, Raywid & Braverman v. Quadrangle Development Corp., 444 A.2d 969 (D.C. 1982).  The movant therefore is entitled to judgment if there are no allegations in the complaint that, even if proven, would provide a basis for recovery.  Haynesworth v. Miller, 820 F.2d 1245, 1254, 261 U.S. App. D.C. 66, 83 (D.C. Cir. 1987).  The only issue is the legal sufficiency of the complaint.  Aronoff v. Lenkin Co., 618 A.2d 629 (D.C. 1996).

Although the non-moving party enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of his complaint, bare conclusions of law, or sweeping and

unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule

12(b)(6). Haynesworth v. Miller, 820 F.2d at 1254, 261 U.S. App. D.C. at 83. The court need

not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set

out in the complaint. "Nor must the court accept legal conclusions cast in the form of factual

allegations." Kowal v. MCI Communications Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 276

(D.C. Cir. 1994). See also Alexis v. District of Columbia, 44 F. Supp.2d 331, 336-37 (D. D.C.

1999) ("However, the court need not accept as true the plaintiffs' legal conclusions.")

Defendant deals, seriatim, with each of the counts of the Complaint. Not one of them

presents a claim on which this Court may grant relief.

## II.     THE FEDERAL CLAIMS

### A.     PLAINTIFFS HAVE NOT BEEN DEPRIVED OF A LIBERTY INTEREST BECAUSE THEY HAVE NO UNDERLYING RIGHT TO ORGANIZE FOR COLLECTIVE BARGAINING PURPOSES.

Count I of the Complaint asserts, correctly, that the new General Order does not permit

Reserve Officers to organize for collective bargaining purposes. Complaint at ¶ 26. In

Plaintiffs' view, this is a deprivation of a liberty interest in that it amounts to a deprivation of

constitutional rights of free speech and free association. Thus, at best, Count I is an attempt to

state a claim under the First Amendment, not a liberty claim under the Fifth Amendment. It

should be noted that neither the challenged regulations nor the challenged General Order seeks to

impose any prohibition on organizing for any purpose other than collective bargaining. [1]

---

1    No First Amendment right concerning freedom of speech is implicated here. Neither of
these plaintiffs asserts that his right to communicate on any issue of concern to him has been
compromised in any way.

Plaintiffs have no inherent constitutional right, whether under the First or Fifth Amendment, as volunteers to a municipal government to associate for the purposes of collective bargaining. In fact, a public employer is not required to engage in collective bargaining absent legislation granting the employees the right to such bargaining. See U.S. Dept. of Defense v. Federal Labor Relations Authority, 982 F.2d 577 (D.C. Cir. 1993) (public employees only have collective bargaining rights when granted by statute and only to the extent granted by statute); Metropolitan Washington Airports Authority v. United States, 959 F.2d 297 (D.C. Cir. 1992) (public employees only have collective bargaining rights when granted by statute and only to the extent granted by statute). Thus, the rights and privileges of volunteers are only such rights as the District chose to give them when the District established its volunteer services program. The District has not chosen, either in the Volunteer Services Act or in the Metropolitan Police Department Reserve Corps Establishment Act of 2004, to give these volunteers the right to collective bargaining. This is in stark contrast to the Comprehensive Merit Personnel Act, in which the District expressly granted most civil service employees the right to collective bargaining. D.C. Official Code § 1-617.01 (2006).

**B.    BECAUSE THESE PLAINTIFFS HAVE NO UNDERLYING RIGHT TO ORGANZIE FOR COLLECTIVE BARGAINING PURPOSES, THE PROHIBITION ON ORGANIZING FOR THIS PURPOSE DOES NOT DEPRIVE THEM OF A CONSTITUTIONALLY PROTECTED PROPERTY RIGHT.**

Count II of the Complaint asserts that the Plaintiffs are not granted "procedural due process in disciplinary matters previously promised to the Plaintiffs." Complaint at ¶ 35. Plaintiffs do not specify whether such procedural due process is due to them under the statute, the regulations, or the General Order.

The D.C. Court of Appeals recently addressed and rejected a due process challenge identical to the one that Plaintiffs raise here. Johnson v. Williams, 887 A.2d 1027 (D.C. 2005) (table) (unpublished decision).[2]  A copy of the Court's decision is attached.  In Johnson, the Plaintiff was a member of the MPDRC who was dismissed based on a determination that he had engaged in misconduct.  Johnson challenged his dismissal on the ground that he was denied due process.

The Johnson Court ruled that, although the General Order provided that a hearing "may be held," the General Order "must yield to the terms of the statute or regulations regarding volunteer services" because the General Orders are internal guidelines, citing In re Walker, 856 A.2d 579, 586 (D.C. 2004); Clark v. District of Columbia, 7087 A.2d 632, 636 (D.C. 1997); and Moorehead v. District of Columbia, 747 A.2d 138, 145 (D.C. 2000).  As the Johnson Court noted, the applicable regulations expressly deny "any right or process of appeal" to a volunteer whose services have been discontinued.  As the Court further noted, under 6 D.C.M.R. § 4000.12, a volunteer's services may be discontinued "at any time for any reason." "Accordingly, Appellant [Johnson] had no protected property interest in retaining his volunteer position." Johnson, Memorandum Opinion at 2.

---

2       Although this case was decided by an unpublished Memorandum Opinion and Judgment, the D.C. Court of Appeals authorizes use of its unpublished decisions "under the doctrines of the law of the case, res judicata, or collateral estoppel . . ." D.C. App. R. 28(g).  In this case, although there is not mutuality of all parties between the two actions, it is appropriate to rely on it for collateral estoppel purposes. See Parklane Hosiery, Inc. v. Shore, 439 U.S. 322 (1979); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971).

**C.    THE DISTRICT OF COLUMBIA GOVERNMENT IS NOT AN EMPLOYER COVERED BY THE NATIONAL LABOR RELATIONS ACT.**

Count III of the Complaint alleges that, in depriving Plaintiffs the right to organize for the purpose of collective bargaining, the Chief of Police has violated the National Labor Relations Act, 29 U.S.C. §§ 157 and 158. Complaint at ¶ 37. The allegation requires almost no comment.

The National Labor Relations Act ("NLRA") is applicable to private employers. This is logical since it was enacted under the Commerce Clause. See 29 U.S.C. § 151 (2006). By its very terms, the NLRA is not applicable to public sector employees (even assuming that these Reserve Officers were employees, not volunteers, under D.C. law). It excludes from the definition of "employer," inter alia, the federal government, federal corporations, and states and political subdivisions thereof. 29 U.S.C. § 152(2) (2006). That the District is not specifically named is of no consequence because, at the time of enactment of the NLRA, 1935, the government of the District of Columbia was a part of the federal government. The District did not obtain Home Rule, and the right to create its own personnel system, until many years later. Accordingly, the NLRA is inapplicable to the District of Columbia.

**II.    THE DISTRICT OF COLUMBIA CLAIMS**

The claims regarding alleged violations of District of Columbia law are brought as claims under the Court's supplemental jurisdiction authority. Complaint at ¶ 7. Because this Complaint fails to state a claim based on the Constitution or on federal law, as discussed above, this Court does not have jurisdiction over the D.C. claims under its supplemental jurisdiction authority. That there are no grounds for the original jurisdiction of this Court is fatal to any claim of supplemental jurisdiction.

Nevertheless, because District of Columbia claims are also included in the Complaint, the Defendant briefly addresses each of the claims based on District of Columbia law.

**A.    THE GENERAL ORDER DOES NOT VIOLATE APPLICABLE DISTRICT OF COLUMBIA STATUTES.**

The second Count III of the Complaint asserts, in its title, that there is a violation of the APA, but the real thrust of this count is that the General Order somehow deprives Reserve Officers of rights under other statutes. Their complaint apparently is that the General Order does not treat Reserve Officers as regular sworn officers for all purposes (except, perhaps, for salary). The allegations flow from an incorrect assumption, that the Reserve Officers are entitled to the same rights and privileges as regular police officers.

Before addressing the statutory issues, it should be noted that the General Order at issue is not a regulation and, therefore, is not subject to the notice and comment provisions of D.C. Official Code § 2-505 (2006). It is long-settled that MPD General Orders are issued for internal administrative purposes. They are not the equivalent of a local statute or a local regulation. Wanzer v. District of Columbia, 580 A.2d 127, 133 (D.C. 1990); Abney v. District of Columbia, 580 A.2d 1036, 1041 (D.C. 1990). See In re Walker, 856 A.2d 579, 586 (D.C. 2004) ("[W]e have held, in a variety of factual settings, that internal policy manuals and similar documents generally do not give rise to judicially enforceable rights, for they are not statutes or regulations and have no legal force or effect.") See also Johnson v. Williams, 887 A.2d at 1027 (table) (attached) and cases cited therein. Thus, the notice and comment provisions of the APA are not applicable to the issuance of the General Order and Plaintiffs' challenge on this basis, Complaint at ¶ 40, is misplaced.

As noted, however, the real basis for the second Count III is Plaintiffs' assertion that the General Order deprives Reserve Officers of rights and responsibilities granted to regular police officers, apparently based on the unstated assumption that they are entitled to the same rights and privileges. Thus, they cite to a number of statutory provisions applicable to regular officers and juxtapose them with the provisions of General Order 101 to point out the differences.

Regardless of those differences, the fact remains, as noted above, that regular officers and volunteer Reserve Officers serve under different statutory provisions. Volunteer Reserve Officers are covered by Metropolitan Police Department Reserve Corps Establishment Act of 2004, D.C. Official Code § 5-129.51 (2006), the Volunteer Services Act, D.C. Official Code § 1-319.01 (2006) et seq., and the applicable volunteer service regulations, 6 D.C.M.R. §§ 4000 et seq., provisions that are not applicable to regular civil service employee officers. Those acts and regulations simply do not give Reserve Officers the same rights, privileges, and protections as regular officers. In fact, those acts and regulations authorize the executive to determine the rights, responsibilities, duties, etc., of Reserve Officers. The Metropolitan Police Department Reserve Corps Establishment Act of 2004 expressly authorizes the Mayor, by rule, to --

> (1)    Prescribe the duties and responsibilities of the Reserve Corps members;

> (2)    Define the scope of Reserve Corps members" (sic) authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion; and

> (3)    Delineate the supervision Reserve Corps members are to receive.

D.C. Official Code § 5-129.51(d) (2006).

That the individual Reserve Officers disagree with this legal regime and disagree with the choices made about their volunteer reserve under the provisions of this statue is of no moment. If

they wish that legal regime changed, their recourse lies with the D.C. Council, not with this Court.

### B.    THE EMERGENCY RULES ISSUED BY THE CHIEF OF POLICE DO NOT VIOLATE THE NOTICE AND COMMENT PROVISIONS OF THE D.C. ADMINISTRATIVE PROCEDURES ACT.

Count IV of the Complaint asserts that the issuance of the emergency rules regarding Reserve Officers violates the APA. In Plaintiffs' view, no emergency existed to justify the issuance of emergency rules. Complaint at ¶ 51.

The APA authorizes the issuance of rules following appropriate notice and comment. D.C. Official Code § 2-505 (2006). The APA contains an exception to the notice and comment "if, in an emergency, as determined by the Mayor or an independent agency, the adoption of such rule is necessary for the immediate preservation of the public peace, health, safety, welfare, or morals[.] D.C. Official Code § 2-505(c) (2006). No such emergency rule may remain in place for more than 120 days. Id.

In this case, emergency rules were issued on May 19, 2006, for the limited period of 30 days. Those emergency rules were identical to proposed rules, which were published for notice and comment at that time. Those emergency rules, therefore, expired before the initiation of this civil action. (Defendant notes that a new set of emergency rules is being prepared and expects those rules to be issued in the next few days.)

While it is apparent that Plaintiffs seek a review on the merits of whether there is an emergency, in other words, a de novo review, this Court should not accept Plaintiffs' invitation to do so. Instead, the Court should defer to the determination of the Executive Branch that an

emergency situation existed.  This is particularly true in the area of police work and public safety.

In any event, there is no need for the Court to enter this thicket.  Plaintiffs themselves have eloquently conceded the existence of an emergency that justifies the rulemaking: "There was an immediate need to define these [Reserve O]fficers' authority and avoid potential liability to the city by permitting an officer to conduct police business with such previously ill-defined authority."  Plaintiff's Memorandum in Support of The Motion for a Preliminary Injunction at 5.

There is, consequently, no deficiency in the issuance of the emergency regulations.

C. **THE PROPOSED RULES ISSUED BY THE CHIEF OF POLICE ARE NOT VOID FOR ISSUANCE AFTER A STATUTORY DEADLINE BECAUSE THE STATUTE CONTAINS NO SANCTION FOR UNTIMELY ISSUANCE.**

Count V of the Complaint asserts that the regulations issued for notice and comment are invalid because they were not issued within 180 days of September 30, 2005, in violation of D.C. Official Code § 5-129.51(c) (2006).  Plaintiffs are correct that the proposed rules were issued after the expiration of that time period.

The issuance of rules after the expiration of a statutory period does not invalidate them. The D.C. Court of Appeals has held "that statutory time limits on agency decision making, where the statute fails to provide for a sanction, are 'directory rather than mandatory.' "  Spicer v. District of Columbia Real Estate Commission, 636 A.2d 415, 418 (D.C. 1993), quoting Hughes v. D.C. Dep't of Employment Services, 498 A.2d 567, 571, n. 8 (D.C.1985).  See also JBG Properties, Inc. v. D.C. Office of Human Rights, 364 A.2d 1183, 1185 (D.C.1976) (a statutory time limit is "directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of [a

- 12 -

public officer.]"); <u>Thomas v. Barry</u>, 234 U.S. App. D.C. 378, 379  n.5, 729 F.2d 1469, 1470 n.5 (D.C. Cir. 1984) ("[t]he general rule is that '[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision' " (internal citation omitted); <u>Fort Worth National Corp. v. Federal Savings & Loan Ins. Corp.</u>, 469 F.2d 47, 58 (5th Cir. 1972) ("A statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision." [emphasis in original]).  Further, Plaintiffs' argument would lead to the absurd consequence that once the executive branch has missed a deadline for the issuance of regulations, it could never do so and the Reserve Corps would remain forever unregulated. Surely, the Council intended no such result.

Consequently, that the proposed rules were issued on May 19, 2006, and published on June 9, 2006, for notice and comment does not invalidate those proposed rules.

Finally, Plaintiffs' motion for a preliminary injunction argues a separate ground for invalidity of those rules, <u>viz.</u>, that the proposed rules were issued by the Chief of Police when the statute expressly authorized the Mayor to do so.  That argument fails for the simple reason that the Mayor is authorized to delegate any of his functions (with certain exceptions not relevant here) to any officer or employee of the executive branch.  D.C. Official Code § 1-204.22(6) (2006).  On May 19, 2006, the Mayor delegated rulemaking power under the Metropolitan Police Department Reserve Corps Establishment Act and the Volunteer Services Act to the Chief of Police.  53 D.C. Reg. 5313 (June 30, 2006) (copy attached).  Thus, the Chief of Police was fully empowered to issue both the emergency rules and the proposed rules.

### III.     THIS CASE IS NOT APPROPRIATE FOR CLASS ACTION STATUS.

The Complaint to this matter asserts that it is a class action. It makes all of the expected assertions about numerosity of the class, commonality of the claims, and the ability of the named Plaintiffs to represent the class. Class status, however, is inappropriate for a matter such as this, even assuming it were to survive the motion to dismiss. Defendant will submit his views in full on class certification if Plaintiffs ultimately make a motion to that effect.

Nevertheless, Defendant notes that this case raises serious questions about commonality and typicality. This is not the usual type of case for class status where, for example, a defendant has terminated some type of government benefit for a large group of individuals for the same reason. This case does not involve matters such as widely applicable pay or benefits in which it may be assumed that each member of the class is identically situated with regard to the pay or benefit and would seek such pay or benefits.

While it is clear that these two Plaintiffs are dissatisfied with the legal regime for Reserve Officers on many different bases, there is simply no way to know whether their dissatisfaction is shared throughout the Reserve Corps. There is no way to know, for example, whether all Reserve Officers believe that they should have (much less whether they even want) the same arrest powers as sworn officers, whether they believe that they should be subject to the same reasons for discipline as sworn officers, whether they should be subject to the same selection and training requirements, etc.

Moreover, the issues presented in this case are of a legal nature. There will be no need to determine, for example and assuming that a class were to successfully prosecute its claims, the amount of withheld benefits for each individual. Assuming that there is any relief granted in this

case, such relief will almost certainly be of a declaratory nature and, therefore, generally applicable.

### Conclusion

For all of the foregoing reasons, the Complaint fails to state a cause of action on which relief may be granted and the Complaint should be dismissed.

Dated: August 4, 2006

                                Respectfully submitted,

                                ROBERT J. SPAGNOLETTI
                                Attorney General for the District of Columbia

                                GEORGE C. VALENTINE
                                Deputy Attorney General
                                Civil Litigation Division

                                /s/ K M Johnson /RV /jmc
                                KIMBERLY MATTHEWS JOHNSON
                                Chief, Section 1
                                DC Bar No. 435163

                                /s/
                                JACK M. SIMMONS, III
                                Assistant Attorney General
                                DC Bar No. 925420
                                441 Fourth St., NW
                                Sixth Floor South
                                Washington, DC 20001-2714
                                (202) 724-6653
                                (202) 727-0431  (fax)
                                jack.simmons@dc.gov
                                Attorney for Defendant