

IN THE DISTRICT OF COLUMBIA
COURT OF APPEALS

No. 04-CV-441

JAMES W. JOHNSON

Appellant

v.

ANTHONY A. WILLIAMS, *et al.*

Appellees

Appeal from the Superior Court
Of the District of Columbia

BRIEF OF APPELLEES

ROBERT J. SPAGNOLETTI
Attorney General
for the District of Columbia

EDWARD E. SCHWAB
Deputy Attorney General
APPELLATE DIVISION

WILLIAM J. EARL*
D.C. Bar No. 168856
Assistant Attorney General
441-4th Street, N.W.
Washington, D.C. 20001
Tel: (202) 724-6152

*Counsel Expected To Argue

## TABLE OF CONTENTS

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**The Trial Court Properly Entered Summary Judgment
Against Appellant on His Procedural Due Process Claims
Regarding Termination of His Volunteer Police Officer Position** . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

Cases

*Abdullah v. Roach*, 668 A.2d 801(D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Abney v. District of Columbia*, 580 A.2d 1036 (D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . 6

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724 (D.C. 2000) . . . . . . . . 9

*Halberstam v. Welch*, 227 U.S. App. D.C. 167, 174, 705 F.2d 472 (1983) . . . . . . . . . . . . . . . . 9

*Herrmann v. Moore*, 576 F.2d 453 (2nd Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Higgs v. Higgs*, 472 A.2d 875 (D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lee v. Jones*, 632 A.2d 113 (D.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Leonard v. District of Columbia*, 794 A.2d 618 (D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Masonry Corp. v. N&N Contractors*, 676 A.2d 26 (D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . 6

*Moorehead v. District of Columbia*, 747 A.2d 138 (D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . 8

*Simplex Time Recorder Co. v. Secretary of Labor, 247 U.S. App. D.C. 85, 766 F.2d 575 (1985) .................................................................................................................. 10

Starling v. Jephunneh Lawrence & Associates, 495 A.2d 1157 (D.C. 1985) ................ 9

Ungar Motors v. Abdemoulaie, 463 A.2d 686 (D.C. 1983) ............................................ 10

United States v. James Daniel Good Real Property, 510 U.S. 43 (1993) ....................... 6

*Waldon v. Covington, 415 A.2d 1070 (D.C. 1980) ........................................................ 9

*Wanzer v. District of Columbia, 580 A.2d 127 (D.C. 1990) .......................................... 8


Statutes

  D.C. Code, §1-305 (1981) ............................................................................................. 7

  D.C. Law 2-12, 24 D.C. Reg. 1442 (June 28, 1977) ..................................................... 8

  *D.C. Official Code, §1-319.02 (2001) ......................................................................... 7

  Volunteer Services Act of 1977 ..................................................................................... 7


Regulations

  6 DCMR, §§4000, et seq. (1982), 29 D.C. Reg. 5405 (December 10, 1982) ................. 7

  *6 DCMR, §§4000.12 and 4000.13 ................................................................................ 7

  Chapter 35 of the District of Columbia Personnel Manual ............................................ 7

---

\* Authorities chiefly relied upon.

IN THE DISTRICT OF COLUMBIA
COURT OF APPEALS

No. 04-CV-441

JAMES W. JOHNSON,
Appellant

v.

ANTHONY A. WILLIAMS, *et al.*,
Appellees

BRIEF OF APPELLEES

## ISSUE

Whether the trial court properly entered summary judgment against appellant on his procedural due process claims regarding termination of his volunteer police officer position?

## STATEMENT OF THE CASE

Appellant filed a *pro se* complaint asserting that he was denied procedural due process in the termination of his volunteer police officer position with the Metropolitan Police Department (MPD). After the close of discovery, the defendants below filed a motion for summary judgment arguing that appellant's termination did not involve the deprivation of any interests protected under the concept of procedural due process. The trial court granted this motion; and, appellant has now sought review of that ruling by this Court, maintaining that MPD failed to follow its own general orders in dismissing him from his reserve officer position.

## FACTUAL BACKGROUND

On May 16, 2003, James W. Johnson filed a *pro se* complaint in the Superior Court of the District of Columbia seeking equitable relief and compensatory damages for his dismissal from MPD's Reserve Corps Program. (Appendix for Appellees' Brief (App.), pp. 1-7). Named as defendants in that action were the District of Columbia, Mayor Anthony Williams, Police Chief Charles Ramsey and MPD (collectively referred to hereinafter as "the District of Columbia parties"); but Mr. Johnson did not allege any specific actions by either Mayor Williams or Chief Ramsey regarding his termination. App.1, 3-5. Mr. Johnson did, however, generally allege that the named defendants conspired with each other to deprive him of the procedures set forth in MPD's general orders regarding its Reserve Corps Program.

On August 8, 2003, the District of Columbia parties filed their answer to the complaint, admitting that Mr. Johnson had been dismissed from service as a reserve police officer, but denying that any required procedures had been neglected thereby. App. 11-19. Thereafter, on September 5, 2003, the District of Columbia parties served Mr. Johnson with their responses to his first set of interrogatories and requests for documents. App. 21-155. These responses revealed that, in January 2000, Mr. Johnson had been suspended from his volunteer position based on his unauthorized participation in a traffic stop. App. 83-89. The discovery responses further disclosed that this suspension continued for over a two-year period because of Mr. Johnson's refusal to acknowledge that his actions had been without authorization; and that ultimately, on May 15, 2002, Mr. Johnson was notified of the agency's final decision to terminate him from the reserve officer program, effective May 17, 2002. App. 55, 75, 83-89. This agency

2

action had been recommended and initiated by MPD Commander Kevin Keegan and finally authorized by Executive Assistant Police Chief Terrence Gainer. App. 25, 55, 75, 83.

The discovery responses also reflected that MPD's general orders provided for a volunteer reserve officer's receiving prior written notice of any proposed termination of his position, with an opportunity to answer any charges leveled against him, before a final decision of dismissal. App.137-139. And, it was apparent from the discovery responses that Mr. Johnson had not been given significant prior notice of the final decision to dismiss him from the program. App. 25.

On December 19, 2003, Mr. Johnson filed a motion to compel discovery from the District of Columbia parties and for an extension of the discovery completion deadline (then set for January 12, 2004). App. 187, 191-203. In his motion, Mr. Johnson complained that the District had refused to make either Mayor Williams or Chief Ramsey available for oral deposition, and that he had not received responses to a second set of interrogatories he had served upon the District's counsel.[1] Mr. Johnson also requested that the discovery period in the case be extended for an additional 90 days. App. 193.

On December 23, 2003, the District of Columbia parties filed their opposition to the motion to compel, together with their own motion for protective order. App. 205-225. In their filing, the District of Columbia parties argued that the Mayor and the Police Chief should not be burdened with the inconvenience of attending oral depositions in a case in which discovery had already revealed that these high-level officials had no

---

[1] This second set of interrogatories was addressed solely to Mayor Williams and Chief Ramsey. App. 157-167.

3

personal knowledge of or involvement in the termination of Mr. Johnson's volunteer position. On January 7, 2004, the District of Columbia parties also moved for a protective order regarding Mr. Johnson's attempt to depose then former Assistant Police Chief Terrence Gainer, asserting that a subpoena of that former MPD official had not been properly served and that any relevant information possessed by Gainer was more conveniently available from other sources. App. 227-249.

On January 10, 2004, the trial court (Frederick H. Weisberg, J.) entered orders denying Mr. Johnson's motion to compel and precluding him from pursuing the depositions of Mayor Williams, Chief Ramsey and former Assistant Chief Gainer without making a showing of exceptional circumstances justifying such discovery. App. 251-257.

On January 14, 2004, the District of Columbia parties moved for summary judgment on Mr. Johnson's due process claims. App. 259-305. In this motion, the District of Columbia parties argued that, under the local statute governing volunteer service within the District government and the personnel regulations implementing that statute, Mr. Johnson had no protected legal interests in his reserve officer position invoking his constitutional right of due process. App. 269-273. The District of Columbia parties also noted that Mr. Johnson's complaint had failed to set forth a viable civil conspiracy claim since a municipal corporation could not be held to have conspired with itself. App. 273-275.

On January 28, 2004, Mr. Johnson filed his opposition to the summary judgment motion as well as his own motion for default judgment. App. 325-351. Mr. Johnson contended that the statutory and regulatory authorities cited by the defendants as

4

governing volunteer service within the District government had not been in effect at the time of his termination and that the procedures set forth in the MPD general orders were those to which he was legally entitled. App. 335. Mr. Johnson also maintained that the defendants were in default because they had never filed a timely answer to his complaint, and had refused to honor his legitimate discovery requests. App. 335-339. Mr. Johnson, however, did not explain the basis on which he had determined that the defendants' August 2003 answer to the complaint was untimely.

On March 29, 2004, the trial court issued orders granting the District of Columbia parties' motion for summary judgment and denying Mr. Johnson's motion for default judgment. App. 353-367. The court ruled that, based on the statutory and regulatory authorities governing volunteer service within the District government, Mr. Johnson had no protected property interest in continuing as a reserve officer with MPD. App. 357-359. The court also concluded that, because his dismissal had involved merely assertions of unauthorized job performance, Mr. Johnson had no protected liberty interest at stake in MPD's termination decision. App. 355-357. The court therefore held that Mr. Johnson could not prevail on his due process claim as a matter of law. The trial court further held that Mr. Johnson could not establish the essential elements of a civil conspiracy claim. App. 361-363.

This appeal followed.

5

## **ARGUMENT**

THE TRIAL COURT PROPERLY ENTERED SUMMARY JUDGMENT AGAINST APPELLANT ON HIS PROCEDURAL DUE PROCESS CLAIMS REGARDING TERMINATION OF HIS VOLUNTEER POLICE OFFICER POSITION.

The question of whether the trial court has properly granted a motion for summary judgment is one of law; and this Court reviews a summary judgment decision through independent examination of the factual record, without any deference to the lower court's findings. See *e.g., Abdullah v. Roach*, 668 A.2d 801, 804 (D.C. 1995); *Lee v. Jones*, 632 A.2d 113, 115 (D.C. 1993). This Court views the factual record below in the light most favorable to the nonmoving party; but, nonetheless, it will affirm a summary judgment supported by that record and consistent with applicable law. See *e.g., Abdullah v. Roach, supra; Masonry Corp. v. N&N Contractors*, 676 A.2d 26, 30 (D.C. 1996).

In this case Mr. Johnson complains of denial of his procedural due process rights. The essence of procedural due process is prior notice and an opportunity to be heard before adverse government action. See *e.g. United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993). However, it is well settled that the requirements of procedural due process apply only to the deprivation of protected property and liberty interests. To have a protected property interest in a public employment position, an individual must have more than personal need or desire for it; rather he must have a claim of entitlement to it; and such claims of entitlement are created and defined by state law. See *e.g. Leonard v. District of Columbia*, 794 A.2d 618, 624 (D.C. 2002) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-577 (1972)). Moreover, termination of a public employment position implicates a protected liberty interest only where the

termination is undertaken in a manner that "stigmatizes" the employee by impugning his reputation or by foreclosing future employment opportunities. *Id.* at 627. No such stigma is created by statements which merely comment on an employee's job performance as opposed to his personal characteristics. *Id.*

In the instant case, the material facts are undisputed. Mr. Johnson served in MPD's volunteer Reserve Officer Program until he was suspended in January 2000 for unauthorized participation in a traffic stop; and he was subsequently dismissed from the program in May 2002 based on the same incident which had prompted the earlier suspension. Moreover, Mr. Johnson was not given written notice of any proposal to terminate him prior to the agency's final decision being issued.

Nevertheless, volunteer service within the District of Columbia government is governed by personnel regulations promulgated pursuant to the Volunteer Services Act of 1977. See D.C. Official Code, §1-319.02 (2001) [formerly codified at D.C. Code, §1-305 (1981)]; 6 DCMR, §§4000, *et seq.* (1982), 29 D.C. Reg. 5405 (December 10, 1982).[2] Under these regulations, an individual serves with a District government agency in a volunteer capacity solely at that agency's discretion; and the agency's termination of a volunteer's services is not considered an adverse personnel action and does not give rise to any right or process of appeal. See 6 DCMR, §§4000.12 and 4000.13.

Under this statutory and regulatory framework, volunteer employees such as Mr. Johnson plainly have no protected property interest regarding continued service within

---

[2] A copy of the originally published version of the personnel regulations regarding volunteer service is set forth at App. 369-379. The version of these regulations currently found in Chapter 35 of the District of Columbia Personnel Manual (DPM) was attached to the January 14, 2004 motion for summary judgment, and is set forth herein at App. 287-295. The two versions are, of course, identical in substance.

7

the District government, and their termination from such government service does not entitle them to any procedural due process. Likewise, since the basis for Mr. Johnson's termination was solely MPD's assessment of his job performance, he had no protected liberty interest at stake entitling him to any procedural due process.

Before this Court, Mr. Johnson apparently reiterates his argument made below that the MPD general orders take precedence over the Volunteer Services Act and its implementing regulations, entitling him to prior notice and the opportunity for a hearing before he could be terminated from MPD's Reserve Corps. However, unpublished agency protocols and procedures such as those embodied in MPD's general orders do not preempt statutes or published administrative regulations. See *e.g. Moorehead v. District of Columbia*, 747 A.2d 138, 145 (D.C. 2000) (MPD's unpublished Special Officers' Manual has no legal force or effect); *Abney v. District of Columbia*, 580 A.2d 1036, 1041 (D.C. 1990) (MPD's general orders do not expand the District's liability limited by statute); *Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C. 1990) (MPD's general orders are not the equivalent of a local statute capable of creating a special public duty). Moreover, Mr. Johnson is incorrect in his assertion that the Volunteer Services Act and its implementing regulations were not in effect at the time of his dismissal from MPD; the statute was enacted in 1977 (D.C. Law 2-12, 24 D.C. Reg. 1442 (June 28, 1977)), and the personnel regulations in question were first published in 1982 (29 D.C. Reg. 5405 (December 10, 1982)). Accordingly, the trial court quite properly granted summary judgment against Mr. Johnson on his procedural due process claim.

Further, the essential elements of a civil conspiracy claim are: (1) an agreement between two or more persons; (2) to perform an unlawful act or to perform a lawful act in

an unlawful manner; and (3) with the claimant suffering injury as a result of the unlawful act done pursuant to the common scheme. See *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000); *Higgs v. Higgs*, 472 A.2d 875, 877 (D.C. 1984). Moreover, in this jurisdiction a claim of civil conspiracy is not independently actionable, but rather is only a means of establishing liability for the wrongful act undertaken in the common scheme. See *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp., supra* (quoting *Waldon v. Covington*, 415 A.2d 1070, 1074 n. 14 (D.C. 1980); and *Halberstam v. Welch*, 227 U.S. App. D.C. 167, 174, 705 F.2d 472, 479 (1983)). In the instant case, Mr. Johnson's complaint set forth general allegations of a conspiracy between the District of Columbia and its own officials aimed at denying his due process rights under MPD's general orders. However, as noted above, the MPD general orders do not establish any legally enforceable due process rights for that agency's volunteer officers; and thus, Mr. Johnson presents no actionable conspiracy claim as a matter of law. Moreover, even if he had otherwise stated a viable due process claim, Mr. Johnson's conspiracy claim would still fail since the actions of governmental agents such as the Mayor and Police Chief are considered those of the District of Columbia itself, a single "person" in the eyes of the law. *Cf. Herrmann v. Moore*, 576 F.2d 453, 459 (2nd Cir. 1978). Accordingly, the trial court also properly entered summary judgment against Mr. Johnson on his conspiracy claim as well.[3]

---

[3] The trial court also properly denied Mr. Johnson's motion for default judgment since he did not identify anything in the record establishing that the District of Columbia parties' August 8, 2003 answer to his complaint was untimely filed. And, even if that pleading had been filed out of time, Mr. Johnson made no assertion of prejudice therefrom justifying the entry of default over five months after his complaint had been put at issue. *Cf. Starling v. Jephunneh Lawrence & Associates*, 495 A.2d 1157, 1159-1160 (D.C. 1985).

## CONCLUSION

The trial court's entry of summary judgment in favor of appellees should be affirmed.

Respectfully Submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

EDWARD E. SCHWAB
Deputy Attorney General, Appellate Division
Bar Number 100503

WILLIAM J. EARL
Assistant Attorney General
Bar Number 168856
441 – 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
(202) 724-6152
(202) 727-0431 (fax)
E-mail: william.earl@dc.gov
Attorneys for Appellees

---

Mr. Johnson also complains in this appeal that the trial court erred in denying his motion to compel discovery and granting the District of Columbia parties' motions for protective order. However, the trial court has wide latitude in addressing discovery issues, and its decisions on those issues will be reversed only for an abuse of discretion. See e.g., *Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 687 (D.C. 1983). Here, Mr. Johnson sought to compel the Mayor and the Police Chief to attend oral depositions and to personally answer written interrogatories despite unrebutted indications that these officials had no personal involvement in his dismissal from MPD. On that record, it was not unreasonable for the trial court to require Mr. Johnson to make a showing of exceptional circumstances justifying his pursuit of such discovery. *Cf. Simplex Time Recorder Co. v. Secretary of Labor*, 247 U.S. App. D.C. 85, 766 F.2d 575, 586-587 (1985) (high-level government officials should not be subjected to oral depositions to explain discretionary decisions absent a showing of exceptional circumstances). The same rationale also applies to the oral deposition of former Assistant Chief Gainer, which Mr. Johnson sought to compel despite Chief Gainer's limited formal involvement in the termination decision and the exercise of discretion involved therein.

10

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Brief of Appellees and the accompanying appendix were mailed first class, postage prepaid, this 18th day of May 2005 to:

James W. Johnson, *pro se*
4644 - A Street, S.E.
Washington, D.C. 20019

*William J. Earl*
William J. Earl
Assistant Attorney General, D.C.