UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MPD RESERVE OFFICERS, et al.<br><br>                      **Plaintiffs**<br><br>v.<br><br>CHARLES RAMSEY<br><br>                      **Defendant** | Case Number:<br>1:06CV01223HHK<br><br>Judge Henry H. Kennedy, Jr.<br><br>Next event:<br>Preliminary Injunction Hearing<br>August 16, 2006 |

**PLAINTIFFS' BRIEF IN REPLY TO THE DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION**

The Plaintiffs, by counsel, hereby offer their Brief in Reply to the Defendant's Opposition to the Plaintiffs' Motion for a Preliminary Injunction.

**1.    The Defendant's claim of defective service of the Motion is groundless.**

The Defendant claims that the Motion for a Preliminary Injunction was not served properly. The Motion was served upon an attorney in the employment of the Attorney General, the counsel presently representing the Defendant. The Defendant has had both actual and constructive notice of the Plaintiffs' Motion and has been given a meaningful opportunity to respond. The Defendant's filing of a timely Opposition thereto constitutes an absolute waiver to any claim of insufficient service of process.

The Defendant concedes that the Motion was served upon the Metropolitan Police Department's General Counsel. Docket #10 at 3[1]. The General Counsel is an attorney employee of the Office of the Attorney General, who entered an appearance in this case

---

[1] References herein to documents within the ECF system use the ECF page numbers.

on July 21, 2006. Docket #7. The Plaintiffs' Motion was entered into the Court's Electronic Case Filing system on July 10, 2006. Docket #3. The Attorney General filed a Consent Motion to extend time to respond to the Plaintiffs' Motion after conferring with the Plaintiff's counsel on the matter. Docket #8.

Physical service of process upon the Defendant is nearly impossible. The Defendant, who once proclaimed an "open door" policy to his employees and the public, has since spent millions of dollars of taxpayer money renovating the fifth floor of Police Headquarters and now sequesters himself daily behind a series of locked bulletproof doors controlled by an armed guard in the lobby. The Plaintiffs' process server was previously refused entry even into the Defendant's outer office to attempt service upon the Defendant. After repeated failed attempts by this counsel to confer with the General Counsel to arrange amicable service of process of the Complaint upon the Defendant, it was necessary to make service upon the Defendant at his home, despite him being sued in his official capacity as the Chief of the Metropolitan Police Department.

The District of Columbia Circuit has recognized that rules of service should not be read so rigidly as to elevate technical requirements over purpose. The general attitude of the Federal courts is that rules of service should be liberally construed in the interest of doing substantial justice and that the propriety of service in each case should turn on its own facts within the limits of the flexibility provided by the rule itself. This is consistent with the modern conception of service of process as primarily a notice-giving device. FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson, 205 U.S. App. D.C. 172, 636 F.2d 1300, 1313 n.61 (D.C. Cir. 1980) (quoting 4 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: Civil § 1083, at 332-33 (1969 & Supp.1977)).

Courts have found valid service of process when a defendant has actual notice of a lawsuit filed against him. In such situations, notice of the pending lawsuit satisfies the due process of law requirement that a defendant receive fair notice of a proceeding against him and thus provides the court with *in personam* jurisdiction. Keevan & Son, Inc. v. Callier Steel Pipe & Tube, 107 F. R. D. 665, 671 (S.D. Fla. 1985) (citing Nowell v. Nowell, 384 F.2d 951 (5th Cir. 1967), *cert. denied*, 390 U.S. 956 (1968); Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir. 1963)). *See also* Churchill v. Barach, 863 F. Supp. 1266, 1271 (D. Nev. 1994); Hartford Fire Ins. Co. v. Perinovic, 152 F.R.D. 128 (N.D. Ill. 1992); National Dev. Co. v. Triad Holding Corp., 131 F.R.D. 408, 412 (S.D.N.Y. 1990), *aff'd*, 930 F.2d 253 (2d Cir.), *cert. denied*, 502 U.S. 968 (1991). To determine if service of process has been effective, courts necessarily examine the facts of each particular case. If the court finds that the defendant received notice and the plaintiff made a good faith effort to serve the defendant, then the court will most likely find that service of process has been effective. Keevan, 107 F. R. D. at 671.

**2.    The proposed injunction shall not disrupt any lawful discretionary conduct by the Defendant.**

The Plaintiffs' proposed injunction offers no impediment to the Defendant's administration of the Metropolitan Police Department and its Reserve Corps within the existing limitations of his authority under law.  There is no suggestion within the Plaintiffs' Complaint or applications for injunctive relief that the Defendant does not have the authority to deploy or supervise Reserve Officers within the confines of the discretion afforded to him under applicable law and regulation.  The Plaintiffs solely seek to bar the Defendant from engaging in such legislative activity explicitly restricted by

D.C. Code § 5-129.51 and the District of Columbia Administrative Procedures Act, D.C. Code § 2-501 *et. seq*.

The administration of the Metropolitan Police Department is a highly regulated activity and numerous functions of the Defendant, including maintaining the Reserve Corps, are ministerial and not discretionary. *See* Docket #14 at 5-7. The Defendant's actions run contrary to the express and implied intent of the City Council and the Defendant acts contrary to the public's interest in thwarting or circumventing the stated objectives of the Reserve Corps statute. *See* Id. at 7-11.

### 3. The Mayor's delegation of authority to the Defendant was without authority of the legislature and without effect of law.

The Defendant offers an unnumbered exhibit (Docket #12 at 3) in support of his contention that his authority to engage in the offending rulemaking was authorized and delegated by the Mayor. Mayor's Order 2006-57 appears to bear the signature of the Mayor and is dated May 19, 2006. The document appeared in the D.C. Register on June 30, 2006. 53 D.C. Reg. 5313.

The authority delegated to the Defendant by the Mayor was greater than the Mayor's own authority and any re-delegation of authority by the Mayor specifically delegated to him was improper. *See* Docket #14 at 12-16. Any construction of D.C. Code § 5-129.51 which would grant the Mayor or the Defendant purely legislative authority exceeds the scope of administrative rule making and violates fundamental laws of separation of powers. *See* Docket #14 at 16-19. It is the Defendant who bears the burden here of demonstrating an emergency which justifies the present emergency rulemaking. Wheelchair Carriers Ass'n v. D.C., Civil Action No. 00-1586 (GK), 2002

4

U.S. Dist. LEXIS 4617 (D.D.C. 2002).  He has failed to do so.  *See* Docket #14 at 19-20.

Where the Defendant has exceeded his authority in rulemaking, immediate declaratory and injunctive relief is appropriate.  District of Columbia v. Group Ins. Admin., 633 A.2d 2, 20-21 (D.C. 1993).  *See* Docket # 14 at 20-22.

**4.    The Johnson case does not support the Defendant's claim that Reserve Officers have no rights of procedural due process prior to removal from the police force.**

The Defendant offers the unpublished opinion in Johnson v. Williams, 887 A.2d 1027 (D.C. 2005) in support of his contention that the Plaintiffs and the other members of the proposed Plaintiff class have no vested rights of procedural due process in disciplinary matters.  The Johnson case does not justifiably support this contention as the District of Columbia Court of Appeals finding in that case was in fact, corrupted by a fraud perpetrated by the Defendant's counsel upon the court.

In the course of the Johnson case, staff attorneys of the Office of the Attorney General purposefully withheld D.C. Code § 5-127.01 from the consideration of the courts, a statute otherwise unknown to the non-attorney, *pro se* litigant Johnson.  In doing so, these attorneys violated their ethical duties of candor to the court.  *See* Docket #14 at 23-27.  D.C. Code § 5-127.01 states, *inter alia*:

> …no *person* shall be removed from said police force except upon written charges preferred against him in the name of the Chief of Police of said police force to the trial board or boards hereinafter provided for and after an opportunity shall have been afforded him of being heard in his defense;

[emphasis added].  It is important to note that this code section appears in Subchapter XIV, "General Powers and Duties" and not within Subchapter III, "Personnel".  The provisions for the Reserve Corps, D.C. Code § 5-129.51, appears in Subchapter XV-B,

5

"Reserve Corps". It is immediately evident by the broad and all-encompassing language employed by D.C. Code § 5-127.01, that section covers all *persons*, not just employees or personnel, within the police force and that such code section is definitively applicable to Reserve Officers. Further, D.C. Code is superior to any municipal regulation and this section is controlling, not the DCMR referenced by the Defendants above.

In terms of government volunteers, Reserve Officers are unique to the District of Columbia. No other volunteer position known to this counsel has nearly the same commitment and demands of training and performance. The Reserve Officer appointment and training process can literally take years to accomplish. No other volunteer position in the District involves the level of public trust, competence and discretion that is required of an unpaid police officer. As with any public office, the Reserve Officer's discretion to perform law enforcement duties must be free of any undue influence which would permit favoritism, prejudice or abuse. Once a Reserve Officer makes this huge commitment of time to become a member of the Reserve Corps and given the public's trust, such office should not be taken away at the whim of one person. Contrary to the unfounded assertions of the Defendant, any removal from a position of public trust such as a Police Officer carries a stigma upon one's career that cannot ever be erased. *See i.e.* 6 VA. ADMIN. CODE 20-171-450(B)(2) (an applicant with prior law enforcement experience is eligible for a training waiver if "such employment was not terminated due to misconduct or incompetence".)

The Attorney General cannot suggest that D.C. Code § 5-127.01 does not afford due process rights to any person within the police force, or that Reserve Officers are not "persons" for the purposes of District of Columbia law. However, in litigating against a

6

*pro se* plaintiff ignorant of the law, it was simply too easy and too convenient to omit this citation from all of the Defendants' briefs and argument in order have Johnson's case quickly dismissed. Nevertheless, the <u>Johnson</u> case remains as an excellent demonstration that, contrary to the Defendant's assertions (Docket #10 at 3), the Plaintiffs' concerns of arbitrary or abusive removal from office by the Defendant are not speculative and are indeed well supported.

    **5.**    **The Plaintiffs, the members of the proposed Plaintiff Class and the citizens of the District of Columbia shall all suffer an irreparable harm if the injunction is not granted.**

As the Plaintiffs will demonstrate upon an evidentiary hearing, the unfair and irreconcilable rulemaking promulgated by the Defendant all but now precludes each Reserve Officer from the performance of his or her duties. Testimonial evidence will be offered that the offending rulemaking has directly impacted the number of hours of service provided to the District of Columbia and that continued performance of duties whatsoever in the future may be predicated upon the vacation of the unlawful rulemaking. Reserve Officers are a uniquely dedicated group of citizens who offer extraordinary services to the city for free which many other citizens would be unwilling to do for *any* amount of pay.

If the Defendant continues to unlawfully berate and abuse them in this manner, it is an absolutely reasonable conclusion that many Reserve Officers will leave for other volunteer opportunities elsewhere and not return again. Beyond any loss to the individual Reserve Officers of the experience and personal fulfillment they receive from serving, the

District as a whole suffers an irreparable harm by the loss of these extraordinary and irreplaceable civil servants.

### 6. The Defendant's prohibition of collective bargaining violates the inalienable rights of all members of the proposed class.

The Defendant wishes to obscure the real issues involved in its prohibition of collective bargaining by Reserve Officers.  By arguing, without any controlling authority in support, that the District of Columbia is not subject to the National Labor Relations Act, the Defendant ignores that the Act is predicated upon, and in the furtherance of, fundamental and inalienable rights of free speech and free association.  The Defendant's cases cited in no way support the propositions which the Defendant offers them.  *See* Docket #14 at 2-3.  It need not be determined if the NLRA is applicable to the District of Columbia government or if the Plaintiffs have a property interest in collective bargaining (Docket #11 at 8), because it cannot be denied that they have a protected liberty interest. Thomas v. Collins, 323 U.S. 516, 518 (1945).

The Defendant's blanket prohibition against organizing for collective bargaining purposes is absolutely a deprivation of the Reserve Officers' rights of free speech and free association.  The Defendant offers no suggestion that any legitimate government purpose is furthered by the prohibition.  The Defendant will never be able to demonstrate any "clear and present danger" that justifies a prohibition (and there is no suggestion of any proposed regulation thereof by the Defendant, only an outright prohibition) of such collective bargaining.  The Plaintiffs' deprivation of these civil rights is justiciable by this Court under 42 U.S.C. § 1983.

7.      **It is appropriate for this Court to hear the Plaintiffs' claims of deprivations of civil rights.**

This Court should not defer to the District's courts in determining Reserve Officers' civil rights under District of Columbia law. District of Columbia residents are entitled, as of right, to access an Article III court , as opposed to a mere Article I court (such as the D.C. Superior Court and Court of Appeals), to resolve constitutional questions. O'Donoghue v. United States, 289 U.S. 516 (1933). *See* Docket #14 at 27-29. The Johnson case is bad law, and the Plaintiffs are plainly entitled to procedural due process under D.C. Code § 5-127.01. It is inappropriate and unfair to the Plaintiffs for this Court to permit the Defendant to deprive the District's Reserve Officers of these vested rights when doing so is absolutely contrary to the statute and contrary to the public's interest.

8.      **Conclusion.**

For these reasons, the reasons set forth in the application for the injunction, and the reasons set forth in the Plaintiffs' Opposition to the Defendant's Motion to Dismiss, the Plaintiffs' Motion for a Preliminary Injunction should be GRANTED.

Respectfully Submitted,

_____
Matthew August LeFande
DC Bar #475995
1001 Sixteenth Street NW
Washington DC 20036-5701
Tel: (202)737-5350
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs