**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MPD RESERVE OFFICERS, et al.**<br><br>                   **Plaintiffs**<br><br>**v.**<br><br>**CHARLES RAMSEY**<br><br>                   **Defendant** | **Case Number:**<br>**1:06CV01223HHK**<br><br>**Judge Henry H. Kennedy, Jr.** |

**PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT GRANTING**
**DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 56(d) and LCvR 7.1(h), hereby move this Court to grant partial summary judgment as to the Plaintiffs' request for declaratory and injunctive relief.

There being no material facts in dispute requiring litigation as to the Plaintiffs' demands for such relief, the Plaintiffs are now entitled to declaratory relief under 28 U.S.C. § 2201(a).   This Court should declare the Defendant's promulgation of the new MPD General Order 101.3 (Pl.s' Ex. A) to be illegal rulemaking and void.  The Plaintiffs are entitled to further declaratory relief declaring the May 19, 2006 emergency and proposed rulemaking to be illegal and void.  While the emergency rulemaking has expired, the Defendant has refused to refrain from further such rulemaking and this issue is capable of repetition, but should not now evade the Court's review.

This Court should further now enjoin the Defendant from promulgating or enforcing any rule which attempts to "define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any

limitations on or restrictions to their authority and discretion" and any rule which

improperly deprives the Plaintiffs of rights otherwise afforded under applicable law.

This Motion is supported by the attachment Memorandum of Law and Authority

in Support, the Plaintiffs' Statement of Material Facts not in Dispute, the attendant

exhibits and the entire record herein.


October 15, 2006

Respectfully Submitted,


_____
Matthew August LeFande
DC Bar #475995
1001 Sixteenth Street NW
Washington DC 20036-5701
Tel: (202)657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **MPD RESERVE OFFICERS, et al.** |
| **Plaintiffs** |
| **v.** |
| **CHARLES RAMSEY** |
| **Defendant** |

**Case Number:**
**1:06CV01223HHK**

**Judge Henry H. Kennedy, Jr.**

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT GRANTING**
**DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 56(d) and LCvR 7.1(h), have moved this Court to grant partial summary judgment as to the Plaintiffs' request for declaratory and injunctive relief. In support of this Motion, the Plaintiffs now offer the following Statement of Material Facts not in Dispute.

1.      MPD has maintained a uniformed corps of volunteer police officers, the MPD Reserve Corps, since 1951.

2.      The Plaintiffs have performed police duties on behalf of MPD, subject to the rules, regulations and applicable law of the District of Columbia.

3.      In 2004, the District of Columbia City Council enacted legislation as part of the Omnibus Public Safety Act of 2004 authorizing the Mayor to establish an MPD Reserve Corps in the District of Columbia. D.C. CODE § 5-129.51.

4.      The law stated, *inter alia*, "[t]he selection criteria required for and training provided to members of the Reserve Corps shall be similar to the selection criteria required for and training provided to full--time, sworn police personnel."  <u>Id</u>.

5.      The City Council instructed the Mayor to

…pursuant to subchapter I of Chapter 5 of Title 2 [the District of Columbia Administrative Procedures Act], issue rules to implement the provisions of this section within 180 days of September 30, 2004. The rules shall:

   (1)   Prescribe the duties and responsibilities of Reserve Corps members;

   (2)   Define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion; and

   (3)   Delineate the supervision Reserve Corps members are to receive.

<u>Id</u>.

6.      The Mayor of the District of Columbia did not issue any such rules prior to the deadline mandated by the City Council.

7.      On March 28, 2006, the Defendant issued MPD General Order 101.3 (2006) (Pl.s' Ex. A, herein, the "new General Order") replacing MPD General Order 101.3 (1995) (Pl.s' Ex. B).

8.      The new General Order stated that a "Sworn Officer" was only such officers that were "appointed to a full-time, paid, continuing position in the civil service rank", excluding the Plaintiffs and all members of the proposed Plaintiff Class.  (Pl.s' Ex. A at 2).

9.      The new General Order stated that a "Sworn Member" was an "individual who is a full-time, paid Department employee in a sworn rank of officer or above", excluding the Plaintiffs and all members of the proposed Plaintiff Class.  <u>Id</u>.

10.    The new General Order asserted that MPD Reserve Officers "shall serve at the pleasure of the Chief of Police, who shall, without limitation, have the authority to determine when to reduce a Reserve Corps member in rank or Level and remove a Reserve Corps member from the Reserve Corps.  Such determination shall not be subject to administrative review."  Id. at 6.  *See also* Id. at 5.

11.    The new General Order made further limitations upon MPD Reserve Officers' authority and discretion in carrying out their duties and responsibilities, including Reserve Officers' abilities to make arrests and issue District of Columbia Notices of Infractions.  Id. at 6.

12.    The new General Order further stated MPD Reserve Officers "shall not… have the right to organize for collective bargaining purposes" unless "specifically provided by the laws of the District of Columbia."  Id. at 4.

13.    The new General Order set numerous criteria and pre-conditions for the Plaintiffs and members of the proposed Plaintiff Class to receive "Level I" training, training that includes firearms training received by full-time officers.  Id. at 7-8.

14.    On June 9, 2006, the Defendant caused to be published within the District of Columbia Register a Notice of Emergency and Proposed Rulemaking.  53 D.C.REG. 4581.

15.    The Notice stated that the Defendant adopted the rules enumerated within on an emergency basis effective May 19, 2006.  Id.

16.    The emergency and proposed rules contained the same or similar limitations upon MPD Reserve Officers contained within the new General Order.  Id.

17.     The Defendant refuses to refrain from further emergency rulemaking

regarding the MPD Reserve Corps.

18.     The Defendant refuses to treat the proposed rulemaking as a "contested

case" as defined under D.C. Code § 2-502 (8).

19.     The Defendant refuses to afford the Plaintiffs a hearing on the proposed

rulemaking as otherwise required by D.C. Code § 2-509 (a).

October 15, 2006

Respectfully Submitted,

_____
Matthew August LeFande
DC Bar #475995
1001 Sixteenth Street NW
Washington DC 20036-5701
Tel: (202)657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MPD RESERVE OFFICERS, et al.**<br><br>                              **Plaintiffs**<br><br>**v.**<br><br>**CHARLES RAMSEY**<br><br>                              **Defendant** | **Case Number:**<br>**1:06CV01223HHK**<br><br>**Judge Henry H. Kennedy, Jr.** |

**MEMORANDUM OF LAW AND AUTHORITY IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**
**GRANTING DECLARATORY AND INJUNCTIVE RELIEF**

The Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 56(d) and LCvR 7.1(h), have moved this Court to grant partial summary judgment as to the Plaintiffs' request for declaratory and injunctive relief.

There being no material facts in dispute requiring litigation as to the Plaintiffs' demands for such relief, the Plaintiffs are now entitled to declaratory relief under 28 U.S.C. § 2201(a).  This Court should declare the Defendant's promulgation of the new MPD General Order 101.3 (Pl.s' Ex. A) to be illegal rulemaking and void.  The Plaintiffs are entitled to further declaratory relief declaring the May 19, 2006 emergency and proposed rulemaking (53 D.C. REG. 4581) to be illegal and void.  While the emergency rulemaking has expired, the Defendant has refused to refrain from further such rulemaking and this issue is capable of repetition, but should not now evade the Court's review.

This Court should now further enjoin the Defendant from promulgating or enforcing any rule which attempts to "define the scope of Reserve Corps members'

authority and discretion in carrying out their duties and responsibilities, including any

limitations on or restrictions to their authority and discretion" and any rule which

improperly deprives the Plaintiffs of rights otherwise afforded under applicable law.


FACTUAL BACKGROUND

In 2004, the District of Columbia City Council enacted legislation as part of the

Omnibus Public Safety Act of 2004 authorizing the Mayor to establish an MPD Reserve

Corps in the District of Columbia, *de facto* extant since 1951.  D.C. CODE § 5-129.51.

The law stated, *inter alia*, "[t]he selection criteria required for and training provided to

members of the Reserve Corps shall be similar to the selection criteria required for and

training provided to full--time, sworn police personnel."  Id.  The City Council instructed

the Mayor to

> …pursuant to subchapter I of Chapter 5 of Title 2 [the District of Columbia
> Administrative Procedures Act], issue rules to implement the provisions of this
> section within 180 days of September 30, 2004. The rules shall:
>
> (1)    Prescribe the duties and responsibilities of Reserve Corps members;
>
> (2)    Define the scope of Reserve Corps members' authority and discretion in
> carrying out their duties and responsibilities, including any limitations on or
> restrictions to their authority and discretion; and
>
> (3)    Delineate the supervision Reserve Corps members are to receive.

Id.  The Mayor did not issue any such rules prior to the deadline set forth by the City

Council.

On March 28, 2006, approximately one year after the deadline passed under D.C.

Code § 5-129.51, the Defendant, not the Mayor, issued MPD General Order 101.3 (2006)

(Pl.s' Ex. A, herein, the "new General Order") replacing MPD General Order 101.3

(1995) (Pl.s' Ex. B). The new General Order contains agency rules defining the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including limitations on and restrictions to their authority and discretion. The new General Order falsely claims that "Sworn Officer[s]" are only such officers that are "appointed to a full-time, paid, continuing position in the civil service rank" (Pl.s' Ex. A at 2), improperly excluding the Plaintiffs and all members of the Plaintiff Class. The new General Order falsely claims that a "Sworn Member" is an "individual who is a full-time, paid Department employee in a sworn rank of officer or above", improperly excluding the Plaintiffs and all members of the Plaintiff Class. Id.

The new General Order asserts that MPD Reserve Officers "shall serve at the pleasure of the Chief of Police, who shall, without limitation, have the authority to determine when to reduce a Reserve Corps member in rank or Level and remove a Reserve Corps member from the Reserve Corps. Such determination shall not be subject to administrative review." Id. at 6. *See also* Id. at 5.

The new General Order makes further limitations upon MPD Reserve Officers' authority and discretion in carrying out their duties and responsibilities, including Reserve Officers' abilities to make arrests and issue District of Columbia Notices of Infractions. Id. at 6. The new General Order further states MPD Reserve Officers "shall not… have the right to organize for collective bargaining purposes" unless "specifically provided by the laws of the District of Columbia." Id. at 4. The new General Order sets numerous criteria and pre-conditions for the Plaintiffs and members of the proposed Plaintiff Class to receive "Level I" training, training that includes firearms training received by full-time officers. Id. at 7-8.

3

On June 9, 2006, the Defendant caused to be published within the District of Columbia Register a Notice of Emergency and Proposed Rulemaking.  53 D.C. REG. 4581.  The Notice stated that the Defendant adopted the rules as enumerated within 53 D.C. Reg. 4581 on an emergency basis effective May 19, 2006.  Id.  These rules were adopted without notice or opportunity for public comment, and no emergency existed necessitating such emergency rulemaking "for the immediate preservation of the public peace, health, safety, welfare, or morals".  D.C. CODE § 2-505 (c).  The Notice further stated the Defendant intended to adopt these rules on a permanent basis in not less than thirty days after the Notice.  53 D.C. REG. 4581.  These rules define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including limitations on and restrictions to their authority and discretion in the same manner as the new General Order.

The Plaintiffs commenced this action against the Defendant on grounds that the Defendant violated the District of Columbia Administrative Procedure Act in promulgating administrative rules without providing a meaningful opportunity for notice and comment to the public, in promulgating emergency rulemaking without the existence of an emergency as required by the Act and in promulgating administrative rules which deprived the entire proposed Plaintiff class of liberty and property interests without due process of law.  In filing the Complaint, the Plaintiffs pled the elements of a class action under Federal Rule of Civil Procedure 23.  Compl. ¶¶ 11-14.

ARGUMENT

I.    **Standard for summary judgment and partial summary judgment.**

Summary judgment may be granted where the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO 56 (c).  *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Holcomb v. Powell, 369 U.S. App. D.C. 122, 433 F.3d 889, 895 (D.C. Cir. 2006). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Anderson, 477 U.S. at 248).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See* Anderson, 477 U.S. at 248. Where some "material facts exist without substantial controversy" and some "material facts are actually and in good faith controverted", partial summary judgment may be granted "specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just." FED R. CIV. PRO 56 (d).  The standard for ruling on a partial summary judgment motion is the same as for a summary judgment motion. *See i.e.,* Athridge v. Aetna Cas. & Sur. Co., 96-2708 (RMU/JMF), 2006 U.S. Dist. LEXIS 71822, 4 (D.D.C. 2006); Houlahan v. World Wide Ass'n of Specialty Programs & Schs, 04-01161 (HHK), 2006 U.S. Dist. LEXIS 71858, 3, n2 (D.D.C. 2006); Hornes v. Exec. Office for United States Attys., 04-2190 (RMU), 2006 U.S. Dist. LEXIS 69417, 4-6 (D.D.C. 2006).

5

II.     **Agency requirements for rulemaking under the District of Columbia Administrative Procedures Act.**

The District of Columbia Administrative Procedures Act, D.C. Code § 2-501, *et seq.*, is intended to provide a meaningful opportunity for notice and comment to the public regarding the District of Columbia government's administrative rulemaking.  Such regulated rulemaking includes "any Mayor's or agency's statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of the Mayor or of any agency."  D.C. CODE § 2-502 (6)(A).

The Defendant's promulgation of the new MPD General Order 101.3 amounts to regulated rulemaking under this law.  Specifically, this General Order seeks to "[d]efine the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion…"  D.C. CODE § 5-129.51.  The Omnibus Public Safety Act of 2004 specifically requires that any such rulemaking be conducted in accordance with the D.C. Administrative Procedures Act.  Id.

a.  **The Defendant's rulemaking and the Plaintiffs' stated objections thereto amount to a contested case requiring an agency hearing and right of appeal.**

Where rulemaking defines "the legal rights, duties, or privileges of specific parties" and such parties are entitled by a constitutional right to due process, the agency must treat the rulemaking as a "contested case".  Richard Milburn Pub. Charter

Alternative High Sch. v. Cafritz, 798 A.2d 531, 538 (D.C. 2002) (citing D.C. CODE § 1-

1502 (8), the predecessor statute to D.C. CODE § 2-502 (8)).

> Among the procedures required during contested case proceedings are the
> following: reasonable notice of the hearing must be provided; the notice must
> state the time, place, and issues involved; an opportunity must be provided to all
> parties to present evidence and argument; the agency bears the burden of proof;
> any oral testimony or documentary evidence may be placed on the record unless
> irrelevant or cumulative; every party has the right to present a case or defense
> orally or through written testimony; all parties have the right to the assistance of
> counsel, to present rebuttal evidence and to cross-examine witnesses; the agency
> is required to maintain an official record; transcripts are available upon a timely
> request; decisions must be based on the record and must be in writing; and the
> decision must include findings of fact and conclusions of law.

Id. (citing D.C. CODE § 1-1509, the predecessor statute to D.C. CODE § 2-509).

The Defendant's rulemaking does not meet any of the four enumerated exceptions

to the definition of a contested case:

> (A) Any matter subject to a subsequent trial of the law and the facts de novo in
> any court;
>
> (B) The selection or tenure of an officer or employee of the District;
>
> (C) Proceedings in which decisions rest solely on inspections, tests, or elections;
> and
>
> (D) Cases in which the Mayor or an agency act as an agent for a court of the
> District.

D.C. CODE § 2-509 (8).

Rather being an internal agency guideline, *see* Stevenson v. District of Columbia

Board of Elections & Ethics, 683 A.2d 1371, 1379 (D.C. 1996), the new General Order

reflects the Defendant's policy decisions affecting the general public in a quasi-

legislative capacity. *See* Citizens Association of Georgetown v. Washington, 291 A.2d

699, 704-05 (D.C. 1972). The adoption of the new General Order by the Defendant

violates the D.C. Administrative Procedure Act where he adopted such rules without

7

publishing the proposed rules in the District of Columbia Register as notice of the

intended action so as to afford interested persons opportunity to submit data and views

either orally or in writing.   D.C. CODE § 2-505.  The Defendant is further violating the

Act by refusing to treat any of his rulemaking as a "contested case" where, as is discussed

*infra*, the Defendant is depriving all Reserve Officers of constitutionally protected liberty

and property interests without due process of law, including an agency hearing and the

right of appeal.  D.C. CODE §§ 2-502 (8), 2-509.


### b.   Limitations on rulemaking set forth under D.C. Code § 5-129.51.

The District of Columbia City Council granted authority to create rules defining

the scope of Reserve Corps members' authority and discretion in carrying out their duties

and responsibilities, including limitations on and restrictions to their authority and

discretion.  In do so, the Council set out several reasonable limitations upon such

authority.  First, the Council identified the person who had such authority, the Mayor.

Prior versions of the 2004 Bill which created D.C. Code § 5-129.51 contained the

following verbiage:

> The Chief of the Metropolitan Police Department shall issue a general order
> prescribing the duties and responsibilities of members of the Reserve Corps,
> defining the scope of their authority and discretion in carrying out their duties and
> responsibilities, including any limitations or restrictions to their authority and
> discretion, and delineating the supervision they are to receive.

Engrossed Original of D.C. BILL 15-32 § 1002.  (Pl.s' Ex. C at 18.)  This language was

removed by amendment and the Bill as enacted read, in relevant part, as follows:

> The Mayor, pursuant to Title 1 of the District of Columbia Administrative
> Procedure Act, approved October 21, 1968 (82 Stat. 1204; D.C. Official Code §
> 2-501 *et seq.*), shall issue rules to implement the provisions of this section within
> 180 days of the effective date of the Metropolitan Police Department Reserve

> Corps Establishment Act of 2004, passed on 2nd reading on June 1, 2004
> (Enrolled version of Bill 15-32).

D.C. LAW 15-194, § 1002, 51 D.C. REG. 9406.  The authority to enact rules limiting the

authority of Reserve Officers was specifically taken away from the Defendant and given

to the Mayor.  Further, a specific time limitation was placed upon the Mayor to enact any

rule which would limit the authority of Reserve Officers and the Council specifically

mandated that such rulemaking would be subject to the District of Columbia

Administrative Procedure Act.  Id.

In interpreting a statute, the Court "must look first to its language; if the words are

clear and unambiguous, we must give effect to its plain meaning." James Parreco & Son

v. District of Columbia Rental Housing Com., 567 A.2d 43, 45-46 (D.C. 1989) (citing

Office of People's Counsel v. Public Serv. Comm'n, 477 A.2d 1079, 1083 (D.C. 1984);

Peoples Drug Stores, Inc. v. District of Columbia, 470 A.2d 751, 753  (D.C. 1983) (en

banc).

> The primary rule of statutory construction is that the intent of the legislature is to
> be found in the language which it has used. United States v. Goldenberg, 168 U.S.
> 95, 102-03, 42 L. Ed. 394, 18 S. Ct. 3 (1897); Peoples Drug Stores, supra, 470
> A.2d at 753. Moreover, the words of the statute should be construed according to
> their ordinary sense, and with the meaning commonly attributed to them. Peoples
> Drug Stores, supra; see also United States v. Thompson, 347 A.2d 581, 583 (D.C.
> 1975). "The words used, even in their literal sense, are the primary and ordinarily
> the most reliable source of interpreting the meaning of any writing." Cabell v.
> Markham, 148 F.2d 737, 739 (2d Cir.) (Learned Hand, J.), aff'd, 326 U.S. 404, 90
> L. Ed. 165, 66 S. Ct. 193 (1945).

> …words are important, and the burden on a litigant who asks the court to
> disregard their plain import is not a light one. This court will "'look beyond the
> ordinary meaning of the words of a statute only where there are persuasive
> reasons for doing so.'"

Id.

By any plain reading of D.C. Code § 5-129.51, the Defendant is violation of the law. The Defendant is not the Mayor, he is the Chief of Police, the very person the Council removed from Bill 15-32 as having authority to make these rules. Further, even if he had the authority *virtue offici*, he did not engage in the rulemaking prior to the deadline set forth in the statute. The proposed rulemaking as enumerated in 53 D.C. Reg. 4581 violates D.C. Code § 5-129.51 for the same reasons. The emergency rulemaking also enumerated in 53 D.C. Reg. 4581, while since having expired, was also in violation of the District of Columbia Administrative Procedures Act, as no emergency existed which permitted the Defendant to adopt emergency rules without notice and comment under D.C. Code § 2-505(c).

Absent further authority granted by the Council, any future rulemaking on this subject would also be illegal. The Defendant has refused to refrain from additional rulemaking outside the limited authority granted by D.C. Code § 5-129.51, including emergency rulemaking without a demonstrated emergency. The Plaintiffs have a reasonable expectation that such rulemaking will occur again and this Court should enjoin the Defendant from such unlawful conduct. Spencer v. Kemna, 523 U.S. 1, 17-18, 140 L. Ed. 2d 43, 118 S. Ct. 978 (1998); Mahoney v. United States Marshals Serv., 05-1786 (RCL), 2006 U.S. Dist. LEXIS 69131, 15-16 (D.D.C. 2006) (citing United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980); United States v. Weston, 338 U.S. App. D.C. 355, 194 F.3d 145 (D.C. Cir. 1999)).

It is the Defendant who has created his own emergency by eschewing a set of rules and regulations which the MPD Reserve Corps operated within without amendment and without difficulty since 1995 (Pl.s' Ex. B) in favor of a set of rules for which he had

no authority to adopt and which repeatedly contradict and violate District of Columbia law.  (*See generally*, Compl. ¶¶ 41-47.)  Members of the proposed Plaintiff Class cannot reconcile the Defendant's conflicting and illegal orders with their express obligations as sworn police officers under D.C. Code.

### c.  The Mayor's delegation of authority to the Defendant was without authority of the legislature and without effect of law.

The Defendant offers an unnumbered exhibit (Docket #12 at 3) in support of his contention that his authority to engage in the offending rulemaking was authorized and delegated by the Mayor.  Mayor's Order 2006-57 appears to bear the signature of the Mayor and is dated May 19, 2006.  The document appeared in the D.C. Register on June 30, 2006.  53 D.C. REG. 5313.

### i.  The authority delegated to the Defendant by the Mayor was greater than the Mayor's own authority and any re-delegation of authority by the Mayor specifically delegated to him was improper.

The Mayor cannot delegate to the Defendant authority which he himself does not possess.  Smith v. Gober, 14 Vet. App. 227, 231 (2000); City Capital Associates Ltd. Partnership v. Interco, Inc., 696 F. Supp. 1551, 1556 (D. Del. 1988); In re White Motor Credit Corp., 23 B.R. 276, 279 (D. Ohio 1982); Health Care Equalization Committee of Iowa Chiropractic Soc. v. Iowa Medical Soc., 501 F. Supp. 970, 976 (D. Iowa 1980); Coral Gables v. Giblin, 127 So. 2d 914, 917 (Fla. Dist. Ct. App. 1961) (citing Brown v. Town of Eustis, 92 Fla. 931, 110 So. 873 (1926); Shiflett v. John W. Kelly & Co., 16 Ga. App. 91, 93 (1915); Blake v. Maine, 2005 Me. Super. LEXIS 54 (Me. Super. Ct. 2005) ("Its powers and responsibilities are entirely contained within statutory law. As a result,

[the defendant] and its employees cannot take action or delegate any authority not specifically granted to it by the Legislature."); <u>Feek v. Township Board of Bloomingdale</u>, 82 Mich. 393, 408 (1890)("…it is true that a person or body intrusted with authority, and with the right to delegate the exercise of such authority to another person or body, cannot delegate a greater authority than such person or body possesses"); <u>Sterrett v. Milk River Prod. Credit Ass'n</u>, 234 Mont. 459, 464 (1988) (quoting <u>Stillman v. Fergus County</u>, 220 Mont. 315, 317 (1986) ("[a] principal cannot delegate authority it does not possess")).

Contrary to the Defendant's assertions that the Mayor could simply disregard the instructions of the City Council, the statute purposefully *limited the power* of the Mayor to conduct rulemaking as described in <u>Thomas v. Barry</u> 234 U.S. App. D.C. 378, 379 n.5 729 F.2d 1469, 1470 n.5 (D.C. Cir 1984). The D.C. Court of Appeals distinguished <u>Thomas</u> in 1987 from the proposition the Defendant offers it now for good reason.

> The hospital's argument that a "statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision," citing <u>Thomas v. Barry</u>, 234 U.S. App. D.C. 378, 379 n.5, 729 F.2d 1469, 1470 n.5 (1984), quoting <u>Fort Worth National Corp. v. FSLIC</u>, 469 F.2d 47, 58 (5th Cir. 1972) (emphasis in original), is not persuasive. Neither <u>Thomas</u> nor <u>Fort Worth</u> involved the deprivation of individual liberty.
>
> The language of § 21-525 is plain and clear; upon request, a hearing shall be held within 24 hours. As this court recently pointed out, use of the word "shall" creates "a duty, not an option." <u>Dupont Circle Citizens Association v. District of Columbia Board of Zoning Adjustment</u>, 530 A.2d 1163, 1170 (D.C. 1987). Congress could have required that a hearing be held within 24 hours where feasible, but it did not.

<u>In re De Loatch</u>, 532 A.2d 1343, 1344 n.2, 1344-1345 (D.C. 1987). The Defendant's offending rulemaking specifically sets out to limit the rights, authority and privileges of the entire proposed Plaintiff class under District of Columbia law (and in the process, infringes upon their Constitutional rights). The Plaintiffs were entitled under D.C. Code

§ 5-129.51 to have those rights defined by March of 2005, so they could determine if they wished to make a continued commitment of time and effort to the program. Unlike the petitioner in <u>Spicer v. District of Columbia Real Estate Comm'n</u>, 636 A.2d 415, 418 (D.C. 1993) who did "not claim that he has been prejudiced in any way by the delay", the Plaintiffs here plainly demonstrate that they have been injured by the unjustified delay in this rulemaking.

The Mayor's authority to engage in rulemaking was limited for good reason and once the Mayor's authority expired, the Defendant could not be delegated authority which the Mayor himself did not have. The Defendant's secretive attempt to change those rights over a year later pulled the rug out from under Reserve Officers who had already made a burdensome commitment. These Reserve Officers made this commitment reasonably relying upon those terms set forth in the D.C. Code § 5-129.51 and the Mayor's lack of timely rulemaking changing those terms. There is no suggestion that the Defendant can not now make policy regarding the administration or supervision of the program (*see* Docket #11 at 15 (the Defendant's assertion that "the Reserve Corps would remain forever unregulated")) and decide his best use of the Reserve Officers (regardless of however ineffectively he has done so in the past), but he has never had a right to define *who they are* under law.

The Defendant asserts that it was appropriate under D.C. Code § 1-204.22(6) for the Mayor to re-delegate authority specifically delegated to him under D.C. Code § 5-129.51. Docket #11 at 15. "'*Delegata potestas non potest delegari*' - a delegated power cannot be delegated." <u>In re Santa Cruz</u>, 446 P.2d 253, 255 (Ariz. Ct. App. 1968); <u>Meadows v. American Eagle Fire Ins. Co.</u>, 104 W. Va. 580, 583 (1927) ("It is a maxim of

the law that delegated power cannot be delegated; the delegate cannot delegate; he may use others in the accomplishment of particular transactions which he directs, but he cannot grant to the discretion of others that which was entrusted to his discretion"); New Orleans v. Sanford, 137 La. 628, 647 (1915) (citing Broom's LEGAL MAXIMS, § 385; 13 Cyc. 769; 28 Cyc. 276) ; James v. Walker, 147 Ky. 647, 650 (1912); Territory ex rel. County of Oahu v. Whitney, 17 Haw. 174, 177 (1905); Fairchild v. King, 102 Cal. 320, 322 (1894) (quoting WHARTON ON AGENCY, § 709); Dillard v. Webb, 55 Ala. 468 (1876); Doe ex dem. Davis v. Vincent, 6 Del. 416, 425 (1857).  The legislative record plainly demonstrates that the City Council considered, but specifically excluded, the Defendant from rulemaking authority under D.C. Code § 5-129.51.  *See* Docket #2 at 7 and Pl.s' Ex. C as referenced therein.  The legislative intent is plainly evident within Pl.s' Ex. C where the Defendant was excised from the draft of what would become D.C. Code § 5-129.51 and replaced with the Mayor.

> We do not subscribe to the District's proposition that legislative history can never be used to limit what may appear to be the plain language of a statute.  *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983) (*en banc*). Recently, however, apropos of the District's argument, we did reaffirm that this court "must first look at the language of the statute by itself to see if the language is plain and admits of no more than one meaning," for "the primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." Id. at 753 (citations omitted).  Thus, "a court should look beyond the ordinary meaning of the words of a statute only where there are 'persuasive reasons' for doing so," Id. at 755 (citation omitted), such as the statutory language having only "superficial clarity" or, if literally applied, causing "absurd results," or creating an "obvious injustice," or violating the "legislative purpose." Id. at 754.

Auger v. D.C. Bd. of Appeals & Review, 477 A.2d 196, 210-211 (D.C. 1984).  *See also* Jubilee Hous., Inc. v. District of Columbia Water & Sewer Auth., 774 A.2d 281, 290-291 (D.C. 2001); Lange v. United States, 143 U.S. App. D.C. 305, 307, 443 F.2d 720, 722

(1971); <u>Harrison v. Northern Trust Co.</u>, 317 U.S. 476, 479, 87 L. Ed. 407, 63 S. Ct. 361

(1943). It is plainly evident that the City Council specifically did not want the Defendant

to conduct rulemaking (and it now appears that their cause for such was well-founded)

and the Defendant's present employment of D.C. Code § 1-204.22(6) to circumvent the

legislative intent of the Council is an absolutely inappropriate abuse of the ability of the

Mayor under the statute to delegate authority.


### ii. Any construction of D.C. Code § 5-129.51 which would grant the Mayor or the Defendant purely legislative authority exceeds the scope of permissible administrative rule making and violates fundamental laws of separation of powers.

Legislative powers normally cannot be delegated. <u>St. Louis Consol. Coal Co. v.

Illinois</u>, 185 U.S. 203, 210 (1902); <u>City of New York v. Clinton</u>, 985 F. Supp. 168, 180

(D.D.C. 1998) *affirmed,* 524 U.S. 417, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998); <u>State

ex rel. De Woody v. Bixler</u>, 136 Ohio St. 263, 270 (Ohio 1940); <u>La Polla v. Board of

Chosen Freeholders</u>, 71 N.J. Super. 264, 278 (Law Div. 1961) (citing <u>Lotspeich v.

Morristown</u>, 141 Tenn. 113, 124-123 (1918) ("The rule seems to be well settled that, so

far as the powers of a municipal corporation are legislative, they rest in the discretion and

judgment of the municipal body intrusted with them, and the general rule is that that body

cannot delegate or refer the exercise of such powers to the judgment of a committee."

[citations omitted])). "The principle is a plain one, that the public powers or trusts

devolved by law or charter upon the council or governing body, to be exercised by it

when and in such manner as it shall judge best, cannot be delegated to others." <u>Hengst v.

Cincinnati</u>, 9 Ohio Dec. 730, 734 (Ohio Misc. 1898) (quoting DILLON ON MUNICIPAL

CORPORATIONS (4th Ed.) § 96); <u>Kugler v. Yocum</u>, 69 Cal. 2d 371, 376 (1968) ("the

15

purpose of the doctrine that legislative power cannot be delegated is to assure that 'truly

fundamental issues [will] be resolved by the Legislature' and that a 'grant of authority

[is] . . . accompanied by safeguards adequate to prevent its abuse.' (Wilke & Holzheiser,

Inc. v. Department of Alcoholic Beverage Control (1966) 65 Cal.2d 349, 369 [55

Cal.Rptr. 23, 420 P.2d 735]").  *See also* Local Div. 732, Amalgamated Transit Union v.

Metropolitan Atlanta Rapid Transit Authority, 253 Ga. 219, 223 (1984) (cases cited

therein exemplifying "the general rule that legislative power cannot be delegated unless

expressly authorized by statute").

"However… the legislative branch has the authority to delegate to administrative

boards and agencies of the state the power to ascertain and determine the facts upon

which the laws are to be applied and enforced." State v. Taylor, 479 So. 2d 339, 341 (La.

1985).

> So long as the regulation or action of the official or board authorized by statute
> does not in effect determine what the law shall be, or involve the exercise of
> primary and independent discretion, but only determines within prescribed limits
> some fact upon which the law by its own terms operates, such regulation is
> administrative and not legislative in its nature.

Id. (quoting Schwegmann Brothers Giant Super Markets v. McCrory, Commissioner of

Agriculture, 237 La. 768, 112 So. 2d 606, *appeal dismissed*, 361 U.S. 114, 4 L. Ed. 2d

154, 80 S. Ct. 207 (1959)).  *See also* State v. Rodriguez, 379 So. 2d 1084, 1087 (La.

1980) ("[t]he legislature may confer ministerial powers upon executive agencies if it

supplies adequate standards to execute the legislative policy; however it cannot surrender

the legislative power itself to determine what the law shall be"); Trinity Medical Ctr. v.

North Dakota Bd. of Nursing, 399 N.W.2d 835, 843 (N.D. 1987); Associated Industries

of Oklahoma v. Industrial Welfare Com., 185 Okla. 177, 180 (1939); State v. Terwilliger,

141 Ore. 372, 381 (1932). "[L]egislation must contain adequate standards to guide and restrain the exercise of delegated administrative functions, including rule making; and that to avoid pure delegation of legislative power by creation of an administrative agency, the Legislature must set limits on such an agency's power and enjoin on it a certain course of procedure and rules of decision in performance of its function."

Commonwealth v. Sessoms, 516 Pa. 365, 384 (1987) Papadakos, J. *concurring* (citing Chartiers Valley Joint Schools v. County Board of School Directors of Allegheny County, 418 Pa. 520, 211 A.2d 487 (1965); Holgate Brothers Co. v. Bashore, 331 Pa. 255, 200 A. 672, 117 A.L.R. 639 (1938)); State v. Smith, 88 S.D. 76, 79 (1974); McQueen v. McCanless, 182 Tenn. 453, 460-461 (1945).

> The constitutional validity of such legislation depends upon what duties are delegated. The distinction between what duties may or may not be delegated has been drawn upon the ground that the legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or maintains to make, its own action depend.

Utah Light & Traction Co. v. Public Serv. Comm'n, 101 Utah 99, 130 (1941).

> In reviewing a claim of improper delegation of legislative power, we consider: "(1) Did the Legislature delegate the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of statutory standards or, if the local authority is to develop the standards, sufficient guidance to enable it to do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled?"

Tri-Nel Mgmt. v. Board of Health, 433 Mass. 217, 225 (2001) (citing Construction Indus. of Mass. v. Commissioner of Labor & Indus., 406 Mass. 162, 171 (1989) (quoting Chelmsford Trailer Park Inc. v. Chelmsford, 393 Mass. 186, 190, 469 N.E.2d 1259 (1984))). "…where a law embodies a reasonably clear policy or standard to guide and control administrative officers, so that the law takes effect by its own terms when the

17

facts are ascertained by the officers and *not according to their whim*, then the delegation

of power will be constitutional." <u>Richfield v. International Asso. of Fire Fighters</u>, 276

N.W.2d 42, 45 (Minn. 1979) (citing <u>Lee v. Delmont</u>, 228 Minn. 101, 113, 36 N.W. 2d

530, 538 (1949) [emphasis added]).  District of Columbia law expressly segregates the

authority of the Mayor to administer the Metropolitan Police Department from the

authority of the Council to legislate rules and regulations.

> In addition to the powers vested in them by law, the Council of the District of
> Columbia is hereby authorized and empowered to make and modify, and the
> Mayor of the District of Columbia is hereby authorized and empowered to
> enforce, under such penalties as the Council may deem necessary, all needful
> rules and regulations for the proper government, conduct, discipline, and good
> name of said Metropolitan Police force…

D.C. CODE § 5-127.01.

The District of Columbia Administrative Procedure Act provides for notice and

comment procedures for rulemaking within District of Columbia agencies, including the

Metropolitan Police Department, in such matters of specialized knowledge and

competence specific to a particular agency.  The purpose of administrative rulemaking is,

in part, to relieve the Legislature or Judiciary of time-consuming and repetitive cases

involving fact-intensive inquiries.  *See* <u>King v. District of Columbia Dep't of Empl.

Servs.</u>, 742 A.2d 460, 470 (D.C. 1999); <u>Drivers, Chauffeurs & Helpers Local Union No.

639 v. District of Columbia</u>, 631 A.2d 1205, 1217 (D.C. 1993); <u>Auger</u>, 477 A.2d at 206;

<u>In re Petition of R.M.G.</u>, 454 A.2d 776, 807 (D.C. 1982) Newman, C. J., dissenting.  It

does not give license to the Executive to re-write the law.  To suggest that D.C. Code § 5-

129.51 permits the Mayor or the Defendant to create a wholesale re-definition of the

authority of Reserve Officers within the District's existing statutory scheme runs

immediately contrary to the separation of powers between the Council and the Mayor as clearly articulated within D.C. Code § 5.127.01 and the cases cited *supra*.

> ### d.  The Defendant bears the burden of demonstrating an emergency which justifies the present emergency rulemaking.   He has failed to do so.

The Defendant offers no evidence that any emergency existed that the offending emergency rulemaking is or was necessary for the immediate preservation of the public peace, health, safety, welfare, or morals.  D.C. Code § 2-505(c).   There exists no authority in support of the Defendant's bald assertion that

> …the Court should defer to the determination of the Executive Branch that an emergency situation existed.  This is particularly true in the area of police work and public safety.

Docket #11 at 13-14.  To the contrary, an agency determination of an emergency justifying emergency rulemaking under D.C. Code § 2-505(c) must be "supported by substantial evidence in the record".  <u>Hobson v. District of Columbia</u>, 304 A.2d 637, 638 (D.C. 1973).  It is the proponent of the rule, the Defendant herein, that has the burden of proof in justifying this alleged emergency.  D.C. Code § 2-509 (b).

To avoid summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The Defendant has the burden to demonstrate the existence of an emergency, he cannot.  This Court has previously granted summary judgment to the opponent of emergency rulemaking when the District of Columbia provided no evidence

that an emergency existed justifying the emergency rulemaking.  <u>Wheelchair Carriers</u>

<u>Ass'n v. D.C.</u>, 00-1586 (GK), 2002 U.S. Dist. LEXIS 4617 (D.D.C. 2002).


### III.    Deprivation of the Plaintiffs' Liberty Interests.

The Defendant's prohibition against organization for the purpose of collective

bargaining deprives all Reserve Officers of fundamental and inalienable rights of free

speech and free association.  The Defendant's citations to <u>United States Dep't of Defense</u>

<u>v. Federal Labor Relations Auth.</u>, 299 U.S. App. D.C. 189, 982 F.2d 577 (D.C. Cir. 1993)

and <u>Metropolitan Washington Airports Authority Professional Fire Fighters Ass'n Local</u>

<u>3217, etc. v. United States</u>, 294 U.S. App. D.C. 351, 959 F.2d 297 (D.C. Cir. 1992) are

misleading and inapplicable to the present case.  *See* Docket #14 at 2-3.  It cannot be

denied that Reserve Officers have a liberty interest protected by the First Amendment.

The Supreme Court in <u>Thomas v. Collins</u>, 323 U.S. 516, 518, 89 L. Ed. 430, 65 S.

Ct. 315 (1945)[1] provided a relevant analysis of the authority of a government agency to

infringe upon fundamental rights of free speech and free association inherent in collective

bargaining.

> The case has been twice argued here. Each time appellant has insisted, as he did
> in the state courts, that the statute as it has been applied to him is in contravention
> of the Fourteenth Amendment, as it incorporates the First, imposing a previous
> restraint upon the rights of freedom of speech and free assembly, and denying him
> the equal protection of the laws. He urges also that the application made of the
> statute is inconsistent with the provisions of the National Labor Relations Act, 49
> Stat. 449, and other objections which need not be considered. For reasons to be
> stated we think the statute as it was applied in this case imposed previous restraint
> upon appellant's rights of free speech and free assembly and the judgment must be
> reversed.

323 U.S. at 518.

The case confronts us again with the duty our system places on this Court to say where the individual's freedom ends and the State's power begins. Choice on that border, now as always delicate, is perhaps more so where the usual presumption supporting legislation is balanced by the preferred place given in our scheme to the great, the indispensable democratic freedoms secured by the First Amendment. *Cf.* Schneider v. State, 308 U.S. 147; Cantwell v. Connecticut, 310 U.S. 296; Prince v. Massachusetts, 321 U.S. 158. That priority gives these liberties a sanctity and a sanction not permitting dubious intrusions. And it is the character of the right, not of the limitation, which determines what standard governs the choice. Compare United States v. Carolene Products Co., 304 U.S. 144, 152-153.

For these reasons any attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger.  The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly. It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, *cf.* De Jonge v. Oregon, 299 U.S. 353, 364, and therefore are united in the First Article's assurance. *Cf.* 1 ANNALS OF CONGRESS 759-760.

Id. at 529-530 [footnote omitted].

That the State has power to regulate labor unions with a view to protecting the public interest is, as the Texas court said, hardly to be doubted. They cannot claim special immunity from regulation. Such regulation however, whether aimed at fraud or other abuses, must not trespass upon the domains set apart for free speech and free assembly. This Court has recognized that "in the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution. . . . Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society." Thornhill v. Alabama, 310 U.S. 88, 102-103; Senn v. Tile Layers Protective Union, 301 U.S. 468, 478. The right thus to discuss, and inform

---

[1] Cited in Freund Baking Co. v. NLRB, 334 U.S. App. D.C. 141, 165 F.3d 928, 935 (D.C. Cir. 1999); Goldman v. Secretary of Defense, 236 U.S. App. D.C. 248, 734 F.2d 1531, 1536 (D.C. Cir. 1984).

people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly. Hague v. C. I. O., 307 U.S. 496. The Texas court, in its disposition of the cause, did not give sufficient weight to this consideration, more particularly by its failure to take account of the blanketing effect of the prohibition's present application upon public discussion and also of the bearing of the clear and present danger test in these circumstances.

Id. at 532.

The Defendant's blanket prohibition against organizing for collective bargaining purposes is absolutely a deprivation of the Reserve Officers' rights of free speech and free association. The Defendant offers no suggestion that any legitimate government purpose is furthered by the prohibition. The Defendant will never be able to demonstrate any "clear and present danger" that justifies a prohibition (and there is no suggestion of any proposed regulation thereof by the Defendant, only an outright prohibition) of such collective bargaining. The Plaintiffs' deprivation of these civil rights by the Defendant can be remedied by this Court under 42 U.S.C. § 1983.

IV.    **Deprivation of the Plaintiffs' Property Interests.**

   a.    **District of Columbia law requires the Plaintiffs be given procedural due process prior to termination from MPD.**

The Defendant offers the unpublished opinion in Johnson v. Williams, 887 A.2d 1027 (D.C. 2005) in support of his contention that the Plaintiffs and the other members of the proposed Plaintiff class have no vested rights of procedural due process in disciplinary matters. Docket #13. The Johnson case does not justifiably support this contention and D.C. Code plainly refutes it. The District of Columbia Court of Appeals finding in that case was in fact, corrupted by a fraud perpetrated by the Defendant's counsel upon those courts. In the course of the Johnson case, staff attorneys of the Office

22

of the Attorney General purposefully withheld key controlling provisions of D.C. Code from consideration of the courts, otherwise unknown to the non-attorney, *pro se* litigant Johnson, and in doing so, violated their ethical duties of candor to the court.  *See* Docket #14 at 22-27.

The Defendant's present counsel continues to perpetrate this fraud before this Court.  D.C. Code § 5-127.01 provides "no person shall be removed from said police force except upon written charges preferred against him in the name of the Chief of Police of said police force to the trial board or boards hereinafter provided for and after an opportunity shall have been afforded him of being heard in his defense."  *See also* 6A DCMR 1000.2 ("[n]o member of the force (except probationers) shall be dismissed from office except upon written charges preferred against him or her in the name of the Chief of Police and after an opportunity shall have been afforded him or her of being heard in his or her defense").  In open court on August 16, the Defendant's counsel claimed that D.C. Code § 5-127.01 is rendered inapplicable to MPD Reserve Officers by D.C. Code § 1-623.03 ("[t]he following provisions shall not apply to police officers and fire fighters appointed after the date that this chapter becomes effective").  This statement is untruthful and again the Defendant's counsel unethically withholds controlling law from the Court's consideration.

D.C. Code § 1-623.03 was enacted as part of the Comprehensive Merit Personnel Act. D.C. CODE § 1-601.01 *et seq.*, D.C. LAW 2-139, 25 D.C. REG. 5740 (1979).  The CMPA does not negate the procedural due process rights of any person.  The intent of the CMPA is to consolidate and streamline the statutory and common law rights of District of Columbia employees in addressing grievances.  *See* D.C. CODE § 1-601.02; Holman v.

23

Williams, 436 F. Supp. 2d 68, 74 (D.D.C. 2006); Johnson v. District of Columbia, 368 F.

Supp. 2d 30, 37 (D.D.C. 2005).

> The remedies available under CMPA are substantial and may, in some respects,
> afford more complete relief than the damage remedies available at common law.
> For example, under CMPA, Thompson would have been able to seek
> reinstatement, and perhaps back pay. Furthermore, the CMPA does not require an
> employee to overcome the qualified immunity of government officials as would
> be required in a common law damage action. *See* [Bush v. Lucas, 462 U.S. 367,
> 391, 76 L. Ed. 2d 648, 103 S. Ct. 2404 (1983)] (Marshall, J., concurring); Rustin
> v. District of Columbia, 491 A.2d 496, 500 (D.C.), *cert. denied*, 474 U.S. 946,
> 106 S.Ct. 343, 88 L.Ed.2d 290 (1985). Moreover, CMPA procedures are speedier
> and less costly than litigation. In sum, the benefits of CMPA's administrative
> procedures coupled with judicial review are substantial when balanced against the
> costs, including delays, in obtaining damage remedies. We cannot say these
> advantages are clearly outweighed by the one obvious disadvantage of CMPA:
> the lack of a jury trial option. *See* Lucas, 462 U.S. at 391 (Marshall, J.,
> concurring).

District of Columbia v. Thompson, 593 A.2d 621, 635 (D.C. 1991).

The CMPA only preempts tort claims "where the wrongful treatment or injury in

a particular case is cognizable as a 'personnel' issue under the Act's 'performance

ratings,' 'adverse actions,' and 'employee grievances' provisions." Winder v. Erste, 03-

2623 (JDB), 2005 U.S. Dist. LEXIS 5190, 33 (D.D.C. 2005) (quoting King v. Kidd, 640

A.2d 656, 663 (D.C. 1993) [internal quotation omitted]. *See also* Wise v. District of

Columbia, 03-310 (SBC), 2005 U.S. Dist. LEXIS 6361, 14 (D.D.C. 2005) (also citing

King). "[G]overnment employees only lose common law rights of recovery if the statute

provides redress for the wrongs they assert." Robinson v. District of Columbia, 748 A.2d

409, 411 (D.C. 2000) (quoting Newman v. District of Columbia, 518 A.2d 698, 704-05

(D.C. 1986));

The CMPA provides "exclusive remedy for claims *falling within its ambit*".

Stockard v. Moss, 706 A.2d 561, 567 (D.C. 1997). Only "employees of the District of

Columbia government" are covered by or subject to the CMPA. D.C. CODE § 1-602.01(a). The D.C. Court of Appeals has held that MPD Reserve Officers are not "employees" for the purpose of the CMPA. LeFande v. District of Columbia, *et al.*, 03 CA 5514, (D.C. Sup. Ct. 2004), *aff'd*, 875 A.2d 116 (D.C. 2005). (Pls' Ex. H at 2, 4-5). The CMPA does not apply to MPD Reserve Officers and D.C. Code § 5-127.01 remains controlling authority, providing rights of disciplinary due process to them. Such rights further the public interest in that such Reserve Officers are treated fairly and not subject to discrimination or coercion in the performance of their official duties. *See* D.C. CODE §§ 1-601.02 (b)(5), (c). Contrary to the Defendant's representations, the CMPA does not deny procedural due process to anyone. Every MPD officer covered under the CMPA remains entitled to a trial board.[2] *See, i.e.* Anderson v. Ramsey, 04-56 (GK), 2006 U.S. Dist. LEXIS 21034, 29-30 (D.D.C. 2006); Hairston v. District of Columbia, 638 F. Supp. 198, 201 (D.D.C. 1986).

> ### b. The Defendant's denial of the Plaintiffs' rights of disciplinary due process amount to a deprivation of a constitutionally protected property right which may be remedied by this Court.

By operation of District of Columbia law, MPD Reserve Officers have a constitutionally protected property interest in their continued positions with the government. "Property interests… are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits

---

[2] The Plaintiffs use the term "trial board" for its colloquial, generic meaning synonymous with the term "adverse action panel" or other equivalent. *See* Anderson v. Ramsey, 04-56 (GK), 2006 U.S. Dist. LEXIS 21034, 11, n6 (D.D.C. 2006).

and that support claims of entitlement to those benefits." <u>C&E Servs. v. D.C. Water & Sewer Auth.</u>, 310 F.3d 197, 200 (D.C. Cir. 2002) (quoting <u>Cleveland Bd. of Education v. Loudermill</u>, 470 U.S. 532, 538, 84 L. Ed. 494, 105 S. Ct. 1487 (1985) (quoting <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972) and citing <u>Paul v. Davis</u>, 424 U.S. 693, 709, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976))).

The Defendant's promulgation of administrative rules which deny MPD Reserve Officers due process prior to removal violates those express rights granted under D.C. Code § 5-127.01. "[A] regulation cannot conflict with a statute and permit what the statutory purpose prohibits." <u>Mytych v. May Dep't Stores Co.</u>, 34 F. Supp. 2d 130, 132 (D. Conn. 1999). *See* <u>ITT Indus. v. NLRB</u>, 251 F.3d 995, 1000 (D.C. Cir. 2001) (quoting <u>Lechmere, Inc. v. NLRB</u>, 502 U.S. 527, 536-537, 117 L. Ed. 2d 79, 112 S. Ct. 841 (1992) (quoting <u>Maislin Indus., U.S. v. Primary Steel</u>, 497 U.S. 116, 131, 111 L. Ed. 2d 94, 110 S. Ct. 2759 (1990) ("[o]nce we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning."))) Such rulemaking further exceeds the authority granted by the City Council, to <u>any</u> person at <u>any</u> time, for rulemaking regarding Reserve Officers under D.C. Code § 5-129.51 (d). Within D.C. Code § 5-129.51, there exists no provision or authority whatsoever for any modification of Reserve Officers' existing due process rights.

Acting without authority and contrary to controlling law, the Defendant's denial of disciplinary due process to the Plaintiffs and the proposed Plaintiff class is a deprivation of property rights otherwise vested under District of Columbia law. The Plaintiffs' concern for the protection of these rights is not speculative; the threat is

26

imminent and real as the <u>Johnson</u> case plainly demonstrates.  *See* Docket #14 at 22-27.

This Court has the authority to declare the Defendant's denial of such rights a deprivation

of their property interests and to enjoin the Defendant from reliance upon or enforcement

of the offending rulemaking.


CONCLUSION

For these reasons, and for other such reasons as the Court finds to be good and

sufficient cause, the Plaintiffs' Motion for Partial Summary Judgment should be

GRANTED.


October 15, 2006


Respectfully Submitted,


_____
Matthew August LeFande
DC Bar #475995
1001 Sixteenth Street NW
Washington DC 20036-5701
Tel: (202)657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs