UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CHRISTOPHER GRIFFITH and            )
DANIEL KIM,                         )
          Plaintiffs,               )     Civil No. 06 – 01223 ( HHK)
                                    )
     v.                             )
                                    )
CHARLES RAMSEY,                     )
          Defendant.                )
_____ )

**OPPOSITION OF DEFENDANT
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs have moved the Court for partial summary judgment on liability. Although Plaintiffs' motion briefly addresses alleged violations of federal law (deprivation of liberty and property rights), the thrust of the motion is the alleged violation of District of Columbia law and most of the Plaintiffs' memorandum is dedicated to these local law question. Like their unsuccessful motions for a temporary restraining order ("TRO") and for a preliminary injunction ("PI"), Plaintiffs seek to enjoin the government from now or ever issuing rules or regulations regarding the Metropolitan Police Department Reserve Corps ("MPDRC"), to declare MPD General Order No. 101.3, issued in 2006, illegal and void rulemaking.

The goal of Plaintiffs' motion – indeed their entire lawsuit – is to "enjoin the Defendant from promulgating or enforcing any rule which attempts to 'define the scope of Reserve Corps members' authority and discretion in carrying out their duties and responsibilities, including any limitations or restrictions to their authority and discretion[.]' " Motion at 1-2. That is, Plaintiffs seek to deny the MPD of any authority to regulate or make any changes to the MPDRC. They

seek to preserve their current levels of police authority, to preclude any changes to the operation of the MPDRC or any perceived diminution in their police powers or prerogatives. They also seek to preclude their removal from the MPDRC (a speculative concern at best) without a due process hearing. In sum, they seek to preclude the MPD from making any changes to the MPDRC and they seek to bootstrap themselves into an unspecified protected category of District employee.

The fundamental flaw in Plaintiffs' position is that they view themselves as full-fledged police officers (albeit voluntary) entitled to all of the rights and privileges as civil service police officers other than salary. In fact, these Plaintiffs – and all volunteer officers – are subject to the Metropolitan Police Department Reserve Corps Establishment Act of 2004, D.C. Official Code § 5-129.51 (2006) and the Volunteer Services Act, D.C. Official Code §§ 1-319.01 – .05 (2006). Those statutes, and the applicable regulations, do not afford these Plaintiffs the rights that they claim. Indeed, these Plaintiffs signed volunteer service agreements in which they acknowledge their volunteer status and acknowledge that they may be removed from their volunteer positions at any time.

Plaintiffs' arguments, albeit with some refinements, are substantively identical to the ones raised in support of their PI and TRO motions and in opposition to the Defendant's motion for dismissal. Plaintiffs' motion should be denied, therefore, for substantially the same reasons set forth in the District's motion to dismiss and in the District's opposition to the motion for a PI.

## Background

The Metropolitan Police Department has maintained the MPDRC for many years to complement its regular civil service, police officers. The program was originally authorized and organized no later than 1950. Commissioners' Order 502,757/6 (September 12, 1950). The

MPDRC is composed of unpaid volunteers who donate their time and efforts to the District of Columbia. Volunteer services are governed by the Volunteer Service Act. D.C. Official Code § 1-319.05 (2006).

Effective March 1, 1995, the MPD issued General Order No. 101 regarding the Reserve Corps. That General Order provides guidance on such matters as its organization, the command structure, the various levels of duty for Reserve Officers, assignments, and recruiting. The 1995 General Order, like all MPD General Orders, was not issued subject to the notice and comment provisions of the Administrative Procedure Act.

In 2004, the Commissioners' Order of 1950 was superseded by statute. Metropolitan Police Department Reserve Corps Establishment Act of 2004, section 1001 of the Omnibus Public Safety Act of 2004. D.C. Act 15-463, 51 D.C. Reg. 9406 (Oct. 8, 2004), codified as D.C. Official Code §5-129.51 (2006). The Act created – or, more correctly, re-authorized – a Reserve Corps and prescribed that the corps "shall have as its membership a corps of ***unpaid volunteers who fulfill police duties and responsibilities as determined by the Chief of the Metropolitan Police Department***." D.C. Official Code § 5-129.51(b) (2006) (emphasis supplied). The purpose of the MPDRC was "to assist full-time, sworn police personnel in both the day-to-day and emergency delivery of law enforcement services." D.C. Official Code § 5-129(a) (2006). The Mayor was authorized to issue rules to implement the statute. D.C. Official Code § 5-129(d) (2006). The Mayor delegated that authority to the Chief of Police. See 53 D.C. Reg. 5313 (June 30, 2006).

Effective May 19, 2006, the MPD promulgated emergency regulations and a notice of proposed rulemaking regarding the MPDRC. 53 D.C. Reg. 4581 (June 9, 2006). The emergency rules were effective for thirty days, expiring on June 18, 2006, and no further emergency rules

have been issued. Comments have been received under the notice of proposed rulemaking and are being analyzed at this time. Thus, no final regulations have been issued.

Plaintiffs brought this suit to challenge both the 2006 General Order and the emergency and proposed final rules. A motion to dismiss is pending.

## Discussion

I.    STANDARDS FOR SUMMARY JUDGMENT.

The standards for summary judgment are well known; they are outlined here only briefly. A movant for summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Osbourne v. Capital City Mfg. Corp., 667 A.2d 1321, 1324 (D.C. 1995). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Colbert v. Georgetown Univ., 641 A.2d 469, 472 (D.C. 1994) (*en banc*). Plaintiffs must provide sufficient evidence to support each of the elements of their claims; in other words, the plaintiffs must point to evidence to make out a *prima facie* case in support of each element of each of their claims. Croce v. Hall, 657 A.2d 307, 310 (D.C. 1995).

While the submissions of these Plaintiffs (including the statement of material facts purportedly not at issue) are extensive, Plaintiffs fail to show any legal entitlement to summary judgment.

## II.    RESERVE CORPS OFFICERS ARE NOT EMPLOYEES OF THE DISTRICT OF COLUMBIA.

Since it appears that one of the points of this lawsuit is to achieve a status for Reserve Officers similar to that of sworn, civil service MPD officers, Defendant briefly sets out some of the differences between civil service police officers and reserve officers and explains why Reserve Officers are not employees of the District of Columbia.

Regular MPD officers (known as "sworn" officers) are members of the civil service. Among other things, they are appointed to their positions through the civil service selection processes, they are paid for their service to the District, they receive other benefits (such as disability compensation, retirement, and job protection) and are generally subject to all of the terms of the D.C. Comprehensive Merit Personnel Act ("CMPA").  D.C. Official Code §§ 1-601 et seq. (2006).  The MPD and its civil service officers are subject to lengthy statutes and detailed regulations applicable only to the MPD.  See 5. D.C. Official Code §§ 5-101.01 et seq. (2006); 6A D.C.M.R. §§ 100 et seq.

Reserve Officers are "unpaid volunteers" who have only such duties and responsibilities as may be determined by Defendant.  D.C. Official Code §§ 1-319.05(2) (2006).  As volunteers, their service is governed by the Volunteer Services Act, D.C. Official Code § 1-319.05 (2006), not the CMPA.  They are not employees of the District of Columbia.  LeFande v. District of Columbia, No. 04-CV-68 (D.C. April 26, 2006), 875 A.2d 116 (Table) (unpublished) (a copy of the decision is attached for the convenience of the Court). [1]  They have only those benefits as

---

[1]    Although this case was decided by an unpublished Memorandum Opinion and Judgment, the D.C. Court of Appeals authorizes use of its unpublished decisions "under the doctrines of the law of the case, res judicata, or collateral estoppel . . ."  D.C. App. R. 28(g).  In this case, it is appropriate to rely on it for collateral estoppel purposes.  See Parklane Hosiery, Inc. v. Shore, 439 U.S. 322 (1979); Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971).

may be granted them under the Volunteer Services Act or other provisions of law. As volunteers, they are not selected for their positions in accordance with civil service rules and they do not have civil service job protections. They receive no pay for their services. D.C. Official Code § 1-319.05(2) (2006). They are treated as civil service employees only for the limited purpose of claims for tort liability against the District for acts performed during their volunteer service. D.C. Official Code §§ 1-319.03(c) and (d) (2006). See also 6 D.C.M.R. §§ 4400.1 et seq., 29 D.C. Reg. 5405, Dec. 10, 1982. [2] An individual serves as a volunteer *solely* at the agency's discretion. 6 DCMR § 4000.12 (""[T]he utilization of [volunteer] services may be discontinued by the agency at any time for any reason.") Plaintiff Griffith, at least, executed a volunteer services agreement incorporating those provisions. Attachment to Declaration of MPD Lt. John Pollock.

This distinction between civil service regular MPD officers (so-called sworn officers) and volunteer MPDRC officers was recently affirmed by the D.C. Court of Appeals when it ruled that Reserve Officers are volunteers, rejecting an assertion that they are civil service employees. LeFande v. District of Columbia, No. 04-CV-68 (D.C. April 26, 2006), 875 A.2d at 116. As the LeFande court held, receipt of certain benefits such as worker's compensation, witness fees, and training does not render the MPDRC officer an employee rather than a volunteer under the Volunteer Services Act. Id. at 3. As the Court stated, "[a]n employee . . . is defined as 'a person who is paid by the District from grant or appropriated funds for his or her services.' " Id. at 3, quoting D.C. Official Code § 1-319.05(1) (2006). It is undisputed on this record that these two Plaintiffs are unpaid volunteers – certainly they have presented no evidence that they were either

---

[2] 6 D.C.M.R. §§ 4000 et seq. was incorrectly cited in Defendant's Motion to Dismiss as 6 D.C.M.R. §§ 4400 et seq.

selected and hired under civil service appointment procedures and/or that they receive salary checks from the District. Thus, they are not employees of the District of Columbia.

## II. THERE ARE NO PROTECTED LIBERTY OR PROPERTY INTERESTS AT ISSUE IN THIS SUIT.

Although Plaintiffs' have once again asserted that they are being deprived of constitutional liberty and property interests, this is not the case.[3] Plaintiffs' arguments are virtually identical to those raised earlier and questioned by the Court in its denial of Plaintiffs' motion for a PI and, therefore, they need not be addressed in any details. They are addressed here primarily because the existence of a protected property or liberty right is one of the bases on which a contested case adjudication under the D.C. Administrative Procedure Act, rather than notice and comment rulemaking, would be required and Plaintiffs assert that this is a contested case matter.

### A. Plaintiffs Have Not Been Deprived of a Liberty Interest because They Have No Underlying Right to Organize for Collective Bargaining Purposes.

Count I of the Complaint asserts, correctly, that the new General Order does not permit Reserve Officers to organize for collective bargaining purposes. Complaint at ¶ 26. In Plaintiffs' view, this is a deprivation of a liberty interest in that it amounts to a deprivation of constitutional rights of free speech and free association. (Thus, Count I is actually an attempt to state a claim under the First Amendment, not a liberty claim under the Fifth Amendment.) It

---

[3] In their motion for partial summary judgment, Plaintiffs have not reiterated their argument that they are entitled to organize for collective bargaining purposes under the provisions of the Wagner Act. Accordingly, it is not addressed here.

should be noted that neither the challenged regulations nor the challenged General Order seeks to impose any prohibition on organizing for any purpose other than collective bargaining.[4]

Plaintiffs have no inherent constitutional right, whether under the First or Fifth Amendment, to associate for the purposes of collective bargaining. Plaintiffs point to no authority, because there is none, for the proposition that organization for collective bargaining is a constitutionally-protected right. In fact, it is not. See In re Debs, 158 U.S. 564 (1895), treating labor organization for collective purposes as a conspiracy. The long and contentious history of private sector labor relations in the United States is inconsistent with the proposition that collective bargaining is a constitutionally-protected right. It took the Wagner Act of 1935, the height of the Depression, to create a statutory (not constitutional) right of collective bargaining for employees of those private sectors employers engaged in interstate commerce (the Wagner Act did not cover federal employees, much less employees of states, their political subdivisions, and the District of Columbia).

Similarly, a public employer is not required to engage in collective bargaining absent legislation granting the employees the right to such bargaining. E.g., U.S. Dept. of Defense v. Federal Labor Relations Authority, 982 F.2d 577 (D.C. Cir. 1993) (public employees only have collective bargaining rights when granted by statute and only to the extent granted by that statute); Metropolitan Washington Airports Authority v. United States, 959 F.2d 297 (D.C. Cir. 1992) (public employees only have collective bargaining rights when granted by statute and only

---

[4] Although Plaintiffs once again baldly assert that they are being deprived of the rights of free speech and association, no First Amendment right concerning freedom of speech is implicated here. Neither of these plaintiffs asserts that his right to communicate on any issue of concern to him has been compromised or restricted in any way. Similarly, other than the illusory right to organize for purposes of collective bargaining, Plaintiffs do not claim to have been deprived of any associational right. They may organize as and how they choose; they just may not bargain collectively.

to the extent granted by statute). See D.C. Official Code § 1-617.01(b), which expressly grants D.C. employees the rights, inter alia, to form and join a labor union, *to engage in collective bargaining*, and to be protected in the exercise of those rights. The District has not chosen, either in the Volunteer Services Act or in the Metropolitan Police Department Reserve Corps Establishment Act of 2004, to extend the privilege of collective bargaining to these volunteers or, for that matter, to any volunteers.

Accordingly, no liberty interest is implicated in this litigation.

### B. Plaintiffs Have No Constitutionally-Protected Property Rights in their Volunteer Service.

Count II of the Complaint asserts that the Plaintiffs are not granted "procedural due process in disciplinary matters previously promised to the Plaintiffs." Complaint at ¶ 35. The claim, essentially, is that there is a property right in the position of MRDRC volunteer.

At the outset it should be noted that neither Plaintiff has alleged that he is now subject to any disciplinary action. Thus, Plaintiffs lack standing to generically claim deprivation of a property right.

As Defendant has previously noted, the proposition that Plaintiffs have any property rights in these volunteer positions has been squarely rejected. Johnson v. Williams, 887 A.2d 1027 (D.C. 2005) (table) (unpublished decision) (copy attached to Defendant's motion to dismiss), and cases cited therein.

In their motion for summary judgment, Plaintiffs seek to sidestep the effect of the Johnson ruling by making two very muddled and confusing arguments: First, they argue that the government fraudulently and unethically obtained the judgment in Johnson by withholding from the D.C. Court of Appeals "key controlling provisions of the D.C. Code," Motion at 23, and,

second, that the CMPA does not preclude tort claims against the government except where the action is cognizable as a 'personnel' issue. Motion at 24. Neither argument merits extended discussion.

Plaintiffs' first argument is that government counsel withheld from the Johnson Court the provisions of D.C. Code § 5-127.01 (2006), which provide that no person may be removed from the police force (i.e., terminated) except upon the basis of written charges. [5] Plaintiffs' implicit suggestion that the D.C. Court of Appeals erred in own its research or analysis requires no comment; that these Plaintiffs may disagree with that law is of no moment.

As discussed at the PI hearing, however, § 5-127.01 is simply not applicable to police officers and fire fighters hired in 1980 or after. D.C. Official Code § 1-632.03(Z) (2006). Even if they could otherwise be covered by § 5-129.01, Plaintiff Griffith, at least, executed a volunteer services agreement in 1995, in which he acknowledged that his volunteer services could be terminated at any time.

Seeking to sidestep the fact that their service began after 1980, Plaintiffs claim that because they are volunteers, see LeFande v. District of Columbia, 875 A.2d at 116, and because § 1-632.03(Z) affected only civil service employees, it follows that § 5-127.01 remains applicable to them as volunteers. The argument fails because § 5-127 is not now and never was applicable to volunteers.

Section 5-127.01 was enacted in 1901 as part of the District's pre-1980 personnel law regarding the police department. 31 Stat. 819, ch. 623, § 1 (Feb. 28, 1901). Among other things authorized to the Mayor in management of the police, "the Mayor is empowered to fine, *suspend with or without pay*, and dismiss any officer or member of the said police force[.]" D.C. Official

---

[5] Plaintiffs' allegations are unfounded and unprofessional. They do not warrant discussion.

Code § 5-127.01 (emphasis supplied). Obviously, no volunteer could be suspended "with or without pay" as the volunteer is unpaid to begin with. Thus, the coverage of § 5-127.01 does not extend to volunteers and it cannot be used as the predicate for any alleged property right.

Plaintiffs' second argument is that the CMPA, of which § 1-632.03(Z) is a part, cannot deprive Plaintiffs of procedural due process rights that they have independently of the CMPA. In support of this proposition, they cite District of Columbia v. Thompson, 593 A.2d 621 (D.C. 1991), and assert that the CMPA only precludes tort claims where the particular issue is a personnel matter under certain portions of the CMPA. Motion at 24. The argument simply begs the question; Plaintiffs can have no procedural right unless there is some underlying substantive right property that exists apart from the CMPA. In this case, as discussed above, there is none.

## II.   THE DISTRICT OF COLUMBIA CLAIMS

The claims regarding alleged violations of District of Columbia law are brought under the Court's supplemental jurisdiction authority. Complaint at ¶ 7. Because this Complaint fails to state a claim based on the Constitution or on federal law, this Court does not have jurisdiction over the D.C. claims under its supplemental jurisdiction.

Nevertheless, because District of Columbia claims are at the heart of the motion for partial summary judgment, Defendant must address them here. The substance of Plaintiffs' arguments is the same as those they have previously presented in their TRO and PI motions which were denied by the Court, and Defendant's responses are fundamentally the same as well.

The thrust of Plaintiffs' arguments are that the emergency rulemaking and the notice of proposed final rulemaking are invalid because (1) contested case adjudication, not notice and comment rulemaking, is required for these regulations; (2) the regulations were issued by an unauthorized person, (3) the regulations were issued out of time, and (4) the emergency rules

were not based on a real emergency. Plaintiffs further argue that the 2006 General Order is also an improperly promulgated regulation. Defendant addresses the issue of the General Order first.

### A. The General Order Issued in 2006 Is Not Rulemaking and Is Not Subject to the Administrative Procedure Act.

Plaintiffs assert that the 2006 version is actually rulemaking and is subject to the provisions of the APA and, in particular, the contested case provisions. Motion at 6. Thus, the new General Order is invalid and General Order 101.3 as issued in 1995 remains in full force and effect. (Curiously, the 1995 version of General Order 101.3 was not issued after notice and comment, but Plaintiffs do not challenge that version.)

There is no need to deal with whether or not this is a contested case under the APA because it is long-settled that MPD General Orders are not regulations and, therefore, are not subject to the provisions of APA. D.C. Official Code §§ 2-501 et seq. (2006). Rather, they are issued for internal administrative purposes. Wanzer v. District of Columbia, 580 A.2d 127, 133 (D.C. 1990); Abney v. District of Columbia, 580 A.2d 1036, 1041 (D.C. 1990). "[W]e have held, in a variety of factual settings, that internal policy manuals and similar documents generally do not give rise to judicially enforceable rights, for they are not statutes or regulations and have no legal force or effect." In re Walker, 856 A.2d 579, 586 (D.C. 2004)). See Johnson v. Williams, 887 A.2d at 1027 and cases cited therein; Stevenson v. D.C. Board of Elections & Ethics, 683 A.2d 1371, 1378 (D.C. 1996). Accordingly, there is no violation of the APA in the issuance of the 2006 MPD General Order 101.3.

B.  **The 2006 Emergency and Proposed Rulemaking Are Fully Compliant with the District's Administrative Procedure Act.**

As noted, the Metropolitan Police Department Reserve Corps Establishment Act of 2004 expressly authorizes the Mayor, by rule, to –

    (1)    Prescribe the duties and responsibilities of the Reserve Corps members;

    (2)    Define the scope of Reserve Corps members" (sic) authority and discretion in carrying out their duties and responsibilities, including any limitations on or restrictions to their authority and discretion; and

    (3)    Delineate the supervision Reserve Corps members are to receive.

D.C. Official Code § 5-129.51(d) (2006). The District's APA authorizes the issuance of rules following appropriate notice and comment. D.C. Official Code § 2-505 (2006). The APA contains an exception to the notice and comment "if, in an emergency, as determined by the Mayor or an independent agency, the adoption of such rule is necessary for the immediate preservation of the public peace, health, safety, welfare, or morals[.]  D.C. Official Code § 2-505(c) (2006). No such emergency rule may remain in place for more than 120 days. Id.

Plaintiffs' only substantive argument is that both the emergency and proposed final rules are invalid exercise of notice and comment rulemaking. They assert that the present circumstances amount to a "contested case" which, under the APA, requires an administrative adjudication. Motion at 6-8. They argue that "[w]here rulemaking defines 'the legal rights, duties, or privileges of specific parties' and such parties are entitled by a constitutional right to due process, the agency must treat the rulemaking as a 'contested case.' " Motion at 6, quoting Richard Milburn Public Alternative High School v. Cafritz, 798 A.2d 531, 538 (D.C. 2002).

Plaintiffs' argument, of course, is correct up to a point – if there is a *constitutional right* to due process, then a hearing is required. But that is not the issue here because, as shown above,

- 13 -

there is no constitutional property right or liberty interest to be protected in these circumstances and the existence of such right is the predicate to constitutional due process.

As to whether an APA adjudication, rather than notice and comment rulemaking, is required outside any constitutional strictures depends on whether the matter involved is a "contested case." A contested case, essentially a trial-type proceeding, is "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties *are required by any law (other than this subchapter),* or by constitutional right, to be determined after a hearing before the Mayor or before an agency." D.C. Official Code § 2-502(8) (2006) (emphasis supplied). Richard Milburn Public Alternative High School v. Cafritz, 798 A.2d 531, 538 (D.C. 2002) (the APA itself guarantees no right to a contested case hearing; that right must derive from a separate statute or constitutional provision). Plaintiffs have pointed to no provision of law outside of the APA and outside of the Constitution that mandates a hearing on the issues that Plaintiffs seek to raise. Accordingly, this matter is not a contested case.

Finally, Defendant notes in passing that administrative adjudications and administrative rulemaking address different problems. In very general terms, adjudications determine the rights of persons under existing law whereas regulations set forth standards of general and prospective application.

    **C.**    **Plaintiffs' Procedural Challenges to the Emergency Regulations and to the Proposed Final Regulations Are without Merit.**

Plaintiffs have reiterated a series of challenges to the promulgation of the emergency and proposed final rules. Those challenges are dealt with here.

1.     Issuance of the Rules by the Chief of Police.

Plaintiffs assert that the 2006 emergency rules and the notice of proposed rulemaking are invalid because they were issued by the Chief of Police, the Defendant here, rather than by the Mayor of the District of Columbia.

In the first place, the fact that the statute authorized the Mayor to issue regulations does not preclude subdelegation. Under the provisions of the D.C. Charter, the Mayor is authorized to delegate any of his functions (with certain enumerated exceptions) to any officer or employee of the executive branch. D.C. Official Code § 1-204.22(6) (2006). As documented in Defendant's motion to dismiss, the Mayor, on May 19, 2006, delegated his rulemaking power under the Metropolitan Police Department Reserve Corps Establishment Act and the Volunteer Services Act to the Chief of Police. 53 D.C. Reg. 5313 (June 30, 2006). Thus, the Chief of Police was fully empowered to issue both the emergency rules and the proposed rules.

Plaintiffs' suggestion that earlier drafts of the statute, which placed rulemaking authority in the Chief of Police, require the conclusion that the Council intended to restrict rulemaking to the Mayor and preclude delegation of that authority is not correct. First, it is the final language of the statute that controls its meaning, not its earlier drafts. Second, Plaintiffs point to no legislative history that the issue that they now raise was ever considered by the Council and that there was any Council intent to preclude delegation of rulemaking authority. Finally, under the APA, rulemaking authority is expressly vested in the Mayor. D.C. Official Code § 2-502(a) (2006). The MPDRC act did not repeal or limit this provision; its rulemaking provisions are fully in accord with the APA. Implied repeal of a statute is highly disfavored.

Plaintiffs' other argument is that the Council delegated rulemaking authority to the Mayor and the Mayor, as the delegate, may not subdelegate that authority. The argument fails

for exactly the same reasons as Plaintiffs' previous argument.  The Mayor was not "delegated" authority to issue rules by the statute since the statutory authority to engage in rulemaking has been vested in the Mayor at least since the District's first APA, in 1968.  Pub. L. 90-614, § 6, 82 Stat. 1206 (Oct. 21, 1968).  See D.C. Official Code § 2-205(a) (2006).  The Mayor cannot have been be delegated authority that he already has and, in light of the Mayor's statutory authority under the Home Rule Charter to delegate his functions, cannot be precluded from delegating functions that he has independent statutory authority to delegate.  The assignment of functions in a statute simply does not amount to a delegation of functions.  Finally, the issuance of regulations under a statute is a quintessentially executive function.

Under these circumstances, the Chief of Police was fully authorized to issue the emergency and proposed final rules.

### 2. The Time Limits for the Issuance of the Rules.

Plaintiffs have argued, as they did in their earlier submissions, that the issuance of the emergency rules and the proposed final rules after the expiration of the 180 day period set forth in the statute invalidates those rules.

The issuance of regulations after the expiration of a statutory period does not invalidate them. The D.C. Court of Appeals has held "that statutory time limits on agency decision making, where the statute fails to provide for a sanction, are 'directory rather than mandatory.' " Spicer v. District of Columbia Real Estate Commission, 636 A.2d 415, 418 (D.C. 1993), quoting Hughes v. D.C. Dep't of Employment Services, 498 A.2d 567, 571, n. 8 (D.C.1985).  See also JBG Properties, Inc. v. D.C. Office of Human Rights, 364 A.2d 1183, 1185 (D.C.1976) (a statutory time limit is "directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of [a

public officer.]"); Thomas v. Barry, 234 U.S. App. D.C. 378, 379 n.5, 729 F.2d 1469, 1470 n.5 (D.C. Cir. 1984) ("[t]he general rule is that '[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision' " (internal citation omitted); Fort Worth National Corp. v. Federal Savings & Loan Ins. Corp., 469 F.2d 47, 58 (5th Cir. 1972) ("A statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision." [emphasis in original]).

Plaintiffs seek to distinguish this long line of case law, asserting that the proposition is inapplicable where Defendant's rulemaking "sets out to limit the rights, authority and privileges" of Plaintiffs under D.C. law and under the Constitution. Motion at 12, citing In re DeLoatch, 532 A.2d 1343, 1344 n.2, 1344-45 (D.C. 1987). In re DeLoatch is not applicable here. As Plaintiffs' quotation from In re DeLoatch makes clear, that case differs in two fundamental respects from this one. First, DeLoatch did not involve administrative rulemaking, the area in which the above-cited case law is applicable. Rather, it involved a 24-hour time limit within which a Superior Court evidentiary hearing must be held to contest involuntary mental health hospitalization if requested. Id. at 1343. Second, the DeLoatch court expressly pointed out that the case law stating that time limits did not "involve[ ] the deprivation of individual liberty." Id. at 1344 n.2. In any event, as discussed above, the present circumstances involve no deprivation of any protected individual liberty or property right.

Finally, Plaintiffs' argument would lead to the absurd consequence that once the executive branch has missed a deadline for the issuance of regulations, it could never do so and the Reserve

Corps would remain forever unregulated under the 2004 statute. In fact, this is precisely what the Plaintiffs seek. Motion at 10. Surely, no such result has ever been intended.

        3.      <u>The Emergency Rules.</u>

Plaintiffs' final assertion is that the emergency rules must be struck down because no emergency, in fact existed. The argument fails for at least two separate reasons.

First, the emergency rules have expired. Although the APA authorizes emergency rules for a period of up to 120 days, these emergency rules were in place for only 30 days, up until June 18, 2006. No new emergency rules have been issued. Accordingly, the issue is moot. While Plaintiffs appear to seek an advisory ruling from this Court on the ground that new emergency rules might be issued (<u>i.e.</u>, that the issue is capable of repetition), not only is such an assertion speculative, but it also fails to take into account than should there be any new emergency rules issued they may not necessarily be the same as the ones that have now expired.

Second, while it is apparent that Plaintiffs seek a review on the merits of whether there was an actual "emergency" situation," in other words, they seek a <u>de novo</u> review, there is no need for the Court to enter this thicket because Plaintiffs have eloquently conceded the existence of an emergency that justifies the rulemaking: "There was an immediate need to define these [Reserve O]fficers' authority and avoid potential liability to the city by permitting an officer to conduct police business with such previously ill-defined authority." Plaintiff's Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction at 5.

**Conclusion**

For all of the foregoing reasons, Plaintiffs' motion for partial summary judgment should be denied.

Dated: November 22, 2006            Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


　　　/s/
KIMBERLY MATTHEWS JOHNSON
Chief, Section 1
DC Bar No. 435163


　　　/s/
JACK M. SIMMONS, III
Assistant Attorney General
DC Bar No. 925420
441 Fourth St., NW
Sixth Floor South
Washington, DC  20001-2714
(202) 724-6653
(202) 727-0431   (fax)
jack.simmons@dc.gov
Attorney for Defendant