District of Columbia Register

DEC. 1 0 1982

Distri

## D.C. OFFICE OF PERSONNEL

## NOTICE OF FINAL RULEMAKING

The Director of Personnel hereby gives notice of the adoption of
final regulations implementing the provisions of D.C. Law 2-12,
governing the utilization of voluntary services. The notice of
proposed rulemaking was published at 29 DCR 4352 (October 1,
1982). No comments were received and no changes are being made
to the regulations as previously published. These regulations
will become effective on the date of publication of this notice
in the D.C. Register. Final rulemaking action was taken on
November 22, 1982.

## SECTION 4000

## UTILIZATION OF VOLUNTARY SERVICES

4000.1   For the purposes of this section, the following terms
have the meaning ascribed:

Agency -- Any governmental instrumentality or body of
the District Government, except the Superior Court of
the District or Columbia and the District of Columbia
Court of Appeals.

Employee -- A person who is paid by the District Govern-
ment from grant or appropriated funds for his or her
services.

Volunteer -- A person who donates his or her services to
a specific program or department of the District Govern-
ment, by his or her free choice and without payment for
the services rendered, except that reimbursement for
actual expenditures by a volunteer on behalf of the Dis-
trict Government shall not make that person an employee
for the purposes of this section.

4000.2   Agencies of the District of Columbia are authorized to
accept and utilize the services of persons on a
voluntary basis in accordance with the provisions of
D.C. Law 2-12 (D.C. Code, §§1-304-308, 1981 ed.) and the
provisions of this section.

4000.3   Volunteers may be utilized to perform services for any
purpose which is in the interests of the government,
except where specifically provided otherwise by this
section, any rule or regulation, or the laws of the
District of Columbia.

4000.4   No volunteer shall fill an authorized position or be
utilized to perform any function or service which is
currently being performed by an employee of the District

of Columbia, provided that volunteers may be utilized to
perform the following:

(a) Any service or function which augments or supple-
ments an existing function, service, or program
which is staffed by employees of the District of
Columbia;

(b) Any service or function which creates a community
service capability which would not be available
under existing programs or within the level of
available resources;

(c) The duties assigned to a regular employee during the
temporary absence of the regular employee, provided
the volunteer is qualified to perform the assigned
duties; or

(d) The duties assigned to a regular employee on a
temporary basis during periods of heavy workload or
to assist in relieving an existing backlog of work.

4000.5   Volunteers may be used only to enhance District
functions by contributing a service which would not
otherwise be available.  Therefore, normal recruitment,
employment, and internal placement activities will not
be affected by the use of volunteers.

4000.5   In no case shall the utilization of voluntary services
or the availability of voluntary services be used as the
basis for a reduction in force.  The availability of
voluntary services may be considered as a factor in
determining the allocation of limited resources.

4000.6   The standards of conduct prescribed for employees of the
District of Columbia shall be applicable to all volun-
teers.

4000.7   The services of a person on a voluntary basis shall not
be accepted or utilized where such services or the use
of such services would constitute a conflict of interest
or could reasonably give rise to the appearance of a
conflict of interest, as set forth in §4 of D.C. Law
2-12 (D.C. Code, §1-306, 1981 ed.).

4000.8   Except as provided in subsection 4000.9 below, persons
whose services are utilized on a voluntary basis shall
not be eligible for any benefits normally accruing to
employees of the District of Columbia, including health
insurance, retirement, life insurance, leave, or the
right to organize for collective bargaining purposes,
unless such benefits are specifically provided by the
laws of the District of Columbia.

4000.9   Persons whose services are utilized on a voluntary basis
are eligible for compensation for work-related injuries

**5406**

to the extent authorized by Section 2301(a)(2) of D.C. Law 2-139, except that, in cases of organizations which supply volunteers to perform services for the District of Columbia also provide disability or workers' compensation for such volunteers, in which event the coverage provided by such organizations would be applicable.

4000.10 Persons whose services are utilized on a voluntary basis shall be considered employees of the District of Columbia for the purposes of liability for tortious injuries caused by the volunteer while acting within the scope of duty under the supervision and control of the District of Columbia.

4000.11 All rules and procedures with respect to the confidentiality of personnel records and release of personnel information which are in effect for employees of the District of Columbia shall be applicable to persons whose services are utilized on a voluntary basis.

4000.12 The acceptance and utilization of the services of any person on a voluntary basis shall be at the discretion of each agency, and the utilization of such services may be discontinued by the agency at any time for any reason.

4000.13 The decision by an agency official to discontinue the utilization of the voluntary services of any person shall not be considered an adverse action and shall not give rise to any right or process of appeal.

4000.14 Each volunteer shall be assigned to an employee of the agency utilizing the volunteer's services, who shall be responsible for assignment of duties; supervision and control of the activities of the volunteer; evaluation of performance; and establishment and monitoring of the hours during which voluntary services are performed, if appropriate.

4000.15 Volunteers shall not engage in political activities during the time voluntary services are being performed.

4000.16 Persons who offer services on a voluntary basis shall only be utilized to perform services for which they are qualified based on training, education, experience, and maturity.

4000.17 Volunteers must be mentally and physically capable of performing the duties assigned without unreasonable danger of harm or injury to the volunteer or any other person.

4000.18 Although physical examinations shall not ordinarily be required, the agency head or designated supervisor may require a physical examination where voluntary services

involve the handling of food or participating in activities which may be strenuous or potentially hazardous.

4000.19 Any volunteer whose services are utilized to perform duties which would ordinarily require that the person be licensed in a trade or craft under the laws of the District of Columbia shall be required to have or obtain the required license(s) prior to the performance of voluntary services.

4000.20 No offer of voluntary services by any person shall be unlawfully rejected on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, matriculation, political affiliation, physical handicap, source of income, place of residence or business, or any other basis of unlawful discrimination under the laws of the District of Columbia.

4000.21 The Director of Personnel shall establish guidelines for the acceptance and utilization of voluntary services in the agency, including guidelines for the deployment and supervision of volunteers pursuant to the provisions of this section.  Agency heads may supplement such guidelines when appropriate.

4000.22 The residency requirements contained in chapter 3 of these regulations shall not apply to volunteers under this section.

4000.23 No agency head, supervisor, or other employee of the District of Columbia shall be authorized to limit, waive, amend, or otherwise modify the restrictions and requirements on the use of voluntary services set forth in this section without the approval of the Director of Personnel.

4000.24 Each volunteer shall be informed of the requirements and restrictions set forth in this section and in the guidelines established by the agency head.

4000.25 Prior to engaging in the performance of voluntary services for the District of Columbia, each volunteer shall be required to sign a statement which acknowledges the following:

(a) That the volunteer has been informed of the nature and scope of the voluntary services to be performed;

(b) That the volunteer has been informed of and understands all of the provisions of this section, of D.C. Law 2-12, and of the applicable agency guidelines for the use of volunteers; and

(c) That the volunteer agrees to perform voluntary services under the terms and conditions set forth in

DISTRICT OF COLUMBIA REGISTER

JUN 3 0 2006

## GOVERNMENT OF THE DISTRICT OF COLUMBIA

## ADMINISTRATIVE ISSUANCE SYSTEM

Mayor's Order  2006-57
May 19, 2006

**SUBJECT:** Delegation of Mayor's Rulemaking Authority Pursuant to the Metropolitan Police Department Reserve Corps Establishment Act of 2004 and the Volunteer Services Act of 1977 to the Chief, Metropolitan Police Department

**ORIGINATING AGENCY:**   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia pursuant to § 422(6) of the District of Columbia Home Rule Act, as amended, 87 Stat. 790, Pub. L. No. 93-198, D.C. Official Code § 1-204.22(6) (2001), and pursuant to section 1002(d) of the Metropolitan Police Department Reserve Corps Establishment Act of 2004, effective September 30, 2004, D.C. Law 15-194, D.C. Official Code § 5-129.51(d) (2005 Supp.), and section 3 of the Volunteer Services Act of 1977, effective June 28, 1977, D.C. Law 2-12, D.C. Official Code §1-319.02 (2001), it is hereby **ORDERED** that:

1.   The Chief, Metropolitan Police Department, is delegated the Mayor's authority to issue rules necessary to implement the provisions of the Metropolitan Police Department Reserve Corps Establishment Act of 2004, effective September 30, 2004, D.C. Law 15-194, D.C. Official Code § 5-129.51(d) (2005 Supp.).

2.   The Chief, Metropolitan Police Department, is delegated the Mayor's authority to promulgate regulations under the Volunteer Services Act of 1977, effective June 28, 1977, D.C. Law 2-12, D.C. Official Code §1-319.02 (2001) for volunteers in the Reserve Corps.

3.   This Order supersedes Mayor's Order 77-168, dated October 7, 1977 only with respect to volunteers in the Reserve Corps.

4.   **EFFECTIVE DATE:** This Order shall become effective immediately.

ANTHONY A. WILLIAMS
MAYOR

ATTEST:

PATRICIA ELWOOD
INTERIM SECRETARY OF THE DISTRICT OF COLUMBIA

J-3147—75

**5313**

DISTRICT OF COLUMBIA REGISTER

JUN 9  2006

## METROPOLITAN POLICE DEPARTMENT

## NOTICE OF EMERGENCY AND PROPOSED RULEMAKING

The Chief, Metropolitan Police Department, pursuant to section 1002(d) of the Metropolitan Police Department Reserve Corps Establishment Act of 2004 (Act), effective September 30, 2004 (D.C. Law 15-194, D.C. Official Code §5-129.51(d) (2005 Supp.)), section 3 of the Volunteer Services Act of 1977, effective June 28, 1977, D.C. Law 2-12, D.C. Official Code §1-319.02 (2001), and Mayor's Order 06-57, dated May 19, 2006, hereby gives notice of the adoption of the following rules governing members of the reserve corps. Without these emergency rules, the Metropolitan Police Department would be hindered in its efforts to ensure that reserve corps members who are deployed to fulfill law enforcement duties and responsibilities have well-defined limitations on their authority and discretion and operate under appropriate supervision. Therefore, to ensure the preservation of the public safety and welfare, the Chief of Police took action on May 19, 2006 to adopt the following rules on an emergency basis effective that date. The emergency rules will remain in effect until June 18, 2006, or upon publication of a Notice of Final Rulemaking in the *D.C. Register*, whichever occurs first. The Chief of Police also gives notice of intent to take final rulemaking action to adopt these rules in not less than thirty (30) days.

These emergency amendments, delineating the duties, responsibilities, authority, and discretion of, and supervision received by, Metropolitan Police Department Reserve Corps members will add a new chapter 12 to Title 6A, Police Personnel, District of Columbia Municipal Regulations (DCMR).

Title 6A DCMR, Police Personnel, is amended by adding a new Chapter 12 to read as follows:

### CHAPTER 12    METROPOLITAN POLICE DEPARTMENT RESERVE CORPS

**1200**      **GENERAL PROVISIONS**

1200.1      The mission of MPD's Reserve Corps is to deliver high quality volunteer public safety support services to all members of MPD in order to build safe and healthy neighborhoods throughout the District of Columbia.

1200.2      The Reserve Corps shall have as its membership unpaid volunteer individuals who shall fulfill MPD duties and responsibilities as determined by the Chief.

1200.3      As volunteers, Reserve Corps members shall be subject to the provisions of the Volunteers Services Act of 1977 (D.C. Official Code §1-319.01 *et seq.*) and its implementing rules at 6 DCMR, Chapter 35 (Voluntary Services) §4000 (Utilization of Voluntary Services) as specified by the Chief. To the extent that there is any conflict, these rules shall prevail.

1

**1201**        **Organization**

1201.1        MPD's Reserve Corps shall be under the administrative control of the Chief or designee.

1201.2        The Chief or designee shall appoint a MPD supervisor or reserve official to serve as the Reserve Corps Manager to oversee the daily operation of the Reserve Corps.

1201.3        The Reserve Corps shall consist of two levels of Reserve Officer, Reserve Officer Level II and Reserve Officer Level I, and such supervisory ranks as approved by the Chief of Police.

1201.4        The Chief or designee shall approve the initial assignment, and any subsequent transfer, of Reserve Corps members.

1201.5        Reserve Corps members may perform specific details outside their assigned element as authorized in advance by the Chief or designee.

1201.6        Reserve Corps members shall be under the operational command and supervision of the Commanding Official of the assigned element or, when serving on a special event, the Reserve Corps Manager or designated MPD supervisor.

**1202**        **Selection and Appointment Criteria**

1202.1        Applicants must meet the following selection criteria to be accepted into the Reserve Officer Level II training program:

(a)        United States citizenship;

(b)        At least twenty-one years of age;

(c)        High school diploma or General Equivalency Diploma (GED);

(d)        Valid driver's license from their jurisdiction of residence that is not under suspension or revocation;

(e)        Successful completion of the required sworn officer entrance tests;

(f)        Successful completion of a background suitability investigation based on sworn officer standards;

(g)        Successful completion of medical and psychological examinations based on sworn officer standards;

2

**4582**



(h)     Willingness to meet the Reserve Corps training and service requirements;

(i)     Recommendation by the Reserve Corps Manager for acceptance into the Reserve Officer Level II training program;

(j)     Approval by the Chief.

1202.2     Upon successful completion of all Reserve Officer Level II initial training requirements, Reserve Officer Level II candidates must meet the following Reserve Officer Level II appointment criteria:

(a)     Recommendation by the Reserve Corps Manager for acceptance into the Reserve Corps as a Reserve Officer Level II; and

(b)     Approval of the Chief.

1202.3     Reserve Officers Level II must meet the following selection criteria for acceptance into the Reserve Officer Level I training program:

(a)     Reserve Officer Level II in good standing;

(b)     Completion of at least 192 hours of volunteer service following appointment as a Reserve Officer Level II;

(c)     Completion of at least one year of Reserve Officer Level II service following appointment as a Reserve Officer Level II;

(d)     A minimum rating of "Meets Expectations," or the equivalent, on the most recent MPD annual performance evaluation;

(e)     Willingness to carry a firearm;

(f)     Willingness to meet the Reserve Officer Level I initial training requirements;

(g)     Recommendation by the Reserve Corps Manager for acceptance into the Reserve Corps Level I training program;

(h)     Approval by the Chief;

(i)     Authorization by the Reserve Officer Selection Panel, which will, at a minimum, review candidates' updated background suitability investigations, and updated medical and psychological examinations. The Reserve Officer Selection Panel may designate other information to review. The Chief shall establish the composition of and meeting schedule for the Reserve Officer Selection panel; and

3

(j)    For Reserve Officers Level II accepted into the Reserve Corps on or after December 31, 2003, successful completion of at least sixty (60) semester-hour credits, or the semester-hour equivalent, from an accredited post-secondary educational institution or at least 960 hours of MPD volunteer service, or an equivalent combination of education and MPD volunteer service.

1202.4    Upon successful completion of all Reserve Officer Level I initial training requirements, Reserve Officers Level II must meet the following appointment criteria for a Reserve Officer Level I:

(a)    Continued good standing as a Reserve Officer Level II;

(b)    A minimum rating of "Meets Expectations," or the equivalent, on the most recent MPD annual performance evaluation as a Reserve Officer Level II;

(c)    Recommendation by the Reserve Corps Manager for elevation to Reserve Officer Level I; and

(d)    Approval by the Chief.

1202.5    An applicant with prior experience as a law enforcement officer, or who is currently serving as a law enforcement officer, may enter the Reserve Corps as a Reserve Officer Level I. For direct appointment as a Reserve Officer Level I, an applicant must meet the following criteria:

(a)    Have retired or resigned, or be currently employed, in good standing, with the qualifying law enforcement agency or agencies;

(b)    Have met all of the Reserve Corps selection criteria described in 6A DCMR §§ 1202.1 and 1202.3;

(c)    Have completed at least sixty (60) semester-hour credits, or the semester-hour equivalent, from an accredited post secondary institution, or possess an equivalent combination of education and law enforcement experience;

(d)    Be recommended by the Reserve Corps Manager for acceptance as a Reserve Officer Level I;

(e)    Have completed any academy, field, or other training required by the Chief; and

(f)    Have the approval of the Chief.

DISTRICT OF COLUMBIA REGISTER                                                JUN 9  2006



1202.6    The Chief may designate a Reserve Corps member to serve as a Reserve Corps official in any rank.

**1203**    **Service and Training**

1203.1    Reserve Corps members shall be assigned and transferred based on the operational needs of the MPD, and at the discretion of the Chief.

1203.2    Reserve Corps members shall volunteer a minimum of sixteen hours per month, or a total one hundred ninety-two hours per calendar year.

1203.3    The Chief shall establish the earning rate for volunteer service hours performed on holidays.

1203.4    The volunteer service schedules of the Reserve Corps members shall be established to meet the operational needs of the assigned element and shall, where practicable, consist of four-hour and eight-hour fixed time periods.

1203.5    Reserve Corps members shall submit a monthly activity log to the Reserve Corps Manager, through the chain of command, that also includes reasons, as necessary, for being unable to fulfill the monthly service requirement.

1203.6    Reserve Corps members shall:



(a)    Successfully complete all required initial Reserve Corps training prior to being administered the law enforcement officer oath of allegiance and carrying out Reserve Officer duties and responsibilities;

(b)    After completion of the required initial Reserve Corps training, successfully complete job-related field training;

(c)    Successfully complete the annual in-service training program required of sworn members;

(d)    Successfully complete all required MPD skills re-qualification training, including those for CPR, AED, ASP baton, and, for Reserve Officers Level I, firearms; and

(e)    Successfully complete all other mandatory training required of sworn members in the equivalent rank or assignment.

1203.7    Reserve Corps members who are selected for employment as sworn officers may receive credit for equivalent training completed under the Reserve Corps program with the approval of the Chief.

**4585**

JUN 9 2006

**1204**         **Duties and Responsibilities**

1204.1      A Reserve Officer Level II, upon the completion of all required MPD training, shall be permitted to perform the following duties and responsibilities:

    (a)    Administrative:

        (1)    Compile, sort, and file records;

        (2)    Staff telephones;

        (3)    Respond to walk-in inquiries;

        (4)    Conduct routine office operations;

        (5)    Maintain the Patrol Signal System Book;

        (6)    Perform routine law enforcement database (e.g., WALES, NCIC) inquiries;

        (7)    Assist in community policing activities and crime analysis tasks; and

        (8)    Other administrative duties as designated by the Chief.

    (b)    Operational Support:

        (1)    Serve as a Desk Clerk;

        (2)    Serve as a Live Scan technician;

        (3)    Serve as a Booking Officer;

        (4)    Serve as a Cell Block Technician; and

        (5)    Other operational support duties as designated by the Chief.

    (c)    Policing:

        (1)    Walk a footbeat in a two-officer team, or patrol in a two-officer patrol car, in the company of a sworn member;

        (2)    Assist in traffic and/or crowd control at accident and fire scenes, school crossings, street closures, special events, and other locations;

JUN 9  2006

    (3)      Handle special attention requests from citizens;

    (4)      Prepare MPD reports;

    (5)      Be assigned to a Civil Disturbance Unit squad or Rapid Deployment Team upon successful completion of the required training;

    (6)      Assist investigative personnel in investigative activities; and

    (7)      Other policing activities as designated by the Chief.

(d)      When assigned to work with a sworn or civilian member, the responsibility for the operation and conduct of the assignment shall rest with the sworn or civilian member; and

(e)      Other assigned element duties and responsibilities commensurate with their qualifications and training as approved by the element commanding official in accordance with the policies and procedures established by the Chief or designee.

1204.2      A Reserve Officer Level I, upon successful completion of all required MPD training, shall be permitted to perform the same duties and responsibilities of a sworn officer pursuant to section 1002(a) of the Metropolitan Police Department Reserve Corps Establishment Act of 2004 (D.C. Law 15-194, D.C. Official Code § 5-129.51(a) (2005 Supp)).

1204.3      Reserve Corps members assigned to supervisory ranks shall carry out the duties and responsibilities as assigned by the Chief or designee.

**1205**      **Authority and Supervision**

1205.1      Reserve Corps members shall:

(a)      Be assigned to a MPD supervisor.

(b)      Be considered on-duty when the Reserve Corps member:

    (1)      Has reported to his or her assigned element and has received a duty assignment from the roll call official, or his or her MPD supervisor;

    (2)      Has checked into the Court Liaison Division to paper a case or in response to a subpoena or CANS notice;

7

**4587**

(3)    Is traveling to and from an assignment in an official MPD vehicle; or

(4)    Takes police action, while off duty and in the District of Columbia, that is consistent with his or her training and duties and responsibilities, to assist a sworn member or Reserve Corps member, in circumstances in which a reasonable police officer would believe that serious bodily injury or death is imminent.

(c)    When not officially on duty, and when not performing an assigned duty, Reserve Corps members shall possess no authority other than that of a private citizen, except as provided for in 6A DCMR §1205.1(b)(4).

1205.2    A Reserve Officer Level II, upon successful completion of all MPD required training, and pursuant to applicable law, regulations, and MPD directives, while on-duty, and while under close supervision, is authorized to:

(a)    Perform the duties and responsibilities specified in these rules, and other duties and responsibilities approved by the element Commanding Official;

(b)    Make arrests when in the company of a sworn member;

(c)    Prepare MPD reports;

(d)    Issue civil Notices of Infraction (NOI's);

(e)    Issue Violation Citations (PD Form 61D's) for criminal offenses in accordance with the PD Form 61D Standard Operating Procedures;

(f)    Appear before courts or administrative tribunals as a sworn officer;

(g)    Carry and utilize MPD-issued OC (Oleoresin-Capsicum) spray and an ASP baton; and

(h)    Operate MPD vehicles when:

(1)    On patrol in the company of a sworn member;

(2)    Responding as an emergency vehicle as authorized by 18 DCMR § 2002 in the company of a sworn member; and

(3)    Traveling to and from a detail or an administrative assignment in the company of a sworn or civilian MPD member or a Reserve Corps member.



1205.3    A Reserve Officer Level I, upon successful completion of the required training, and pursuant to applicable laws, regulations, and MPD directives, while on-duty, and while under general supervision, is authorized to:

(a)    Perform all of the duties and responsibilities of a sworn officer;

(b)    Exercise the authorities listed in 6A DCMR §1205.2 for a Reserve Officer Level II; and

(c)    Carry and utilize a MPD-issued firearm.

1205.4    Reserve Officers Level I and II shall not serve as Field Training Officers for sworn members.

**1206    Papering and Court Appearances**

1206.1    When a Reserve Corps member is the arresting officer, the Reserve Corps member shall be responsible for papering the case, and for all subsequent court appearances associated with the arrest.

1206.2    When a Reserve Corps member is the assisting officer in an arrest, the arresting officer shall be responsible for papering the case, and for all subsequent court appearances associated with the arrest.

1206.3    Reserve Corps members shall make themselves available for court appearances, even when such an appearance may interfere with their regular employment, and shall be subject to the official court process for compelling their attendance.

**1207    Uniform and Equipment**

1207.1    Reserve Corps Members:

(a)    While on-duty, shall wear the uniform required of a sworn member of equivalent rank, with the exception that the badge shall contain an "R" preceding the badge numbers;

(b)    Must be granted advance approval by the Chief or designee to work in other than the MPD uniform;

(c)    Shall be issued the same equipment as sworn officers, subsequent to successfully completing all required training, except that Reserve Officers Level II shall not be issued a firearm;

(d)    Shall comply with all MPD directives to include the procedures for reporting the loss of, and damage to, MPD-issued equipment;

9

**4589**

(e)     Shall not wear the MPD uniform, or identifiable parts of the MPD uniform, while off duty. The only exception is when traveling to and from volunteer service with the MPD. In that instance, Reserve Corps members shall cover all of the identifiable parts (*e.g.*, shirt, badge) with a civilian garment;

(f)     Shall not produce or display the Reserve Corps badge and identification folder except while on MPD business; and

(g)     Shall return all MPD-issued uniforms and equipment, including the badge and identification card, to a MPD supervisor of the assigned element within twenty-four (24) hours following resignation or removal from the Reserve Corps.

1207.2     The MPD supervisor of a Reserve Corps member who has resigned or been removed from the Reserve Corps shall be responsible for ensuring that all MPD-issued uniforms and equipment are returned as required.

**1208          MPD Vehicles**

1208.1     Reserve Corps members shall:

(a)     Maintain a valid driver's license from the jurisdiction of their residence that is not under suspension or revocation;

(b)     Operate only the MPD vehicles for which they have successfully completed the required MPD training;

(c)     Operate MPD vehicles in accordance with the District of Columbia traffic laws and regulations and all applicable MPD directives; and

(d)     Be subject to all MPD directives applicable to accidents and crashes, except as provided by the Chief.

1208.2     Reserve Corps members shall not:

(a)     Operate a MPD vehicle without obtaining the prior proper authorization of a MPD supervisor for each separate use of the vehicle. If vehicle use extends over more than one tour of duty, a separate request and authorization is required for each tour of duty; and

(b)     Operate marked vehicles unless in proper uniform and on-duty.

**1209          Service Weapons**

**DISTRICT OF COLUMBIA REGISTER**

1209.1    Each Reserve Officer Level II, following the successful completion of the required training, shall be issued Oleoresin-Capsicum (OC) spray and an ASP baton.

1209.2    Each Reserve Officer Level I, following the successful completion of the required firearms training, shall be issued a MPD firearm.

1209.3    Reserve Corps Members shall comply with all MPD policies and procedures regarding the use of force, shall act in accordance with all MPD use of force and service weapon directives, and shall be subject to all MPD directives pertaining to administrative reviews of uses of force, including MPD directives on changes in duty status following a use of a service weapon.

1209.4    Firearms assigned to Reserve Corps members shall be secured as directed by the Chief when the Reserve Corps members are not on MPD duty.

1209.5    The Chief shall establish the procedure for firearms to be issued to and returned by Reserve Officers Level I for on-duty use, including procedures for use by Reserve Officers Level I at assignments other than within his or her assigned element.

**1210    On-Duty Injuries and Illnesses**

1210.1    The Chief shall establish procedures requiring Reserve Corps members to report injuries and illnesses, and seek medical attention and reimbursement for medical costs as appropriate.

1210.2    The Chief shall establish procedures for processing reports of Reserve Corps members' injuries and illnesses, including procedures for reporting on-duty injuries or illnesses to the D.C. Disability Compensation Program.

1210.3    The Chief shall establish procedures for Reserve Corps members to return to duty following injuries and illnesses.

**1211    Conduct**

1211.1    The Chief shall establish policies governing the conduct of Reserve Corps members. These policies shall include, but not be limited to:

(a)    A requirement that Reserve Corps members adhere to applicable laws, rules, regulations, and MPD directives;

(b)    On-duty obligations of Reserve Corps members;

(c)    Time and attendance requirements;

11

**4591**

(d)    Assignment requirements and limitations;

(e)    Uniform and equipment requirements; and

(f)    Personnel processing requirements.

1211.2    Reserve Corps members shall be evaluated on an annual basis.

1211.3.    The Chief shall establish policies and procedures governing corrective actions for Reserve Corps members.

**1212    Demotion, Removal, or Resignation**

1212.1    Notwithstanding any other provision of these rules, all Reserve Corps members shall serve at the pleasure of the Chief, who shall, without limitation, have the authority to determine when to reduce a Reserve Corps member in rank or Level and remove a Reserve Corps member from the Reserve Corps. Such determination shall not be subject to administrative review.

1212.2    The Chief shall establish criteria and procedures for Reserve Corps members to be recommended for a reduction in rank or Level, or removal from the Reserve Corps. These criteria may include:

(a)    Failing to meet the annual service requirement;

(b)    Receipt of a rating of lower than "Meets Expectations" in the annual MPD performance evaluation;

(c)    Failing to successfully complete Reserve Corps initial training requirements;

(d)    Failing to successfully complete field training requirements;

(e)    Failing to successfully complete in-service and other mandatory training requirements for equivalent ranks, including those relating to CPR/AED re-certification, and for re-qualifying with the MPD-issued firearm, ASP, and OC spray; and

(f)    Any other criteria deemed appropriate by the Chief.

1212.3    The criteria and procedures developed pursuant to 6A DCMR § 1212.2 shall in no way constitute a limitation on the Chief's authority under 6A DCMR § 1212.1.

**1213    Roles and Responsibilities of Supervisory and Command Personnel**

12

**4592**

1213.1    The Chief shall establish policies regarding the roles and responsibilities of Reserve Corps Officials, MPD Supervisors, the Reserve Corps Manager, Commanding Officials, and other MPD personnel with regard to the Reserve Corps.

**1299        DEFINITIONS**

The following terms shall have the meaning ascribed in this chapter:

Chief – Chief of Police, Metropolitan Police Department.

Civilian Member - An individual who is a full-time, paid, non-sworn MPD employee.

Close Supervision – The specific oversight of the work activities performed by a Reserve Corps member that shall be conducted in the presence of the Reserve Corps member.  The purpose is to provide specific guidance to ensure compliance with laws, regulations, and directives.

Field Training - The on-the-job training provided a reserve officer following his or her successful completion of the initial training program by a field training officer designated by the commander of the district/unit to which assigned.

General Supervision – The broad oversight of the work activities performed by a Reserve Corps member that shall be conducted in the presence of Reserve Corps member. The purpose is to provide broad guidance in order to ensure compliance with laws, regulations, and directives.

MPD – Metropolitan Police Department.

MPD Supervisor – A sworn member in the civil service rank of Sergeant or above, or a civilian member assigned to a supervisory position.

Reserve Corps Manager – The MPD supervisor or reserve official who has responsibility for the daily operation of the Reserve Corps.

Reserve Corps Member – A Reserve Officer Level I, Reserve Officer Level II, or Reserve official.

Reserve Officer – A volunteer, unpaid sworn individual who serves at the pleasure of the Chief of Police. Consistent with applicable law and training and experience, the volunteer assists and supports sworn and civilian members in the day-to-day delivery of police services, and during emergencies.

13

DISTRICT OF COLUMBIA REGISTER

JUN 9 2006

Reserve Officer Level I – A Reserve Officer who is authorized by the Chief to carry a MPD-issued firearm while on-duty and to carry out sworn officer duties and responsibilities under general supervision.

Reserve Officer Level II – A Reserve Officer who is authorized by the Chief to carry out sworn officer duties and responsibilities commensurate with the Level II assignment under close supervision, but who is not authorized to carry a MPD-issued firearm.

Reserve Official – A Reserve Corps member who has been designated by the Chief of Police to serve in the rank of Reserve Sergeant or above.

Sworn Member – An individual who is a full-time, paid MPD employee in the sworn rank of officer or above.

Sworn Officer – An individual who has taken the law enforcement officer oath of allegiance, and has been appointed to a full-time, paid, continuing position in the civil service rank of officer after satisfactorily completing the MPD's required training and probationary period.

Volunteer – A person who donates his or her services to a specific program or department of the District of Columbia Government, by his or her free choice, and without payment for the services rendered.

Comments on the proposed rulemaking should be submitted, in writing, to Mr. Terrence Ryan, General Counsel, Metropolitan Police Department, Room 4129, 300 Indiana Avenue NW, Washington, D.C. 20001, within thirty (30) days of the date of the publication of this notice in the *D.C. Register*. Additional copies of these proposed amendments are available from the above address.

14

*Connelly AJ*

## DISTRICT OF COLUMBIA COURT OF APPEALS



**F I L E D**

MAY 2 5 2005

DISTRICT OF COLUMBIA
COURT OF APPEALS

No. 04-CV-68

MATTHEW A. LeFANDE, APPELLANT,

v.        CA5514-03

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court of the
District of Columbia,
Civil Division

(Hon. Natalia M. Combs Greene, Trial Judge)

(Submitted April 26, 2005                          Decided **MAY 2 5 2005** )

Before: RUIZ and GLICKMAN, *Associate Judges*, and NEBEKER, *Senior Judge*.

### MEMORANDUM OPINION AND JUDGMENT

PER CURIAM: Appellant Matthew LeFande appeals the trial court's grant of summary judgment. This case arose in the Superior Court on a 337 paragraph verified complaint, which prompted that court to observe, "In the first instance, it is difficult to discern many of the allegations as set out in the complaint." Nonetheless, that court did discern that the counts sounded in breach of contract, retaliation for "whistleblowing," defamation, failure to supervise, and injunctive relief. The defendants' summary judgment motion addressed those counts on the basis that plaintiff was not an employee of the District of Columbia, that he was not an applicant for employment by the District of Columbia, and that the named defendants' actions complained of were absolutely privileged. As to appellant's opposition to summary judgment, the trial court observed that "plaintiff's opposition is little more than a restatement of the claim as set out in the complaint." While appellant could be faulted for failure to oppose the summary judgment motion as required by Super. Ct. Civ. R. 12-I (k), we will, as the Superior Court did, decide the case on the merits. Because we find no genuine issue of material fact, and agree with the appellee that they are entitled to judgment as a matter of law, we affirm.

### I.

LeFande joined the Metropolitan Police Department (MPD) Reserve Corps as a Reserve Officer in February 1993. In 1996, following his termination for improper conduct and conduct bordering on insubordination, LeFande filed a civil complaint against the District of Columbia seeking continued status as a Reserve Officer. Pursuant to a settlement agreement dated March 9, 1998 between LeFande and the District, LeFande was reinstated and the complaint dismissed. Over the next several years, LeFande threatened to report appellee Charles Brown for failing to provide

2

protective gear to Reserve Officers, complained that MPD failed to effectively recruit and utilize Reserve Officers following the terrorist attacks of September 11, 2001, and complained that appellee Kevin Keegan was unlawfully relaxing the recruiting standards for Reserve Officers and making unauthorized changes to Reserve Officer uniforms.

On July 4, 2002, LeFande was assigned to Independence Day parade detail. During the detail, LeFande observed a motorcycle crash involving two MPD officers and responded to the crash scene using lights and a siren placed on his personal car to render first aid. On February 6, 2003, appellee Joseph Massenberg prepared a memorandum concerning LeFande's misconduct in connection with his actions on July 4, 2002. Specifically, Massenberg charged that LeFande violated several MPD rules and regulations by placing lights and a siren on his personal car, initiating a "Code One" response without approval or supervision, and making false statements when writing up his reasons for responding to the accident. On July 2, 2003, after preliminary discussions between LeFande and the Disciplinary Review Division, LeFande received written notification of his termination effective July 4, 2003.[1]

On July 7, 2003, LeFande filed this civil complaint, claiming that he did not receive the process to which he was entitled and moving for a temporary restraining order and preliminary injunction. On July 11, 2003, Judge Eugene Hamilton instructed LeFande to make a final appeal to the Chief of Police, and ordered the Chief of Police to make a final disposition of the appeal by July 21, 2003. When the Chief of Police failed to do so, Judge Hamilton issued a temporary restraining order staying the effectiveness of the termination.

On July 31, 2003, LeFande received written notice of the MPD's charges against him (which were identical to those in the February 2, 2003 memorandum). On August 19, 2003, LeFande responded to the charges in a lengthy letter to the Chief of Police. On September 16, 2003, the Chief of Police notified LeFande in writing of the MPD's final decision to terminate him for his conduct on July 4, 2002. On September 25, 2003, LeFande wrote another letter to the Chief of Police refuting the allegations against him, and on October 7, 2003, the District moved for Summary Judgment, which LeFande timely opposed. On October 9, 2003, the Chief of Police responded in writing, sustaining the charges against LeFande (with the exception of the charge of making a false statement) but finding termination to be too severe a penalty. The Chief of Police, therefore, reinstated LeFande and transferred him to another district.

On January 4, 2004, Judge Natalia Combs Green granted the District's motion for Summary Judgment. Lefande appealed.

---

[1] At the time of his termination from the MPD, LeFande was working as a Special Assistant Corporation Counsel within the District's Office of Corporation counsel on a *pro bono* basis. According to LeFande, he was actively seeking full-time employment with the Corporation Counsel, and was aware of an anticipated opening for the position of prosecutor. After speaking with his supervisor, LeFande decided not to tender a written application until a formal announcement soliciting applications was posted.

3

## II.

We review a trial court's grant of summary judgment *de novo*. *Woodfield v. Providence Hosp.*, 779 A.2d 933, 936 (D.C. 2001). In a motion for summary judgment, "the moving party carries the burden of demonstrating the absence of a material factual dispute and that it is entitled to judgment as a matter of law," and once that burden is met, the non-moving party "must produce opposing evidence, admissible at trial, demonstrating that a genuine issue exists as to a material fact." *Id.* at 936-37.

LeFande first argues, in essence, that his receipt of benefits such as worker's compensation, witness fees and training renders him an employee, rather than a volunteer, and thus he is entitled to the job protections afforded to employees. There is no genuine issue of disputed fact on this point. The District of Columbia Volunteer Services Act (VSA) specifically establishes that "the reimbursement of the actual expenses by a volunteer on behalf of the District of Columbia government shall not make that person an employee," nor does the receipt of workers' compensation. D.C. Code § 1-319.95 (2), 6 DCMR 4000.9. An employee, on the other hand, is defined as "a person who is paid by the District from grant or appropriated funds for his or her services." D.C. Code § 1-319.05 (1). In support of its Motion for Summary Judgment, the District submitted an affidavit from the MPD payroll manager stating that LeFande has not received compensation from the MPD. LeFande has not submitted any evidence of having received compensation as defined by § 1-319.05 (1). In addition, members of the Reserve Corps are specifically subject to the VSA. MPD General Order No. 101.3 (1995). Even excluding the Volunteer Service Agreement signed by LeFande, which he claims to have no recollection of signing and claims is hearsay lacking foundation, there is no factual dispute whether LeFande was a volunteer or an employee.

Nor is there any dispute that LeFande received the process to which he was entitled. Subsequent to his reinstatement on July 22, 2003, LeFande received a written Notice of Proposed Adverse Action, detailing the charges against him and informing him of his right to respond in writing to the charges. LeFande did so. The Chief of Police responded with a Final Notice of Adverse Action, again noting LeFande's right to appeal by written submission, and LeFande again did so. The Chief of Police reviewed LeFande's appeal and the disciplinary record, determined that termination was too severe and reduced the penalty accordingly. LeFande was entitled to no other relief or rights of appeal. MPD General Order No. 101.3 at 20.

LeFande also claims that his termination was in violation of the District of Columbia Whistleblower Protection Act (WPA), D.C. Code §§ 1-615.51 *et seq.* (2001). The WPA extends protection to employees of and applicants for employment with the District. D.C. Code § 1-615.52 (a)(3). There is no genuine issue of material fact as to whether LeFande is protected by the WPA, as he was neither a District employee (as discussed *supra*) or an applicant. Although LeFande claims that he was in the process of applying for a position in the Office of the Corporation Counsel, he admits that no application was submitted. In addition, with its motion for Summary Judgment, the District submitted the affidavit of the attorney hiring manager for the Office of the Corporation Counsel who stated that there was no record of LeFande applying for a paid position, and that

4

LeFande was not under consideration for a paid position with the Corporation Counsel.

LeFande also claims that the appellees' conduct was defamatory, while appellees assert absolute immunity.[2]  To determine whether allegedly defamatory statements by a District official are protected by absolute immunity, we must determine whether the official's statement (1) falls within the "outer perimeter" of the official's duties, and (2) involves "discretionary" rather than "ministerial" activity.  *District of Columbia v. Thompson*, 570 A.2d 277, 294-97 (D.C. 1990).  Actions within the "outer perimeter" of the official's duties are actions which "have more or less connection with the general matters committed by law to [the official's] control or supervision."  *Moss, supra* note 2, 580 A.2d at 1020.  The Reserve Corps operates under the supervision and evaluation of the MPD, which is charged with disciplining Reserve Corps members where necessary.  MPD General Order No. 101.3 at 2, 20.  The actions of the defendant officers in furtherance of these responsibilities fall within the outside perimeters of their duties.

To distinguish between "discretionary" and "ministerial" activities, we consider "(1) the nature of plaintiff's injury, (2) the availability of alternative remedies, (3) the ability of the court to judge fault without unduly invading the executive function, and (4) the importance of protecting particular kinds of official acts."  *Kendrick v. Fox Television*, 659 A.2d 814, 819 (D.C. 1995) (quoting *Thompson, supra*).  Regarding the nature of LeFande's injury, his claims of physical and emotional injury and distress, including loss of esteem, are conclusory and without any evidentiary support, *see id.* at 820, as is his claim of loss of career opportunity with the Office of the Corporation Counsel (discussed *supra*).  As to the availability of alternate remedies, LeFande has availed himself of the administrative remedies to which he has access, and his termination was rescinded.  Additionally, court scrutiny of statements made by police officers on disciplinary matters, which are often sensitive, is likely to be highly intrusive.  *Id.*  Finally, protecting the freedom of police officers to supervise, evaluate, and discipline their subordinates is clearly in the public interest.  *See id.*[3]

We find that the District has met its burden, and that LeFande has not produced evidence that a genuine issue of material fact exists.  Accordingly, it is

---

[2]  Whether absolute immunity applies is a legal question properly resolved on summary judgment.  *Moss v. Stockard*, 580 A.2d 1011, 1020 n.18 (D.C. 1993)

[3]  Finally, LeFande claims that the District was negligent in its failure to supervise the individual appellees.  However, apart from his allegations of misconduct on the part of individual appellees, LeFande has offered no evidence, let alone any expert testimony, establishing the applicable standard of care, nor any breach of that standard.  *Young v. District of Columbia*, 752 A.2d 138, 145 (D.C. 2000).

5                    04-CV-68

ORDERED and ADJUDGED that the trial court's grant of summary judgment be, and hereby is, affirmed.

ENTERED BY DIRECTION OF THE COURT:

GARLAND PINKSTON, JR.
Clerk of the Court

Copies to:

Hon. Natalia M. Combs Greene

Clerk, Superior Court

Matthew A. LeFande, pro se
1001 - 16th Street, NW  (36)

Edward E. Schwab, Esq.
AJDCO