UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER GRIFFITH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CATHY L. LANIER,<br><br>Defendant. | Civil Action 06-01223  (HHK) |

MEMORANDUM OPINION

Plaintiffs Christopher Griffith and Daniel Kim (collectively "Volunteers") are volunteer members of the District of Columbia's Metropolitan Police Department ("MPD") Reserve Corps. They bring this action against the MPD Chief of Police ("Police Chief"),[1] in her official capacity, for alleged unlawful rulemaking. Plaintiffs, who request class certification on behalf of all MPD Reserve Officers, allege the Police Chief deprived them of their rights under the First and Fifth Amendments, the National Labor Relations Act ("NLRA"), the District of Columbia Administrative Procedures Act, and the District of Columbia's Omnibus Public Safety Act of 2004, by prohibiting the Reserve Corps members from organizing for purpose of collective bargaining.

---

[1] At the time this action was filed the Chief of Police of the Metropolitan Police Department was Charles Ramsay. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Cathy L. Lanier, the Acting Chief of Police, is automatically substituted as the party defendant.

Before the court is the Police Chief's motion to dismiss [#11] and the Volunteers' motion for class certification [#17] and for partial summary judgment [#19].  Upon consideration of the motions, the oppositions thereto, and the record of the case, the court concludes that the Police Chief's motion must be granted and the Volunteers' motions must be denied.[2]

## I. BACKGROUND

Griffith and Kim are members of the MPD Reserve Corps, an organization of volunteers designed to "assist full-time, sworn police personnel in both the day-to-day and emergency delivery of law enforcement services, consistent with applicable law."  D.C. Code § 5-129.51(a). Members of the Reserve Corps are "unpaid volunteers who fulfill police duties and responsibilities as determined by the Chief of the Metropolitan Police Department." *Id.* § 5-129.51(b); *see also* D.C. Code § 1-319.05(2) (defining "volunteer" as one who "donates his or her services to a specific program or department of the District of Columbia government, by his or her free choice and without payment for the services rendered."); D.C. Mun. Regs. tit. 6, §4000.1.[3]

On March 28, 2006, the Chief of MPD, at that time Charles Ramsey, issued a General Order which, among other things, prohibited Reserve Corps members from organizing for collecting bargaining purposes, allowed the Chief of Police to reduce a Reserve Corps member's

---

[2] Previously, this court denied plaintiffs' motion for a preliminary injunction on the grounds that they offered no evidence that would permit the court to conclude that their removal from the Reserve Corps was imminent.  *See Griffith v. Ramsey*, No. 06-1223 (order filed Aug. 16, 2006).

[3] The applicable statute further provides the "reimbursement of the actual expenditures by a volunteer on behalf of the District of Columbia government shall not make that person an employee of the District of Columbia for the purposes of this section."  D.C. Code § 1-319.05(2).

rank or remove a member from the Corps without a hearing or administrative review, and limited the authority of Reserve Corps members to make arrests and issue notices of infractions. *See* MPD Gen. Order No. 101.3 (Mar. 28, 2006) ("General Order").

## II. ANALYSIS

The Police Chief contends that the Volunteers' complaint must be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), because plaintiffs have failed to state a claim under the NLRA, the First or Fifth Amendments. The court will consider these contentions in turn.

**A.     NLRA**

The Volunteers contend that their rights under the NLRA are being infringed by the General Order. As the Police Chief points out, however, the NLRA does not apply to state or municipal employees. *See* 29 U.S.C. § 152(2) (excluding from the definition of "employer," *inter alia*, "the United States, or any wholly owned Government corporation . . . or any State or political subdivision thereof").[4] Under the NLRA, the relations between public employees and their employers is governed by local law. *See id.; Jackson Trans. Auth. v. Local Div. 1285, Amalgamated Trans. Union*, 457 U.S. 15, 24 (1982).

In the District of Columbia, most civil service employees are granted the right to collective bargaining by the Comprehensive Merit Personnel Act ("CMPA"). *See* D.C. Code § 1-617.01. Members of the Reserve Corps, however, are not covered by the CMPA because they are not employees "paid by the district . . . for [their] services." *See* D.C. Code § 1-319.05(1) (defining

---

[4] In 1935, at the time of the NLRA's enactment, the government of the District of Columbia was a part of the federal government. *See generally* Pub. L. No. 74-198, 49 Stat. 450 (1935). The District did not obtain so-called "home rule" until 1973. Pub. L. No. 93-198, 87 Stat. 774 (1973). Thus, the District of Columbia was not specifically excluded in the Act.

"employee"); *see also LeFande v. District of Columbia*, No. 04-68, slip op. at 3 (D.C. May 25, 2006) (unpublished) (recognizing that member of the Reserve Corps was not an employee).[5] As unpaid volunteers, members of the Reserve Corps are covered by the Volunteer Service Act, which does not provide them with the right to organize for purposes of collective bargaining. D.C. Code § 1-319.05(2); D.C. Mun. Regs. tit. 6, §4000.1; *see also LeFande*, slip op. at 3. The applicable regulations expressly prohibit volunteers from organizing for purposes of collective bargaining. *See* D.C. Mun. Regs. tit. 6, § 4000.8 ("persons whose services are utilized on a voluntary basis shall not be eligible for any benefits normally accruing to employees of the District of Columbia, including . . . the right to organize for collective bargaining purposes, unless such benefits are specifically provided by the laws of the District of Columbia.").

As the members of the Reserve Corps are neither employees nor otherwise provided the right to organize, they have suffered no deprivation of any right to organize under applicable labor laws and regulations.

**B.    Fifth Amendment**

The Volunteers next contend that the MPD's authority to reduce a Reserve Corps member's rank or remove them without a hearing is a deprivation of a property right absent procedural due process or compensation, in violation of the Fifth Amendment. The Police Chief rejoins that plaintiffs have no property interest in a volunteer position and thus, no right to due process. The Police Chief is correct.

---

[5] The applicable statute further provides the "reimbursement of the actual expenditures by a volunteer on behalf of the District of Columbia government shall not make that person an employee of the District of Columbia for the purposes of this section." D.C. Code § 1-319.05(2).

Generally speaking, volunteers do not have property interests in their positions, and thus do not have a constitutional right to due process. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993) (concluding volunteer firefighter did not have due process right to hearing on termination); *Hyland v. Wonder*, 117 F.3d 405, 412 (9th Cir. 1997) ("Hyland failed to state a due process claim because he lacked a property or liberty interest in his position as a volunteer."). To have a protected property interest in a public employment position, one must have more than an "abstract need or desire for it;" rather, one must possess an entitlement "that stem[s] from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–78 (1972).

The District of Columbia Court of Appeals has held that no such liberty or property interest exists in retaining a volunteer position as a MPD Reserve Corps member. *Johnson v. Williams*, No. 04-441, slip op. at 2 (D.C. Nov. 30, 2005) (unpublished). While the court noted that a MPD General Order provided that a "hearing *may* be held" prior to termination, the court concluded that such a provision "must yield to the terms of the statute or regulations governing volunteer services," which "expressly deny any right or process of appeal to a volunteer whose services have been discontinued." *Id.* (citing D.C. Mun. Regs. tit. 6, § 4000.13; *id.* § 4000.12). Under the applicable regulations, the utilization of any volunteer is "at the discretion of each agency, and the utilization of such services may be discontinued by the agency at any time for any reason." D.C. Mun. Regs. tit. 6, § 4000.12. The decision by an agency official to "discontinue the utilization of the voluntary services of any person shall not be considered an adverse action and shall not give rise to any right or process of appeal." *Id.* § 4000.13.

Therefore, because the Volunteers do not have either a property or liberty interest in retaining their positions as members of the Reserve Corps, they are unable to state a Fifth Amendment due process claim.

**C.     First Amendment**

The regulation of speech and association necessarily implicate the First Amendment. And it is well established that the government may not "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression . . . [p]ublic employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1955–57 (2006) (internal quotation marks omitted). At the same time, however, the government has significant legitimate interests as an employer in regulating the First Amendment conduct of its employees. *See Connick v. Myers*, 461 U.S. 138, 140 (1983); *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968). Under the test set forth in *Pickering*, if an employee's speech involves a matter of public concern, then the speaker's interests in engaging in the speech and the public's interests in hearing the speech must be balanced against the government's interests in promoting the efficiency of services it performs through its employees. *Versarge,* 984 F.2d at 1364.

The problem with applying such principles here, however, is that they are premised on the assumption that an *employee* cannot be forced to choose between her constitutional rights and her livelihood. *See Garcetti*, 126 S.Ct. at 1958 ("The First Amendment limits the ability of a public employer to *leverage the employment relationship* to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens.") (emphasis added). Here, the Reserve Officers are not employees, and the regulation in question does not pit their First

6

Amendment rights against their livelihood. There are some courts, however, that have held that "the opportunity to serve as a volunteer constitutes the type of governmental benefit or privilege the deprivation of which can trigger First Amendment scrutiny." *Hyland*, 972 F.2d at 1135; *see also Versarge*, 984 F.2d at 1364 (assuming volunteer firefighters have sufficient interest in position for purposes of applying First Amendment scrutiny). Thus, without deciding that the Reserve Corps members are employees, the court assumes for the purpose of this analysis that they have a sufficient interest in their positions that "similar First Amendment concerns would apply in a volunteer context," *Versarge*, 984 F.2d at 1364, and proceeds to determine whether the regulation withstands scrutiny under the *Pickering* test.

The first inquiry is whether the Volunteers seek to speak regarding a matter of public concern. Speech may involve public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Moreover, the public has an interest in "free and unhindered debate on matters of public importance." *Pickering*, 391 U.S. at 573. "The public [also] has a significant interest in encouraging legitimate whistleblowing so that it may receive and evaluate information concerning the alleged abuses of . . . public officials." *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1062 (3d Cir. 1989). Balanced against the right to speak on matters of public concern are the interests of the government in regulating their employees, which may include: (1) effective discipline by superiors; (2) maintaining harmony among co-workers; (3) maintaining close working relationships for which personal loyalty and confidence are necessary; (4) ensuring that speech doesn't interfere with speaker's performance of job duties; or (5) maintaining the regular operation of the enterprise. *See Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

There is scant evidence in the record about what the Volunteers seek to speak about, other than their general references to "collective bargaining." They have not raised concerns about safety issues and have not indicated that they seek to speak out about anything other than their interest in retaining their positions. Yet they are public servants, and their concerns about the conditions of their service may be characterized as a matter of public interest, limited though it may be. On the other hand, the Chief of Police has a substantial interest in maintaining harmony and close working relationships among all law enforcement officers, as well as in maintaining orderly operations. Such interests might easily be disrupted if the MPD were engaged in extensive bargaining negotiations with volunteers regarding the conditions of their service.[6] In these circumstances, the Volunteers' limited First Amendment interest does not overcome the need of the Chief of Police to exercise effective authority over the Reserve Corps. Thus, the court concludes that the General Order does not unduly infringe upon the First Amendment rights of the Volunteers.

### E.  Pendent Jurisdiction

The Volunteers raise other claims under the District of Columbia Administrative Procedure Act and the Omnibus Act, which they seek to prosecute under this court's pendent jurisdiction. However, because the Volunteers' claims based on the Constitution and federal law will be dismissed, there is no reason for the court to exercise pendent jurisdiction over the state

---

[6] While the right to organize may be grounded in the rights to speech and association, "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it," absent such requirement by another applicable law. *See Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 464–66 (1979).

law based claims. 28 U.S.C. §1367(c). Accordingly, the court declines to exercise pendent jurisdiction over these claims and dismisses them without prejudice.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the Police Chief's 's motion to dismiss must be granted, and the Volunteers' motions for class certification and for partial summary judgment must be denied. An appropriate order accompanies this memorandum.

Henry H. Kennedy, Jr.<br>United States District Judge

Dated: March 28, 2007