**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MPD RESERVE OFFICERS, et al.**<br><br>                      **Plaintiffs**<br><br>**v.**<br><br>**CHARLES RAMSEY**<br><br>                      **Defendant** | **Case Number:<br>1:06CV01223HHK**<br><br>**Judge Henry H. Kennedy, Jr.** |

**PLAINTIFFS' MOTION FOR RECONSIDERATION**

      The Plaintiffs, by counsel, hereby moved this Court to reconsider its summary dismissal of their Complaint against Defendant Charles Ramsey.  The Court's substitution of the Defendant mischaracterizes the Defendant as solely an official capacity Defendant, an agent or representative of the offending agency, whereas the Complaint fully sets forth that the Plaintiffs complain of unconstitutional acts committed by the Defendant personally, albeit while acting in his official capacity, thus "stripping" the Defendant of his official character.  The Court fails to address the broad guarantee of due process granted to *all persons* within MPD under D.C. Code § 5-127.01 and continues to rely upon the flawed <u>Johnson</u> opinion, which never addressed this statutory right.   Where the government makes a prior restraint of a right to speak freely, this Court must employ strict scrutiny to find a compelling state interest to justify the infringement. This Court fails to articulate any inconvenience to MPD in permitting Reserve Officers to organize for collective bargaining where MPD regularly engages in such bargaining with some 5,000 other employees, and the Plaintiffs have already conceded they have no right to compel MPD to recognize the organization or even listen to them.

This Motion is supported by the attached Memorandum of Law and Authority in Support, and the entire record herein.

### LCvR 7.1 (m) Certification

The undersigned counsel hereby certifies that on April 9, 2007, he conferred extensively with the Defendant's counsel of record, Mr. Jack Simmons on this Motion. As the Motion is dispositive in nature, this counsel did not seek, and Mr. Simmons did not offer, the Defendant's consent to the relief sought therein.

April 10, 2007

Respectfully Submitted,

_____
Matthew August LeFande
DC Bar #475995
4585 North 25th Road
Arlington, Virginia 22207
Tel: (202)657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MPD RESERVE OFFICERS, et al.**<br><br>                        **Plaintiffs**<br><br>**v.**<br><br>**CHARLES RAMSEY**<br><br>                        **Defendant** | **Case Number:**<br>**1:06CV01223HHK**<br><br>**Judge Henry H. Kennedy, Jr.** |

**MEMORANDUM OF LAW AND AUTHORITY IN SUPPORT OF
PLAINTIFFS' MOTION FOR RECONSIDERATION**

The Plaintiffs, by counsel, have moved this Court to reconsider its summary dismissal of their Complaint against Defendant Charles Ramsey. The Court's substitution of the Defendant mischaracterizes the Defendant as solely an official capacity Defendant, an agent or representative of the offending agency, whereas the Complaint fully sets forth that the Plaintiffs complain of unconstitutional acts committed by the Defendant personally, albeit while acting in his official capacity, thus "stripping" the Defendant of his official character. The Court fails to address the broad guarantee of due process granted to *all persons* within MPD under D.C. Code § 5-127.01 and continues to rely upon the flawed Johnson opinion, which never addressed this statutory right. Where the government makes a prior restraint of a right to speak freely, this Court must employ strict scrutiny to find a compelling state interest to justify the infringement. This Court fails to articulate any inconvenience to MPD in permitting Reserve Officers to organize for collective bargaining where MPD regularly engages in such bargaining with

some 5,000 other employees, and the Plaintiffs have already conceded they have no right to compel MPD to recognize the organization or even listen to them.

### I.     The Court incorrectly substituted the Defendant.

The Plaintiffs assert the District Court incorrectly substituted Cathy Lanier *sua sponte* as an official-capacity Defendant under FRCP 25(d)(1). *See* Docket # 28, n. 1. Defendant Ramsey was sued for his own actions taken in his official capacity as Chief of Police of the Metropolitan Police Department, not as a nominal agent or representative of a Defendant agency. Compl. at ¶¶ 2, 21-30. *See* Hafer v. Melo, 502 U.S. 21, 31, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. Brandon v. Holt, 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself. *See, e. g.,* Kentucky v. Graham, 473 U.S. 159, 165-166 (1985); Monell, *supra*, at 690, n. 55.")

> Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." Kentucky v. Graham, [473 U.S. 159, 167, n. 14, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985)]; Ex parte Young, 209 U.S. 123, 159-160 [28 S. Ct. 441] (1908). This distinction is "commonplace in sovereign immunity doctrine," L. Tribe, AMERICAN CONSTITUTIONAL LAW § 3-27, p. 190, n. 3 (2d ed. 1988), and would not have been foreign to the 19th-century Congress that enacted § 1983, *see, e. g.,* In re Ayers, 123 U.S. 443, 506-507 [31 L. Ed. 216, 8 S. Ct. 164] (1887); United States v. Lee, 106 U.S. 196, 219-222 [27 L. Ed. 171, 1 S. Ct. 240] (1882); Board of Liquidation v. McComb, 92 U.S. 531, 541 [23 L. Ed. 623] (1876); Osborn v. Bank of United States, [22 U.S. 738] 9 Wheat. 738 [6 L. Ed. 204] (1824). City of Kenosha v. Bruno, 412 U.S. 507, 513 [37 L. Ed. 2d 109, 93 S. Ct. 2222] (1973), on which Justice Stevens relies, *see post*, at 93, n. 8, is not to the contrary. That case involved municipal liability under § 1983, and the fact that nothing in § 1983 suggests its "bifurcated application to municipal corporations depending on the

2

> nature of the relief sought against them," 412 U.S., at 513, is not surprising, since by the time of the enactment of § 1983 municipalities were no longer protected by sovereign immunity. *Supra*, at 67-68, n. 7.

Id. at 71 n. 10.

> Where the State itself or one of its agencies or departments is not named as defendant and where a state official is named instead, the Eleventh Amendment status of the suit is less straightforward. Ex parte Young, 209 U.S. 123 (1908), held that a suit to enjoin as unconstitutional a state official's action was not barred by the Amendment. This holding was based on a determination that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity.

Papasan v. Allain, 478 U.S. 265, 276, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)

> If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

Id. (quoting Ex parte Young at 159-160).

> …the Supreme Court created an exception to Eleventh Amendment immunity "for suits challenging the constitutionality of a state official's action, on the theory that since the state cannot authorize such an unconstitutional action, the officer is "stripped of his official or representative character and . . . subjected in his person to the consequences of his individual conduct.'" Parents for Quality Educ. With Integration, Inc. v. Indiana, 977 F.2d 1207, 1209 (7th Cir. 1992) (quoting [Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984)] ).

Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v.

Galarza, 2007 U.S. App. LEXIS 4660 (1st Cir. 2007). *Cf.* Hatfill v. Gonzales, 03-1793

RBW (D.D.C. 2007) (holding to the contrary in government-imposed stigma cases).

> …while it is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her "individual capacity," *see, e.g.,* Hardin v. Straub, 954 F.2d 1193, 1200 (6th Cir. 1992), failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.

3

> The Supreme Court has noted that "the 'course of proceedings' in such [unspecified capacity] cases typically will indicate the nature of the liability sought to be imposed." Kentucky v. Graham, 473 U.S. 159, 167 n.14, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). Indeed, the vast majority of our sister circuits apply the "course of proceedings" test to determine whether suit has been brought against a state official as an official or as an individual. *See* Atchinson v. District of Columbia, 315 U.S. App. D.C. 318, 73 F.3d 418, 425 (D.C. Cir. 1996); Biggs, 66 F.3d at 61; Ying Jing Gan v. City of New York, 996 F.2d 522, 529-30 (2d Cir. 1993); Hill v. Shelander, 924 F.2d 1370, 1373-74 (7th Cir. 1991); Houston v. Reich, 932 F.2d 883, 885 (10th Cir. 1991); Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990); Lundgren v. McDaniel, 814 F.2d 600, 604 (11th Cir. 1987); Parker v. Graves, 479 F.2d 335, 336 (5th Cir. 1973).

Moore v. City of Harriman, 272 F.3d 769, 773 (6th Cir. 2001).

> Government officials may be held personally liable in actions under section 1983 for acts conducted in their official capacities, Scheuer v. Rhodes, 416 U.S. 232, 237-38, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974), that authorize or approve unconstitutional conduct, Rizzo v. Goode, 423 U.S. 362, 371, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976). To establish individual liability, the plaintiff must demonstrate an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy . . . showing their authorization or approval of such misconduct." Rizzo, 423 U.S. at 371.

Heller v. Bushey, 759 F.2d 1371, 1375 (9th Cir. 1985) *reversed on other grounds*, City of Los Angeles v. Heller, 475 U.S. 796, 89 L. Ed. 2d 806, 106 S. Ct. 1571 (1986) (per curiam).

Charles Ramsey was sued for unconstitutional deprivations of the proposed Plaintiff class's liberty and property interests. On March 26, 2006, the Defendant personally signed, or otherwise caused his personal signature to appear, on the new General Order. Pl.'s Ex. A at 26. Such action by the Defendant deprived the entire proposed Plaintiff class of rights of free speech, free assembly, free association and to petition the government for redress of grievances in his blanket prohibition of organizing for collective bargaining. Id. at 4. This action also unconstitutionally deprived the entire proposed Plaintiff class of disciplinary due process otherwise guaranteed under D.C.

4

Code § 5-127.01.  Id. at 5, 6.  The Defendant does not deny he personally took these actions.  Docket #11 at 13, Docket # 12 at 3.

On June 9, 2006 Defendant Ramsey caused to be published with the District of Columbia Register, his Notice of Emergency and Proposed Rulemaking.  53 D.C.R. 4581.  Such emergency and proposed rulemaking contained the same deprivations of the proposed Plaintiff class's property interests as the new General Order, but not the deprivations of liberty interests.  Id. §§ 1212.1-1212.2, 1299.[1]

After the Attorney General refused to accept service on behalf of the Defendant, the Defendant's wife was served with the Complaint and Summons at the Defendant's home in Washington, DC.  Service of the Complaint gave Defendant Ramsey good and sufficient notice of the Plaintiff's cause of action and a meaningful opportunity to respond.  As fully set forth in the Complaint, it is alleged, *inter alia*, that Defendant Ramsey committed unlawful and unconstitutional acts, albeit in his official capacity as the Chief of Police of MPD.

> In the instant case, plaintiffs' complaint sets forth sufficient allegations of personal conduct to state a claim against the [defendants] in their individual capacities.  The complaint alleges with particularity the factual predicate which demonstrates that each of these individual defendants acted willfully, knowingly, purposefully, and with malice to deprive the decedent of his life and liberty without due process of law.

Jones v. Rhode Island, 724 F. Supp. 25, 29 (D.R.I. 1989).

By such acts taken by the person, Defendant Ramsey, in the present cause of action he is "stripped of his official or representative character, and… subjected in his person to the consequences of his individual conduct."  Pennhurst State Sch. & Hosp. v.

---

[1] The emergency rulemaking has since expired and no further action has been taken to bring the proposed rulemaking into effect.  The Attorney General previously indicated further emergency rulemaking of a similar nature was forthcoming.  *See* Docket # 11 at 11. The new General Order remains in effect without further modification.

5

Halderman, *supra*. Therefore, substitution of Chief Lanier, who the Plaintiffs presently offer no allegation of misconduct[2], should not be substituted for the original Defendant upon his departure from office. See Ky. v. Graham, 473 U.S. at 166, n. 11, Santiago v. Daley, 1989 U.S. Dist. LEXIS 10454 at 4 (D. Ill. 1989) (successor to defendant state official could not be substituted under FRCP 25(d)(1) for individual liability claims, instead successor was <u>added</u> as an additional defendant); Cabrera v. Bayamon, 622 F.2d 4, 6 (1st Cir. 1980).

### II.     The Defendant's deprivation of the Plaintiffs' Fifth Amendment rights.

The Court completely ignores both the Defendant's and Plaintiffs' arguments regarding the applicability of the D.C. Code's requirements of disciplinary due process in MPD. The Court's reliance on Johnson v. Williams No. 04-441, slip op. at 2 (D.C. Nov. 30, 2005) (unpublished) improperly grants credence to the District of Columbia Court of Appeals opinion, itself formed upon a fraud perpetrated upon the court. The Defendant's counsel unethically withheld key controlling statutes and regulations from the court's consideration. In that case, the Court of Appeals was correct to state that, relying upon the information then before the court, provisions of the MPD General Orders must yield to statutes or regulations governing the utilization of a volunteer. There are no District of Columbia statutes governing the utilization of a volunteer, only municipal regulations. However, as previously stated by the Plaintiffs, D.C. Code § 5-127.01 requires that no *person* be removed from MPD without a trial board. Docket # 27 at 11-12. With this

---

[2] It should be noted that the substituted Defendant has not yet reversed or amended the offending new General Order, though the Plaintiffs do wish to give her the opportunity to do so before adding her as a defendant. However, by maintaining the order as the official MPD policy, the Plaintiffs easily meet their burden of demonstrating that the present Chief of Police is following the same unlawful practices requiring injunctive relief. See Spomer v. Littleton, 414 U.S. 514, 521-522, 38 L. Ed. 2d 694, 94 S. Ct. 685 (1974).

6

broad language, such a statute supersedes any lesser regulation specifically governing volunteers. This Court can only come to the conclusion that the statute is not applicable to Reserve Officers if the Court asserts that Reserve Officers are not "persons" for the purpose of District of Columbia law. *See also* Id. at 14-17 (such due process guarantees to all members of the police force protect impartiality and integrity of officers).

The Defendant's counsel understood the importance of D.C. Code § 5-127.01 in protecting the rights of all members of MPD and for this reason, could not disclose to the District of Columbia courts the existence of this provision without losing its argument. However, to do so was an ethical violation of the highest order, placing a *pro se*, non-attorney plaintiff in an untenable situation, fatally disadvantaged by his own ignorance of District of Columbia law. The Attorney General, a taxpayer funded government entity, withheld its knowledge of the operative law from the private citizen plaintiff and the courts. *See* Docket # 14 at 22-27. This Court should not rely on any opinion premised upon only part of the relevant law.

**III.    The Defendant's deprivation of the Plaintiffs' First Amendment rights.**

The Court's opinion properly acknowledges the First Amendment implications in the Defendant's rulemaking prohibiting Reserve Officers' organization for collective bargaining. Docket # 28 at 7. However, the Court goes on to condone the Defendant's prior restraint of such organization and interjects some sort of content-based test into its reasoning. Such prior restraint requires the Court's "strict scrutiny" of the government's cause for such an infringement and must find a compelling state interest to authorize it. Tory v. Cochran, 544 U.S. 734, 738, 161 L. Ed. 2d 1042, 125 S. Ct. 2108 (2005) (citing

7

Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559, 49 L. Ed. 2d 683, 96 S. Ct. 2791 (1976) ("prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights"); Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 183-184, 21 L. Ed. 2d 325, 89 S. Ct. 347 (1968) (an "order" issued in "the area of First Amendment rights" must be "precise" and narrowly "tailored" to achieve the "pin-pointed objective" of the "needs of the case"); Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 575, 577, 96 L. Ed. 2d 500, 107 S. Ct. 2568 (1987) (regulation prohibiting "all 'First Amendment activities'" substantially overbroad)).

The Court only offers conclusory assertions unsupported by the record that MPD's ability to maintain "orderly operations" may be disrupted if "MPD were engaged in extensive bargaining negotiations with volunteers regarding the conditions of their service."  This compelling state interest claimed by the Court fails outright.  The Plaintiffs have already conceded that MPD is under no obligation to recognize any Reserve Officers' organization or listen to any of their demands.  Docket # 27 at 7, citing Fraternal Order of Police v. Ocean City, 916 F.2d 919, 922 (4th Cir. 1990). Reserve Officers nevertheless have a right to freely associate and to speak freely.

> …any attempt to restrict those liberties must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger.  The rational connection between the remedy provided and the evil to be curbed, which in other contexts might support legislation against attack on due process grounds, will not suffice. These rights rest on firmer foundation. Accordingly, whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. It is therefore in our tradition to allow the widest room for discussion, the narrowest range for its restriction, particularly when this right is exercised in conjunction with peaceable assembly. It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a

> single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable.

Thomas v. Collins, 323 U.S. 516, 530, 89 L. Ed. 430, 65 S. Ct. 315 (1945) [footnote omitted] (finding no cognizable danger in organizing for collective bargaining). Furthermore, MPD appears to be capable of routinely conducting negotiations with its some 5,000 other employees in collective bargaining. Involving two or three hundred additional part-time members in the process cannot be claimed to make a substantial impact on MPD's resources.

### IV. Conclusion

For these reasons, and for other such reasons as the Court finds to be good and sufficient cause, the Court should vacate its March 28, 2007 Judgment against the Plaintiffs and grant the Plaintiffs Motion for Partial Summary Judgment. A proposed Order is attached.

April 10, 2007

Respectfully Submitted,

_____
Matthew August LeFande
DC Bar #475995
4585 North 25th Road
Arlington, Virginia 22207
Tel: (202)657-5800
Fax: (202)318-8019
email: matt@lefande.com
Attorney for the Plaintiffs

9